Form 11

**FORM 11. Informal Brief (MSPB or Arbitrator Cases)**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

US COURT OF APPEALS FEDERAL CIRCUIT 2014 JUN 20 PM 1:55 RECEIVED

Jones v. MSPB

No. 14-3081

## INFORMAL BRIEF OF PETITIONER

Read the Guide for Pro Se Petitioners and Appellants before completing this form. Attach a copy of the initial and final decision or order of the Merit Systems Protection Board or arbitrator. Answer the following questions as best you can. Your answers should refer to the decision or order you are appealing where possible. Use extra sheets if needed.

1. Have you ever had another case in this court? ✔Yes ____No In a United States district court? ____Yes ____No In the Equal Employment Opportunity Commission? ✔Yes ____No If so, identify each case.

   2014-3072
   10-0099-HQ-FE (EEOC)

2. Did the MSPB or arbitrator incorrectly decide or fail to take into account any facts? ✔Yes ____No If so, what facts? (Refer to paragraph 7 of the Guide.)

   See attachment. In addition, the MSPB failed to take in account the integrity of the agency.The agency submitted a document under CB-7121-13-0111-V-1 (14-3072), dated for May 24, 2013 that stated that they conceded that I was subjected to adverse treatment by the Agency when I was removed for poor performance pursuant to Chapter 43.They have stated time and time again how fairly they treated me to the arbitrator and the Board. In fact, the agency knowingly made false accusations before the arbitrator. This sort of behavior should not be tolerated in the administrative courts. (See A-5)

3. Did the MSPB or arbitrator apply the wrong law? ✔Yes ____No If so, what law should be applied?

   The MSPB failed to apply regulation 5 CFR 1201.115 accurately. The agency placed me on a Performance Improvement Plan. All the improvement plans that were placed on the PIP were not allowed, by the agency. Therefore, I was not allowed to improve my performance. (For the record, my *performance was not poor.) See entire Attachment 2 (A-2).*

4. Did the MSPB or arbitrator fail to consider important grounds for relief? ✔Yes ____No If so, what grounds?

   Please see attachments.

**FORM 11. Informal Brief (MSPB or Arbitrator Cases) (continued)**

5. Are there other reasons why the MSPB's or arbitrator's decision was wrong? ✔ Yes ____ No If so, what reasons?
See attachments and also #14-3072.

6. What action do you want the court to take in this case?
Remand to MSPB. The actions/integrity of the agency should be a concern for both the MSPB and the Court. The agency's attorneys and the supervisors knowingly made up accusations. However, when the case was sent to the MSPB then they bury a statement in a document that says that they have violated me. Respectfully stating, the MSPB should on its own merits, have this case sent back to them.

7. Do you want to argue before the court in person? ____ Yes ✔ No If yes, what are the reasons why argument will aid the court? (Refer to paragraph 15 of the Guide.)

8. Do you intend to represent yourself? ✔ Yes ____ No If you have not filed an Entry of Appearance, indicate your full name, address, and telephone number.

9. I certify that a copy of this brief and any attachments was sent to: Michael Carney MSPB, the attorney for respondent, at the following address: 1615 M. Street, NW Washington, DC 20419. (Address is found on the Entry of Appearance served on you by the attorney for the respondent. If you do not send a copy of this brief to the respondent, the court will not file the brief.)

6/19/2014
Date

[signature]
Petitioner's signature

In addition to mailing a copy to the attorney for the respondent, mail an original and three copies of this informal brief and attachments to:

Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

RECEIVED
2014 JUN 20 PM 1:56
US COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Maria Lavinia Jones,
Appellant
v.
Department of Energy,
Agency

No. 14-3081

INFORMAL BRIEF OF PETITIONER
(continuation)

**Question 2:**

After I filed my initial appeal, the administrative judge directed me to separate my involuntary retirement claim (DC-0752-13-0168-I-1) from my initial claim (CB-7121-13-0111-V-1). The administrative judge later forwarded my petition for review to the Merit Systems Protection Board's (MSPB/Board) full court. After the administrative judge transferred my case to the full board, a final order was subsequently rendered. The full board denied my petition for review and affirmed the initial decision as modified by the order, in which they still dismissed my appeal for lack of jurisdiction. In addition, the Board did not address my discrimination and arbitrator err claim in conjunction with this case (14-3081). Also, they failed to acknowledge the new evidence that I placed before the Board.

The Merit System Protection Board's (MSPB/Board) full court stated that I ***should not*** have raised a separate involuntary retirement claim, but rather as only raising a challenge to my removal. The full board stated that I had already challenged my removal through the negotiated grievance procedure and had received an arbitration decision affirming my removal. The involuntary retirement claim was before the arbitrator, in addition, to other claims. However, one may argue that perhaps my counsel did not raise any of the claims effectively.

The Board failed to recognize that "*I*" initially did not raise a separate involuntary retirement claim, before the administrative judge. The administrative judge directed me to separate the involuntary retirement claim. The full board stated that the "administrative judge determined that the appellant was also raising an involuntary retirement claim, which "was not raised before the arbitrator..." (A-1) This statement, however was not accurate. The raising of the involuntary retirement claim, may not have been raised effectively, but it was raised. My counsel stated that "Ms. Jones was forced to take a discontinued service retirement to maintain an income..." (A-2). (In addition, a witness testified that the Deciding Official, Ms. Thomas, stated that I would be removed from federal service. The witness also testified that Ms. Thomas made these comments before my final hearing with the agency.) (A-3)

In the full board's final order dated January 27, 2014, it included a footnote that stated "*See* Request for Review File in Jones v. Department of Energy, MSPB Docket No. CB-7121-13-0111-V-1. The appellant's request for review of the arbitrator's decision was processed separately from the instant appeal." If the administrative judge did not direct me to separate my claim, I would have had only one appeal before the Board, which would have been docket no. CB-7121-13-0111-V-1.

The administrative judge's March 18, 2013 order, specifically stated "An appellant can establish the Board's jurisdiction under 5 U.S.C. § 7121(d) by asserting a claim of discrimination under 5 U.S.C. § 2302 (b)(1) for the first time on review and the assertion of discrimination need not constitute a nonfrivolous allegation of discrimination. *Pleasant v. Department of Housing & Urban Development,* 98 M.S.P,R. 602, ¶ 6 (2005)." My response to his order was to try to establish that discrimination was a factor in my removal, as his order stated.

Since the administrative judge issued his order, I am aware that the MSPB regulation has since been changed. In my complaint (CB-7121-13-0111-V-1), the MSPB has stated that on November 13, 2013, appellants must raise the issue of discrimination before the arbitrator. The MSPB's final decision in this case stated that discrimination was not an issue before the arbitrator. However, the arbitrator who ruled in my case, clearly addressed this issue. The new MSPB regulation did not state how discrimination should be raised before the arbitrator. The effectiveness or non-effectiveness of an appellant's counsel before the arbitrator was not part of the new regulation. (Attachment 1)

For sake of argument, even if the Court finds that I did not raise a claim of discrimination before the arbitrator, one should question how this proposed regulation change was presented to the public. On March 18, 2013, which was clearly over nine months after the regulation change was proposed in June of 2012, the administrative judge's order clearly states that an appellant's allegations of discrimination and reprisal need not have been raised before the arbitrator. Respectfully stating, if the administrative judge's are not aware of the regulation changes, then why is the public expected to be more versed than the individuals ruling on the cases, especially a pro se appellant. This assumption by the Board is unreasonable and not fair, especially when one of their principles is to provide *"fair and equitable" treatment to employees.*

In regards to the new regulation change, the MSPB final order (CB-7121-13-0111-V-1) has stated that I should have been aware of the regulation change when it was proposed in June 2012. My hearing before the arbitrator was held in August of 2012 and the effective date of the regulation change was in November 2012. The Board had jurisdiction over my case when my arbitration was held. Respectfully stating, the Board cannot expect for one to argue cases on proposed legislation. The key word before the Board should be "proposed". As one may know,

proposed legislation and regulations can and have changed. I have a case pending before the Equal Employment Opportunity Commission (EEOC), which is related to this complaint. Therefore, to risk compromising my pending EEOC case with "proposed" legislation was not in my best interest. ( A-4 )

For the record, the agency has acknowledged that I was subjected to adverse treatment. In the agency's response to request for review of arbitrator's decision, dated May 24, 2013, they stated "The Agency concedes that Appellant engaged in prior protected EEO activity, of which the Agency was aware. Appellant was also subjected to adverse treatment by the Agency when she was removed for poor performance pursuant to Chapter 43."

( A-5 )

**Question 5**

I submitted new evidence that clearly showed that Ms. Edna Thomas, who was my supervisor and the deciding official was demoted, shortly after my termination. In addition, Ms. Shannon Gipson, who was the personnel director was also demoted. These two supervisors were demoted to program analysts. These demotions occurred shortly after my arbitration hearing and was submitted before my record was closed with the Board. This was no coincidence that inappropriate personnel activities were occurring at the agency and I was apart of the activities. The agency has conceded that I was subjected to adverse treatment when I was removed for poor performance pursuant to Chapter 43. For the agency to demote these two key managers, directly after my removal is a clear sign that improprieties were occurring in the organization's personnel

activities. I should at least been able to build a record, which included the agency's reasonings behind these two key demotions, especially when my complaint consists of alleged personnel violations. ( A-6 )

Arbitrator Err

The arbitrator stated that I had over 26 years of experience, as an program analyst, which was not the case. I had over 26 years of federal experience. The arbitrator stated that a compelling component is the Agency's argument that as a Program Analyst the Grievant had long term experience in her profession. This statement is not accurate; therefore, the arbitrator's frame of reference was not accurate. Again, I had over 26 years of federal experience. Also, she stated that the length of federal service could not be used, but then she stated that it was a compelling argument for the agency. ( A-7 Page 12 )

/The arbitrator also agreed that the bulleted points were not to be used. However, when she rendered her decision. She specifically used the bulleted points.

( A-8 )

These mistakes that were made by the arbitrator were detrimental to the outcome of my case and therefore should be overturned.

Conclusion

The administrative judge had me separate my two cases, in which the full board has stated that he should not have done, which is also confusing. If the administrative judge did not separate my two cases, the involuntary retirement aspect of the case would have been before the Board, in the initial appeal. In addition to the new evidence and the arbitrator err claims. I am requesting that the Court allow the involuntary retirement claim, because it was before the arbitrator and was not initially separate. I am also requesting for the Court to allow the Board to hear the

discrimination aspect of this case, because it was before the arbitrator initially. Again, my initial complaint included new evidence, arbitrator err, and other claims. (Please see "Respondent's Informal Brief and Appendix"(14-3072).(RA56-RA88).

My question to the MSPB and the Court is "How is an agency going to concede to mistreatment of an employee, but have stated time and time again, even before the arbitrator that they have treated me fairly"? It is evident that the agency have abused their power, by stating facts that they know are inaccurate. Again, they have stated "Appellant was also subjected to adverse treatment by the Agency when she was removed for poor performance pursuant to Chapter 43. Respectfully stating, instead of the MSPB arguing over jurisdiction, it would seem that they would take jurisdiction over this case just because of the lack of integrity on the agency's part.

I am requesting that the Court remand my case to the MSPB for a hearing.

Respectfully Submitted,

Maria Jones
10402 Tottenham Road
Cheltenham, MD 20623
(240) 476-5250

**Statement Regarding Discrimination**

The underlying factor in my removal was discrimination, in the form of retaliation. Mr. Robert Pafe (immediate supervisor) and Ms. Enda Thomas (deciding official and second line supervisor) both were parties to my pending EEOC complaint. When Ms. Thomas came on-board, I had a pending EEO complaint. Ms. Thomas became comfortable with me and started speaking ill towards the caucasians, in our office. At the time, Ms. Thomas and myself were the only African-Americans in our office. Ms. Thomas stated how she hated white people, especially white women. She stated that they thought that they were God's special gift to the world. She stated they thought they were privileged, especially when they were expecting children. Ms. Thomas constantly marked them and stated how she thought they were "trash". Ms. Thomas made these comments daily and to a great extent.

In addition to her language, she started mistreating all of them, except one. (Ms. Thomas had stated that someone told her that this individual had dated a black man, so she did not bother her.) She targeted most of the women and one man. These women were crying at their desk and one actually called me in tears stating that her chest was hurting. There was one woman who was expecting a child, who was harassed and refused to return after her maternity leave. The one man, who she targeted, lived in the western part of Maryland. Ms. Thomas stated how he was a racist because he lived there. Ms. Thomas and Mr. Pafe started harassing me because I reported her to their supervisor and filed a grievance. At that point, I became Ms. Thomas' enemy. Ms. Thomas discriminated/retaliated/harassed employees for different reasons.

It is unfortunate because these individuals were so afraid of Ms. Thomas, that they were afraid to speak up. Also Ms. Thomas was demoted, shortly after my termination and she has filed a discrimination case against the agency. These individuals are still afraid of her because they are afraid that she is going to be ordered back into her position.

Mr. Pafe placed a statement on one of my performance appraisals stating that I spoke of discrimination (A-9 ). This statement alone is clearly linking my performance with my discrimination case. In addition, during one of our PIP meetings he spoke to me regarding my discrimination case and I contacted the EEO investigator directly after his conversation. (A-10 )

I also received a cash award and an adequate mid-year performance rating, shortly before I filed a complaint of discrimination. Also, there is evidence that Ms. Thomas was trying to upgrade my position. (A-11 ) Therefore my performance only became poor when I reported Ms. Thomas to her supervisor.

The agency provided evidence that stated that I felt I was being forced out of my position. The agency's evidence/exhibit stated "***You displayed negative feeling when you are provided feedback and state that it all related to discrimination rather than performance. You said that all of our efforts are geared towards having you fired***." **The Agency's evidence also stated, "*You said the whole basis of the PIP was retaliation…*"** (Also, in this exhibit, Mr. Pafe wrote some notes in an effort to make me appear in a negative light, before the arbitrator. Some of his notes are not factual or exaggerated and can be proven, as so.)

(A-12 )

My position from the very beginning was that I was placed on a PIP because of my EEO activities. These two supervisors did almost any and everything to get me removed. I would like

to show the Court that my supervisor's facts are sometimes purposely "not accurate". For instance, they testified on numerous occasions, ***before the arbitrator***, that there were no funds for me to take any training classes. However, please see the attached training report that was provided to Ms. Thomas (Supervisor and Deciding Official) and Mr. Pafe. The handwriting in the margins is Ms. Thomas'. During the early part of the fiscal year, the organization had spent over $85,000 in training funds. (A-13 )

Under the Freedom of Information Act, the agency provided me with training costs from January 2011 through my termination, the organization **spent over $199,500** in training funds, during the time that they testified that there was a Continuing Resolution and limited funds were being used. They testified that the Continuing Resolution made it impossible for me to obtain training, during my PIP period. However, the record will show that there were thousands of dollars spent on training. In addition, only Ms. Thomas or Mr. Pafe, as budget officials, authorized the use of all of these funds. Therefore, the actual facts contradict both of their testimony. (A-14 )

**Discrimination Before Arbitrator - Arbitrator's Ruling**[1]

The discrimination aspect of my case was a claim that was made before the arbitrator. The arbitrator's ruling stated, "the Agency maintains that the Union's allegation that the Performance Improvement Plan (PIP) was predetermined is simply untrue." The ruling goes on to further state, "In response to the Union's witness, a resigned Agency contractor, the Agency rebuts that her testimony regarding sabotage by Agency officials is again not credible."

(A-~~15~~ 7 )

[1] I had two cases before the MSPB DC-0752-13-0168-I-1 (14-3081) and CB-7121-13-0111-V-1 (14-3072). In the case of CB-7121-13-0111-V-1 (14-3072), the Board inaccurately held that discrimination was not before the arbitrator.

The arbitrator also stated, "In regards to the Grievant's second-line supervisor, Director Thomas, the Union asserts that there was **<u>bias and hostility</u>** against the Grievant because the Grievant went over the Director's head to discuss issues with current Assistant Secretary McConnell. Subsequently, the Union further asserts that Director Thomas relayed to several present and former employees that the Grievant would no longer have a job at the Agency. Thus, the Union argues that the Grievant's existence with the Agency was predetermined and violative of the regulations governing her removal." (For the record, I spoke to Mr. McConnell regarding Ms. Thomas' erratic behavior. ( A-X63 )

In the arbitrator's ruling it also states, "Fifth, in response to the Union's argument of bias, hostility or the presence of a predetermined outcome regarding the Grievant's PIP's assessment…" ( A-X7 )

Again the agency submitted an exhibit to the arbitrator that clearly states that I thought discrimination was the reason for my termination.

**<u>NTEU Post-Hearing Brief</u>**

The post-hearing brief had a section that was entitled, "<u>Ms. Thomas held a significant bias against Ms. Jones</u>." This section stated that the "reasonable opportunity period must be free of bias …" ( A-X2 )

Respectfully Submitted,

Maria Jones
10402 Tottenham Road
Cheltenham, MD 20623
(240) 476-5250

Certificate of Service

I am certifying that Michael A. Carney was sent a certified copy of my Informal Brief and Statement of Discrimination to the following address *via* first class mail:

Michael A. Carney
US Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419

Respectfully Submitted,

Maria Jones
10402 Tottenham Road
Cheltenham, MD 20623
(240) 476-5250

A-1

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

*MARIA LAVINIA JONES,*
Appellant,

v.

DEPARTMENT OF ENERGY,
Agency.

*DOCKET NUMBER*
DC-0752-13-0168-I-1

DATE: January 27, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Maria Lavinia Jones, Cheltenham, Maryland, pro se.

Jocelyn Richards and Victoria Bernhardt, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed the appellant's initial appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision as modified by this Order, still dismissing the appeal for lack of jurisdiction. This is the Board's final order in this matter pursuant to 5 C.F.R. § 1201.113(e).

The appellant filed an initial appeal following her removal from employment. *See* Initial Appeal File (IAF), Tab 1. After issuing several orders and conferring with the parties, the administrative judge determined that the appellant wished to file a request for review of an arbitration decision affirming her removal. *See* IAF, Tabs 35, 41; *see also* 5 U.S.C. § 7121(d). The administrative judge forwarded the appellant's request for review to the Clerk of the Board, noting that such a request can only be adjudicated by the full Board.[2] *See* IAF, Tab 41; *see also Brent v. Department of Justice*, 100 M.S.P.R. 586, ¶ 6 (2005), *aff'd*, 213 F. App'x 993 (Fed. Cir. 2007). In his order forwarding the appellant's request for review to the Clerk of the Board, however, the administrative judge determined that the appellant was also raising an involuntary retirement claim, which "was not raised before the arbitrator," and he decided

[2] *See* Request for Review File in *Jones v. Department of Energy*, MSPB Docket No. CB-7121-13-0111-V-1. The appellant's request for review of the arbitrator's decision was processed separately from the instant appeal.

that "the [involuntary retirement] claim will be retained by this office for full adjudication." IAF, Tab 41 at 2. The administrative judge subsequently issued an initial decision dismissing the appellant's involuntary retirement claim for lack of jurisdiction. IAF, Tab 42, Initial Decision (ID). The appellant has filed a petition for review of that initial decision, and the agency has filed an opposition. *See* Petition for Review File, Tabs 1, 3.

In his initial decision, the administrative judge concluded that the appellant failed to satisfy the Board's standard for establishing jurisdiction over an involuntary retirement appeal. ID at 3-5. Upon our review of the record, however, we conclude that the administrative judge should not have construed the initial appeal as raising a separate involuntary retirement claim. The record reflects that the appellant retired effective February 16, 2012, 1 day prior to the effective date of her removal. *See* IAF, Tab 36 at 4; Tab 6, Subtab 4c (letter of decision); Tab 1 (Form 50 reflecting appellant's retirement). Under similar circumstances, the Board has "analyzed joint removal and retirement claims as removal actions, without regard to the voluntariness of the retirement decision[.]" *Paula v. Social Security Administration*, 119 M.S.P.R. 138, ¶ 13 (2013); *see Scalese v. Department of the Air Force*, 68 M.S.P.R. 247, 248-49 (1995) (instructing that an employee who retires on the effective date of his removal does not lose the right to challenge his removal and that whether the employee's retirement was involuntary "need not be addressed").

The administrative judge, therefore, should not have construed the appellant's initial appeal as raising a separate involuntary retirement claim, but rather as only raising a challenge to her removal. *See Paula*, 119 M.S.P.R. 138, ¶ 13; *Scalese*, 68 M.S.P.R. at 248-49. At the time the appellant filed her initial appeal, however, the appellant had already challenged her removal through the negotiated grievance procedure, and she had received an arbitration decision

affirming her removal.[3] *See* IAF, Tab 6, Subtab 4a. Under these circumstances, we find that the appellant made an election of remedies to challenge her removal through the grievance process under 5 U.S.C. § 7121(e)(1) and that the appellant was precluded from filing an initial appeal with the Board challenging the merits of her removal. *See Crawford-Graham v. Department of Veterans Affairs*, 99 M.S.P.R. 389, ¶ 6 (2005) ("Under 5 U.S.C. § 7121(e)(1), matters covered by 5 U.S.C. § 7512 that also fall within the coverage of a negotiated grievance procedure may, at the discretion of the aggrieved employee, be raised either under the appellate procedures of 5 U.S.C. § 7701 or under the negotiated grievance procedure, but not both."). Under the facts of this case, therefore, the appellant was limited to filing a request for review of the arbitrator's decision under 5 U.S.C. § 7121(d), which the administrative judge properly forwarded to the Clerk of the Board.[4] *See* IAF, Tab 41; *see also Brent*, 100 M.S.P.R. 586, ¶ 6.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

This constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the

---

[3] The record reflects that the appellant's collective bargaining agreement provided the appellant with the right to challenge her removal through the grievance process, *see* IAF, Tab 6, Subtab 4h at 49-54, and the agency's letter of decision effectuating her removal apprised her of her right to file either a grievance or a Board appeal, *see* IAF, Tab 6, Subtab 4c; *see also Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 13, 15 (2013).

[4] On June 17, 2013, the appellant filed a motion to submit an additional pleading, in which she sought to submit evidence allegedly showing that the agency had acknowledged "deficiencies in the agency's performance management system." PFR File, Tab 6. Because the evidence referenced by the appellant is not material to the outcome of this case, the motion is DENIED.

Additionally, on January 8, 2014, the appellant filed a pleading entitled "Note to the Board." PFR File, Tab 8. We have not considered this pleading because it was filed after the record closed on review and not in accordance with the Board's procedures set forth at 5 C.F.R. § 1201.114.

United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. *Additional information is available at the court's website, www.cafc.uscourts.gov.* Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

FOR THE BOARD:

William D. Spencer
Clerk of the Board

Washington, D.C.

A-2

**BEFORE**
**ARBITRATOR ANDREE MCKISSICK**

| | |
|---|---|
| IN THE MATTER OF ARBITRATION BETWEEN:<br><br>NATIONAL TREASURY EMPLOYEES UNION<br>Chapter 213<br><br>Union,<br><br>v.<br><br>DEPARTMENT OF ENERGY,<br>Headquarters<br><br>Agency. | Re: Maria Jones Removal |

**UNION'S POST-HEARING BRIEF**

Timothy B. Hannapel
National Counsel

Jared S. Gross
Assistant Counsel

National Treasury Employees Union
1750 H Street N.W., 9th Floor
Washington, D.C. 20006
(202) 572-5620

Attorneys for NTEU

October 1, 2012

## TABLE OF CONTENTS

INTRODUCTION ........................................ 1

STATEMENT OF THE CASE ........................................ 1

STATEMENT OF THE FACTS ........................................ 2

I. THE OPPORTUNITY LETTER, GUIDANCE, AND ASSISTANCE PROVIDED TO MS. JONES BY THE DEPARTMENT OF ENERGY ........................................ 3

A. The PIP Meetings ........................................ 4

B. Guidance and assistance outside of the PIP Meetings .. 5

II. TRAINING PROVIDED TO MS. JONES ........................................ 7

III. THE PROFESSIONAL RELATIONSHIP BETWEEN MS. JONES AND MS. THOMAS ........................................ 8

ISSUE PRESENTED ........................................ 10

RELEVANT STATUTORY LANGUAGE ........................................ 11

ARGUMENT ........................................ 11

I. BURDEN OF PROOF ........................................ 11

II. THE AGENCY CANNOT ESTABLISH BY SUBSTANTIAL EVIDENCE THAT MS. JONES WAS PROVIDED A REASONABLE OPPORTUNITY TO IMPROVE HER PERFORMANCE. ........................................ 12

A. The PIP Meetings were not conducted in a manner that could reasonably assist Ms. Jones' improve her performance. ........................................ 14

B. Ms. Jones was not provided a sufficient amount of training during the Opportunity Period. ............ 17

C. Ms. Thomas and Mr. Pafe's guidance to Ms. Jones outside of the PIP Meetings failed to provide her with a reasonable opportunity to improve her performance. 19

D. Ms. Thomas held a significant bias against Ms. Jones. ........................................ 21

CONCLUSION ........................................................ 22

CERTIFICATE OF SERVICE ........................................... 24

NTEU

## INTRODUCTION

Grievant Maria Jones, a federal employee for 26 years, challenges her removal for unacceptable performance. In January 2011, she was placed on a performance improvement plan ("PIP"), and ultimately terminated for unacceptable performance. The Department of Energy ("DOE") had the obligation to provide Ms. Jones with a reasonable opportunity to improve her performance before she was removed. Due process mandates this obligation, and an arbitrator must reverse a removal when the agency fails to provide an employee a reasonable opportunity to improve their performance. The Department of Energy, however, removed Ms. Jones from federal service without meeting this obligation, and she was forced to take a discontinued service retirement to maintain an income. For the reasons presented below, the removal should be reversed.

## STATEMENT OF THE CASE

Ms. Jones was placed on a 90-day Performance Improvement Plan[1] on January 5, 2011. JX # 2.[2] On April 5, 2011, the PIP was extended an additional 30 days until May 5, 2011, JX # 3, and on May 13, 2011 the DOE notified Ms. Jones that she failed her PIP. JX # 4. The DOE proposed to remove Ms. Jones on August 25,

[1] The terms PIP and Opportunity Period will be used interchangeably.

[2] References to Union exhibits will be indicated as "UX # __;" joint exhibits will be indicated as "JX # __;" and Agency exhibits will be indicated as "MX # __".

## INTRODUCTION

Grievant Maria Jones, a federal employee for 26 years, challenges her removal for unacceptable performance. In January 2011, she was placed on a performance improvement plan ("PIP"), and ultimately terminated for unacceptable performance. The Department of Energy ("DOE") had the obligation to provide Ms. Jones with a reasonable opportunity to improve her performance before she was removed. Due process mandates this obligation, and an arbitrator must reverse a removal when the agency fails to provide an employee a reasonable opportunity to improve their performance. The Department of Energy, however, removed Ms. Jones from federal service without meeting this obligation, and she was forced to take a discontinued service retirement to maintain an income. For the reasons presented below, the removal should be reversed.

## STATEMENT OF THE CASE

Ms. Jones was placed on a 90-day Performance Improvement Plan[1] on January 5, 2011. JX # 2.[2] On April 5, 2011, the PIP was extended an additional 30 days until May 5, 2011, JX # 3, and on May 13, 2011 the DOE notified Ms. Jones that she failed her PIP. JX # 4. The DOE proposed to remove Ms. Jones on August 25,

[1] The terms PIP and Opportunity Period will be used interchangeably.

[2] References to Union exhibits will be indicated as "UX # __;" joint exhibits will be indicated as "JX # __;" and Agency exhibits will be indicated as "MX # __".

Thomas explained that she would have been happy if Ms. Jones succeeded the PIP. TR, 126. She also denied ever discussing a desire or intention to remove Ms. Jones. TR, 125-26. Ms. Thomas' true feelings about Ms. Jones, however, were corroborated by other witnesses. Ms. Elizabeth Ryan testified that on repeated occasions Ms. Thomas spoke negatively about Ms. Jones. TR, 201. Ms. Ryan was a contractor at the DOE, and was hired by Ms Thomas on July 3, 2011.[4] As early as April or May of 2011, when Ms. Ryan was still a contractor, Ms. Thomas stated to her that Ms. Jones was going to be out of a job. TR, 200-01. In June or July 2011 Ms. Thomas explained to Ms. Ryan that Ms. Jones infuriated her by speaking to Mr. Chuck McConnell.[5] TR, 201. Ms. Ryan explained that while Ms. Thomas never used the word "fired," she was emphatic that Ms. Jones' career at DOE was over. See TR, 201.

Ms. Ryan also stated that sometime after July 3, 2011, Mr. Pafe told her that Ms. Thomas "had it out for [Ms. Jones], and so [Ms. Jones] was going to be gone." TR, 201. Ms. Ryan explained that she could not have misheard Ms. Thomas, because Ms. Thomas frequently spoke about Ms. Jones, and often at great length. See TR, 204. Ms. Ryan was not the only person to

---

[4] Ms. Ryan eventually resigned from the DOE, and testified that it was in lieu of termination by Ms. Thomas. TR, 199.

[5] At the time, Mr. McConnell was Chief Operating Officer, and is now the Assistant Secretary for FE. TR, 205.

testify that Ms. Thomas stated that Ms. Jones' had no future at the DOE. Ms. Linda Sapp, a DOE employee, testified that during a meeting with Ms. Thomas she asked her about the whereabouts of Ms. Jones, and Ms. Thomas replied that Ms. Jones was not here, and would not be returning. TR, 208. Although Ms. Sapp first stated this took place in late September or early October of 2011, TR, 208-09, she became confused about the exact year. She insisted, however, that Ms. Jones was still an employee at the DOE during this conversation. TR, 211-14.

At times during the hearing, Ms. Thomas contradicted herself. For example, Ms. Thomas considered Ms. Jones' defense of her work product and management's actions during the opportunity period as a sign that she was not "rehabilitated." See TR, 125. Ms. Thomas also testified that "she tried everything she could," and never had to provide a GS-12 as many opportunities as she did to Ms. Jones. Id. at 125, 130. Ms. Thomas, however, testified that at the oral reply she would have likely provided Ms. Jones a second chance if she had asked for one. See TR, 125. She, therefore, did not try everything she could, because she admitted that she could have granted Ms. Jones a second chance.

## ISSUE PRESENTED

Whether or not the Department of Energy provided the Grievant with a reasonable opportunity to improve before

removing her from federal service. If not, what shall the remedy be?

## RELEVANT STATUTORY LANGUAGE

5 U.S.C. section 4302 - Establishment of performance appraisal systems

> (b) Under regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for:
>
> > (6) Reassigning, reducing in grade, or removing employees who continue to have unacceptable performance but only after an opportunity to demonstrate acceptable performance.

## ARGUMENT

### I. BURDEN OF PROOF

The Agency's burden of proof in an unacceptable performance case is substantial evidence. Towne v. Department of Air Force, 2012 MSPB LEXIS 2500, *5-6 (April 25, 2012). See also Sandland v. General Services Administration, 23 M.S.P.R. 583, 587 (1984). Substantial evidence is defined as the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 CFR § 1201.56(c)(1) (2006).

## II. THE AGENCY CANNOT ESTABLISH BY SUBSTANTIAL EVIDENCE THAT MS. JONES WAS PROVIDED A REASONABLE OPPORTUNITY TO IMPROVE HER PERFORMANCE.

Federal law provides that an employee may be removed for inadequate performance, but "only after an opportunity to demonstrate acceptable performance." 5 U.S.C. § 4302(b)(6). The MSPB has described the right to a meaningful opportunity to improve as "one of the most important rights in the entire Chapter 43 performance appraisal framework," requiring the removal to be reversed if the agency cannot prove by substantial evidence that the employee was provided a reasonable opportunity to improve unacceptable performance. Towne, 2012 MSPB LEXIS at 2500, *34 (citations omitted). This puts an affirmative obligation on the Agency to provide encouragement, training, and assistance. Sandland, 23 MSPR at 589.

Arbitrators and MSPB judges have developed a rich body of precedent that has fleshed out the requirements for a "reasonable opportunity to improve." See, e.g., id., at 589-90 (explaining that the agency has the affirmative obligation to "provide employees whose performance is unacceptable with encouragement and afford them training and assistance in order to achieve improved performance"); IRS & NTEU Chapter 60, 12 (2003) (Arb. Abrams) (during the opportunity period, the agency has an affirmative obligation to provide assistance, including encouragement); NTEU Chapter 62 & IRS, Baltimore District, 27

(1989) (Arb. Vaughn) (observing that the MSPB uses several terms to describe the nature of the opportunity, including: "reasonable," "fair and meaningful," "bias-free, and without predetermined result"). These cases demonstrate that there is no "one-size-fits-all" approach to conducting a PIP. Placed into this calculus are the employee's duties and responsibilities, the deficiencies involved, and the amount of time that would be sufficient for the employee to demonstrate acceptable performance, and the assistance provided to the employee. Carrillo v. Dep't of Health and Human Services, 2012 MSPB LEXIS 4201, *11 (July 31, 2012) (citing Macijauskas v. Dep't of the Army, 34 M.S.P.R. 564, 566 (1987), aff'd, 847 F.2d 841 (Fed. Cir. 1988), and 5 C.F.R. § 432.104).

The employee's grade and length of federal service in that grade, however, are not relevant to the reasonable opportunity determination. The following factors are relevant: First, that the DOE did not uphold its promises in the Opportunity Letter to meet with Ms. Jones on a weekly basis to provide assistance and guidance to improve her performance. The meetings that actually were held fell short of any threshold of reasonableness. Second, despite management's agreement that training was needed in particular areas, she was denied such training. Third, despite determining that Ms. Jones was not succeeding the Opportunity Period, management extended the PIP, and management

did not exhaust all efforts to provide assistance nor did it attempt to reformulate its approach for assisting Ms. Jones.

**A. The PIP Meetings were not conducted in a manner that could reasonably assist Ms. Jones' improve her performance.**

The PIP meetings for Ms. Jones were devoid of any constructive discussion aimed at improving her performance. Reviewing an employee's work limited to indicating errors is not sufficient. See IRS Chicago District & NTEU Chapter 10 ("Foster"), 55 (1996) (Arb. Fletcher) (stating "an opportunity period is not intended to document failure, but instead, most certainly, is designed to provide an employee with a chance to demonstrate acceptable performance") (emphasis in the original). See also IRS and NTEU Chapter 49 ("Rios"), 18-19 (2004) (Arb. Kahn) (finding that an employee on a PIP was due "coaching" and not just "monitoring"). PIP meetings should involve constructive discussion as opposed to mere review of the employee's work. See id. at 19. In March 2011, once he began providing feedback on her performance, Mr. Pafe' comments consisted solely of reciting a list of Ms. Jones' alleged errors. TR, 147. This is evident from both Mr. Pafe's notes and the three handouts he provided Ms. Jones. TR, 151; MX # 5; UX # 6; UX # 7; UX # 8. He never elaborated on her errors, and never showed Ms. Jones an error on the actual documents allegedly containing the error. TR, 147, 159, 190. There were no

discussions on how to not repeat the errors, no suggestions for doing her work differently, and the bulk of the meeting was spent on Mr. Pafe discussing such irrelevant subjects as his daughter or his shoulder. TR, 147-48, 154, 159, 190.

There were approximately 10 PIP meetings. TR, 166. While there is no legal obligation to provide a struggling employee with weekly PIP meetings, the DOE cannot now walk away from its written commitment to provide Ms. Jones with such meetings. See Corbett v. Dep't of the Air Force, 59 M.S.P.R. 288, 290 (1993) (finding that an agency does not meet its burden in a Chapter 43 removal "where it promises an appellant assistance during a PIP, and then both fails to provide such assistance and otherwise prejudges the appellant or hinders the appellant's chances to succeed."). Ms. Jones' PIP lasted approximately 17 weeks, and her first PIP meeting did not take place until one week after she was placed on the PIP. TR, 145. Mr. Pafe testified that he held weekly meetings for Ms. Jones, but he contradicted himself during cross-examination. See TR, 27, 74. Mr. Pafe testified that his notes were a "recording of the [PIP] meeting[s]," and he did not begin taking notes until he started providing feedback to Ms. Jones on March 17, 2011 three months after the PIP began. TR, 72-73, 74; MX # 5. Yet, he also testified that the first several meetings did not include feedback. TR, 74-75.

Accordingly, there were fewer than approximately three or four PIP meetings prior to March 17, 2011.

Mr. Pafe's testimony regarding his notes is problematic for other reasons. First, his claim that the notes were him "going back" or "recordings [of] the meeting[s]" is contradicted by the fact that the three lists he provided to Ms. Jones documenting her errors are identical to what was written in the notes. MX # 5; UX # 6; UX # 7; UX # 8. Those lists were provided to Ms. Jones during the PIP meeting, and therefore, were necessarily drafted before the meeting ever took place. TR, 151. Second, Mr. Pafe testified that each note referred to a PIP meeting. TR, 73. The Opportunity Period, however, ended on May 5, 2011, and the notes continued until May 31, 2011. MX # 5 at 3. Third, the notes are devoid of any positivity or encouragement regarding Ms. Jones.

Contrary to the requirements articulated in the case law, Mr. Pafe's notes appear to merely document her shortcomings as if he was building a record against her, and some of the notes are merely documenting that Ms. Jones failed to perform a particular task or assignment. <u>See, e.g.</u>, <u>Foster</u> at 55. Mr. Pafe and Ms. Thomas' testimony that there was nothing else they could have done for Ms. Jones to succeed is belied by the fact that they could have actually held a constructive and

encouraging PIP meeting every week during the Opportunity Period.

**B. Ms. Jones was not provided a sufficient amount of training during the Opportunity Period.**

Ms. Jones received approval for two classes during the Opportunity Period, and explained how helpful these courses were, but was wrongfully denied any additional training or learning opportunities. TR, 156, 176-77; MX # 3; UX # 9. Arbitrator Kahn explained: "the employee must not be deprived of access to learning opportunities or excluded from relevant activities." Rios at 10. See also Camacho v. Dep't of Navy, 2012 MSPB LEXIS 3591, *23-25 (June 28, 2012) (reversing the agency's removal of an employee under Chapter 43, because the appellant, inter alia, was not provided sufficient assistance to "develop the analytical capability . . . to reach an acceptable level of performance."). Ms. Thomas described training as "vital," TR, 90, and the Opportunity Letter recommended training courses for Ms. Jones. JX # 2 at 8-9. Mr. Pafe even noted that Ms. Jones "still need[ed] classes to enhance [her] analysis capacity." TR, 72; MX # 5 at 1. Ms. Jones, however, was told not to apply for classes during the CR, and all of the analysis classes she signed up for after the CR concluded were denied. TR, 157; UX # 1; UX # 2; UX # 3; UX # 9.

Despite believing in the value of training, recommending training, and knowing how it helped Ms. Jones, Ms. Thomas and Mr. Pafe denied her this "vital" asset. The Agency's rationale does not withstand scrutiny. See Corbett, 59 M.S.P.R. at 290 (1993). Ms. Jones management placed her on a PIP during a CR despite acknowledging that training was essential for her success. They cannot now use the CR as an excuse to deny Ms. Jones this vital and important tool to improve her performance. Additionally, the CR ended in March 2011, and Ms. Jones applied for the next available analysis classes. TR, 66, 134, 177-78. DOE management could have extended the PIP to permit Ms. Jones to benefit from the additional training, but they chose to terminate Ms. Jones instead.

Ms. Thomas' other excuse for denying Ms. Jones necessary training--that Ms. Jones scheduled an entire month's worth of classes--is equally unavailing if not downright untrue. When asked to identify the month by NTEU counsel, Ms. Thomas could not. TR, 122, 134. Such a period of time did not exist. Rather, Ms. Jones sought classes that would have kept her out of the office for a total of 10 days between May 16 and June 10, 2012. UX # 9. Moreover, nothing prevented Ms. Thomas from approving some, but not all, of the classes requested.

C. **Ms. Thomas and Mr. Pafe's guidance to Ms. Jones outside of the PIP Meetings failed to provide her with a reasonable opportunity to improve her performance.**

Management testified that the "guidance" that was provided Ms. Jones through email was sufficient for an employee at the GS-12 level. TR, 42, 52, 53, 53-54, 58-60, 61, 107, 124-25. These emails could not reasonably have assisted Ms. Jones in improving her performance, and should not even be considered guidance--under any reasonable definition of that term. Examples from the "email guidance" at hearing include:

- Instructing Ms. Jones to contact a point of contact when she asked Mr. Pafe if he was aware if anyone else had done a similar assignment. She had already spoken with the point of contact, however. See AX # 4.

- Explaining the reason behind making monthly reports. AX # 6.

- Responding to Mr. Pafe's comment, Ms. Jones explained what she did in a particular chart. AX # 7.

- Mr. Pafe pointing out errors and complaining that he and Ms. Thomas spend too much time on work that Ms. Jones should have performed differently. AX # 8.

- Ms. Jones and Ms. Thomas discussing why Ms. Jones placed a "????" on a spreadsheet, and Ms. Jones attempting to explain herself. MX # 10.

- Ms. Jones and Ms. Thomas discussing where a particular amount of funds will be placed on a spread sheet. See MX # 11.

- Ms. Thomas assigning Ms. Jones an assignment, and asking for additional information. MX # 13; MX # 14.

- Ms. Jones expressing a concern that the numbers she was working with did not equal a particular percentage

reduction and Ms. Thomas making a suggestion how it might be reached. MX # 15.

- Ms. Thomas expressing frustration to Ms. Jones about certain numbers changing. MX # 16.
- Ms. Jones explaining to Ms. Thomas the status of particular funds. MX # 17.
- Mr. Pafe not understanding Ms. Jones' response to Ms. Thomas in MX # 17. MX # 18.
- Ms. Thomas assigning work to Ms. Jones. MX # 19.

Expressing frustration, lack of understanding, as well as merely assigning Ms. Jones work falls short of the constructive engagement required by the case law. See Rios at 10.

Assuming arguendo that both the PIP meetings and the email guidance could have been sufficient in the abstract, they were clearly not sufficient for Ms. Jones. Because the meetings and emails were not successful, the DOE had an obligation to "try more intensive training or instructional techniques." Id. at 18. Neither Mr. Pafe nor Ms. Thomas exhibited any flexibility, however, or any willingness to alter their approach for Ms. Jones. This static approach, combined with an unwillingness to lower her workload, indicates either that Ms. Thomas and Mr. Pafe did not feel they needed to provide any additional assistance, or they did not pay enough attention to know that Ms. Jones needed any such assistance. Either way, Ms. Jones' supervisors' conduct outside of the PIP meetings contributed to their failure to provide a reasonable opportunity to improve.

**D. Ms. Thomas held a significant bias against Ms. Jones.**

A reasonable opportunity period must be free of bias, and there must be a harmonious relationship between the struggling employee and the individuals tasked with assisting that employee. See Zang v. Defense Investigative Service, 26 M.S.P.R 155, 157 (1985) (explaining that counseling and supervision provided must be free of bias and without a pre-ordained result). Ms. Ryan[6] testified that on multiple occasions Ms. Thomas expressed disdain for Ms. Jones and that Ms. Jones' employment at the DOE would soon cease. TR, 200-205. Her testimony was corroborated by Ms. Sapp, TR, 208-09, and Ms. Jones testified that Ms. Thomas avoided her. TR, 156. Ms. Thomas' disdain for Ms. Jones is further compounded by the fact that she clearly misunderstood her role as the deciding official in Ms. Jones Chapter 43 removal. She testified that had Ms. Jones asked for a second chance she would have deemed her "rehabilitated," and likely would have granted Ms. Jones an additional chance. See TR, 125. Yet, this is a Chapter 43 performance-based removal not subject to the Douglas Factor analysis. Lee v. Dep't of Labor, 110 M.S.P.R. 355 ¶ 12 (2008) (explaining that "the Board has no authority to mitigate a removal or demotion action taken under 5 U.S.C. Chapter 43 for

[6] Ms. Ryan testified that she resigned in lieu of termination after briefly noting that Ms. Jones fired her. TR, 199. That fact alone should not impact the reliability of her testimony. Indeed, the DOE did not put forth any testimony or evidence to show Ms. Ryan lacked credibility.

unacceptable performance"). Ms. Thomas' decision needed to have been based upon whether Ms. Jones received a reasonable opportunity to improve, and if so, whether she successfully improved her performance to an appropriate level. Whether Ms. Jones blamed others or begged for mercy was simply not an appropriate part of Ms. Thomas' analysis.[7] Accordingly, Ms. Thomas' own bias against Ms. Jones and the process she carried out when deciding to remove Ms. Jones demonstrate that Ms. Jones failed to receive a reasonable opportunity to improve her performance.

## CONCLUSION

For the above reasons, the DOE cannot demonstrate by substantial evidence that Ms. Jones was afforded a reasonable opportunity to improve her performance. The removal must, therefore, be reversed. To remedy the Agency's violations, the Union requests that the Arbitrator direct the following:

1. Reverse the removal and reinstate Ms. Jones;

2. As required by the Back Pay Act, that the Agency pay Ms. Jones all back pay (mitigated by any retirement benefits received by Ms. Jones) that she would have earned if she had not been removed plus interest;

3. The Arbitrator retain jurisdiction for enforcement of her order and entertain a petition for attorney fees;

[7] Perhaps not intentionally, Ms. Thomas' view would have employees risk admitting all of the charges or accusations, and merely seek mercy without any guarantee that the deciding official would grant their plea. The employee would then be in a poor position to challenge the removal, because they are on record admitting the agency's accusations.

4. Any other relief deemed appropriate by the Arbitrator.

Respectfully submitted,

Timothy B. Hannapel
National Counsel

Jared S. Gross
Assistant Counsel

National Treasury Employees Union
1750 H Street, N.W.
Washington, D.C. 20006
(202) 572-5530
(202) 572-5640 (fax)
tim.hannapel@nteu.org
jared.gross@nteu.org

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October 2012, the NTEU's Post-hearing Brief and attachments via Certified Mail, returned-receipt requested, to the following:

Dr. A. Y. McKissick
Arbitrator
2808 Navarre Drive
Chevy Chase, MD 20815-3802

Jocelyn Richards
Attorney-Advisor
Office of the Assistant General Counsel for General Law
U.S. Department of Energy
1000 Independence Ave., SW
Washington, D.C. 20585

October 1, 2012
Date

Jared S. Gross
Assistant Counsel

A-3



ARBITRATOR McKISSICK: Ms. Ryan --

MS. RYAN: Yes.

ARBITRATOR McKISSICK: -- we're in the middle of a hearing and we're very pleased that you're able to give us some insight on this case involving Ms. Jones. So we're going to -- so you're the second witness and so I'm going to put you -- we're going to have direct and then cross of you through Mr. Gross and the DOE counsel here.

MS. RYAN: Okay.

ARBITRATOR McKISSICK: And so I'm going to swear you in even though you're not here. You want to raise your right hand.

Whereupon,

**ELIZABETH RYAN**

was called as a witness, and, having been first duly sworn, was examined and testified as follows:

ARBITRATOR McKISSICK: Okay. Instead of being seated I'm going to give you to Mr. Gross.

THE WITNESS: Okay.

**DIRECT EXAMINATION**

BY MR. GROSS:

Q Hello, there. This is Jared Gross. Please state your name for the record?

A Oh, hold on a second, I have another call

#2821052-15



that's coming in that I'm trying to ignore.

Q Okay.

A Oh, no, you're on a DOE number, that's the same one, sorry.

My name, for the record, is Elizabeth Marie Ryan.

Q Okay. And just to make sure, if you have any papers or anything in front of you, please move them out of the way.

A I have nothing in front of me.

Q Okay. And are you alone?

A I am alone.

Q Okay. Are you currently a Department of Energy employee?

A No.

Q Did you used to be a Department of Energy employee?

A Yes.

Q And why are you no longer a Department of Energy employee?

A Edna fired me. Well, I resigned in lieu of termination.

Q Okay. When you resigned, what grade were you?

A A GS-13, step 1.

41252105215



Q And when did you first start working at the Department of Energy?
A I was hired and started on July 3rd, 2011.
Q Prior to that date were you a contractor?
A Yes.
Q Did Ms. Thomas have any role in your hiring?
A Yes.
Q And what was her role?
A She was the hiring authority.
Q And prior to coming --
A She --
Q -- prior to coming on board as a fed, did Ms. Thomas make any comments about Ms. Jones to you?
A Yes.
Q And what did she state to you?
A She told me, and I can't quote exactly, but she told me basically that Maria Jones was going to be out of a job. She said that basically Maria wasn't going to do what Edna wanted her to and so Edna was going to make sure she didn't have a job.
Q And when did you have this conversation with Ms. Thomas?
A It would have been in the spring of 2011 around April, maybe the beginning of May.
Q After you became a federal employee did Ms.

4252105215



Q And when did you first start working at the Department of Energy?
A I was hired and started on July 3rd, 2011.
Q Prior to that date were you a contractor?
A Yes.
Q Did Ms. Thomas have any role in your hiring?
A Yes.
Q And what was her role?
A She was the hiring authority.
Q And prior to coming --
A She --
Q -- prior to coming on board as a fed, did Ms. Thomas make any comments about Ms. Jones to you?
A Yes.
Q And what did she state to you?
A She told me, and I can't quote exactly, but she told me basically that Maria Jones was going to be out of a job. She said that basically Maria wasn't going to do what Edna wanted her to and so Edna was going to make sure she didn't have a job.
Q And when did you have this conversation with Ms. Thomas?
A It would have been in the spring of 2011 around April, maybe the beginning of May.
Q After you became a federal employee did Ms.

1195210515



Thomas make any negative remarks about Ms. Jones?

A Yes. And throughout this time Ms. Thomas made negative remarks fairly consistently about Maria and other people. She said that Maria had gone to Chuck McConnell and tried to basically backdoor her and this seemed to infuriate Ms. Thomas who very emphatically told me that Maria was done. She never used the word, I don't think, "fired" to me, but said that she was going to be out of a job.

Q And when was this statement made to you?

A This would have been June, July, maybe going even into August, but I think this was sooner than that.

Q Of what year?

A 2011.

Q Did you work at all with Mr. Pafe?

A Ms. Thomas or Maria?

Q No, did you work at all with Mr. Robert Pafe?

A Yes. He was my supervisor technically.

Q Did he express anything to you about Ms. Jones' future at the Department of Energy?

A I think Bob basically said that Thomas had it out for Maria and so Maria was going to be gone.

Q And when did he make this statement to you?

A It would have been after July 3rd because I

#252105215



don't believe I had any conversations with Bob Pafe before that of 2011.

MR. GROSS: Okay. I have no further questions.

ARBITRATOR McKISSICK: Cross?

THE WITNESS: Hello?

**CROSS-EXAMINATION**

BY MS. BERNHARDT:

Q Hi. My name is Vicky Bernhardt. I represent the Agency along with Jocelyn Richards my colleagues and I just have a few questions for you.

A Okay.

Q So how long have you known Ms. Jones?

A I met her, I believe it was a week or so after she was hired in 2009 and I believe that would have been the end of summer, maybe early fall.

Q Okay. And did you consider Ms. Jones a personal friend?

A Never.

Q No? Did you work with Ms. Jones on her assignments concerning the Oil Spill Commission?

A No.

Q Did you work with Ms. Jones on her assignments concerning the working capital fund?

A Oh, no, I don't think so.

Q No? Okay. What about the travel report; did you work with Ms. Jones on that?

A I didn't work with her on those. I believe I may have asked her for some reports while she was there.

Q Okay. So you didn't directly work with Ms. Jones on any particular assignments in Fossil Energy?

A No.

Q Okay. And you testified that around June/July possibly June/July that Mr. Pafe and Ms. Thomas both stated that Ms. Jones would be removed?

A That Ms. Jones was what?

Q That Ms. Jones would be removed from the federal service?

A Yeah, maybe not those exact words, but, yes.

Q Okay. So they both said that she would be removed based on what?

A Edna wanted her to be.

Q Okay. How long have you known Ms. Thomas?

A Well, like I said, I original -- I originally met Ms. Thomas within a couple weeks of her being hired in 2009.

Q Okay. Did you like Ms. Thomas?

A I didn't really know her until she approached me to apply for this job. And I could not say I liked

# 95-10-5015

her, no.

Q So you did not like Ms. Thomas?

A I didn't say I didn't like her.

Q Well, that was my question; did you like her?

A No, but I didn't dislike her either. She was just someone I knew at work.

Q Okay. So is it possible that you may have misunderstood Ms. Thomas' statement that you say she made about removing Ms. Jones?

A Well, I don't believe so because she made them often and at great length.

Q Could she have said that she was prepared to remove her if she didn't improve her performance during the PIP?

A No, Edna never mentioned anything as far as that. Edna seemed to really have a intense dislike of Maria Jones which seemed to get worse after Edna told me that Maria Jones had gone to Jeff McConnell.

Q Okay. Did you -- did you ever witness Ms. Thomas or Mr. Pafe counseling Ms. Jones?

A No.

Q No. Okay.

MS. BERNHARDT: Okay. No further questions.

MR. GROSS: No redirect.

ARBITRATOR McKISSICK: Okay. Who was Chuck

Attachment 1

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | |
|---|---|
| MARIA LAVINIA JONES,<br>Appellant, | DOCKET NUMBER<br>DC-0752-13-0168-I-1 |
| v. | |
| DEPARTMENT OF ENERGY,<br>Agency. | DATE: March 18. 2013 |

## ORDER

This office is in receipt of the appellant's response to the Board's February 14, 2013 Order in which she was directed to address the jurisdictional issues surrounding whether she filed her appeal of the agency's removal action first to the Board or to the agency via its negotiated grievance procedure. In her response to the Order, the appellant plainly states the following:

> "I would like the Board to review my appeal based on discrimination and legal errors that were made by the Arbitrator."

*See* Appellant's Response to Order dated February 14, 2013. Likewise, in her note to the Administrative Judge dated February 28, 2013, in pertinent part, the appellant states that:

> "I have not elected to take more than one path in filing before the Board. I am simply requesting that the Board review the arbitrator's ruling, because of legal errors."

*See* Appellant's Note to Administrative Judge. Clearly, based upon the appellant's own explanations, her purpose in filing the instant appeal to the Board is to obtain Board review of the arbitrator's ruling in her case. It is well settled that her request is not within this is not within the province of the Board's administrative judges but, rather, is a matter to be handled by the Clerk of the

Board. *See Brent v. Department of Justice*, 100 M.S.P.R. 586, ¶ 6 (2005) ("In non-postal cases, requests for review of arbitration decisions properly are reviewed by the full Board and not by the Board's administrative judges."). The Board has further held that, after determining that the appellant was seeking review of the arbitrator's decision rather than directly appealing her removal, the administrative judge should simply forward the matter to the Board for consideration as a request for review rather than dismissing for lack of jurisdiction. *See Brent*, 100 M.S.P.R. 586, ¶¶ 1, 5-6.

The Board has jurisdiction to review an arbitration decision under 5 U.S.C. § 7121(d) where the subject matter of the grievance is one over which the Board has jurisdiction, the appellant has alleged discrimination as stated in 5 U.S.C. § 2302(b)(1) in connection with the underlying action, and a final decision has been issued. *De Bow v. Department of the Air Force*, 97 M.S.P.R. 5, ¶ 4 (2004). It is for the full Board to determine whether the appellant's request for review was timely filed and whether these jurisdictional criteria have been satisfied. Also, the appellant's allegations of discrimination and reprisal need not have been raised before the arbitrator. An appellant can establish the Board's jurisdiction under 5 U.S.C. § 7121(d) by asserting a claim of discrimination under 5 U.S.C. § 2302(b)(1) for the first time on review and the assertion of discrimination need not constitute a nonfrivolous allegation of discrimination. *Pleasant v. Department of Housing & Urban Development*, 98 M.S.P.R. 602, ¶ 6 (2005).

Accordingly, I am transferring this appeal to the Clerk of the Board for full Board review of the arbitrator's decision as well as the discrimination and retaliation claims the appellant may wish to raise in connection with it. However, since it is clear that the appellant's involuntary retirement claim was not raised before the arbitrator, that claim will be retained by this office for full adjudication. It will retain the docket number assigned to the instant appeal,

while the appellant's appeal of the arbitrator's decision will receive a separate docket number assigned by the Clerk of the Board's Office.

FOR THE BOARD: ________/S/__________________

Anthony W. Cummings
Administrative Judge

Print Close

A-4

From: **Jared S. Gross** (jared.gross@NTEU.ORG)
Sent: Wed 8/01/12 4:50 PM
To: ree47_jones@hotmail.com

fyi

**From:** Richards, Jocelyn [mailto:Jocelyn.Richards@hq.doe.gov]
**Sent:** Wednesday, August 01, 2012 4:25 PM
**To:** Jared S. Gross; Bernhardt, Victoria
**Subject:** RE: Maria Jones

Jared –
As you are aware, your client also has a pending EEO complaint. Because you are not representing Ms. Jones in her EEO litigation, Vikki and I cannot discuss the matters at issue. However, to the extent that there is any overlap between the issues for arbitration and the issues for the EEO proceeding, DOE will be filing a motion with the EEOC to dismiss any issues your client has elected to arbitrate.

DOE intends to call as witnesses Mr. Robert Pafe, Ms. Edna Thomas, and Ms. Maria Jones.

Jocelyn

A-5

counsel. (Tab 4a, In the Matter of the Arbitration Between Department of Energy, Headquarters, and National Treasury Employees Union, Chapter 213). Appellant's allegations of legal error are nothing more than an attempt to reargue the merits of her case, which she attempts to do through baseless *ad hominen* attacks against the arbitrator, her former supervisors, and Agency counsel. Despite Appellant's belief to the contrary, there is no record evidence establishing that Arbitrator McKissick committed any legal error as alleged by Appellant.

**2. Appellant failed to establish a prima facie case of reprisal**

The Appellant has alleged retaliation for protected EEO activity as a method for establishing Board jurisdiction over a review of the Arbitrator's decision. In order to establish a *prima facie case* of retaliation for protected EEO activity, Appellant must demonstrate: 1) that she engaged in protected activity; 2) that the responsible management official knew of the protected activity; 3) that the adverse action under review could have been retaliation under the circumstances; and 4) that a nexus existed between the alleged retaliation and the adverse action. *Crawford-Graham, v. Department of Veteran's Affairs*, 99 M.S.P.R. 389 (2005). In this case, as a hearing has already been conducted by Arbitrator McKissick, and the record is incomplete on the issue of retaliation for prior EEO activity, the Board does not employ the traditional EEO burden-shifting order of analysis. Rather, the Board examines whether, upon weighing all of the evidence, the Appellant met her overrall burden of proving illegal retaliation. *Simien v. U.S. Postal Service*, 99 M.S.P.R. 237, ¶28 (2005); *Williams v. SSA*, 101 M.SP.R. 587 ¶11 (2006).

The Agency concedes that Appellant engaged in prior protected EEO activity, of which the Agency was aware. Appellant was also subjected to adverse treatment by the Agency when she was removed for poor performance pursuant to Chapter 43. However, Appellant cannot establish a nexus between her removal and her prior EEO activity. The Appellant must prove

**MARY S. GIPSON**

Phone: 202-586-9972

Routing: FE-2

Building: FORS

Location: WASHINGTON DC

Title: MANAGEMENT ANALYST

Internet Address: shannon.gipson@hq.doe.gov

Attachment 16

**EDNA M. THOMAS**

Phone: 202-58[illegible]

Routing: FE-1

Building: FORS

Location: WASHINGTON DC

Title: PROGRAM ANALYST

Internet Address:

55

PERMANENT PANEL

A-7

**In the Matter of the Arbitration**

**between**

**Department of Energy, Headquarters**

**and**

**National Treasury Employees Union,
Chapter 213**

**Grievant: Maria Jones**

**Case No: DE-HC 40000367**

**OPINION AND AWARD:** Dr. Andrée Y. McKissick, **ARBITRATOR**

**APPEARANCES:**

**For Management:**

Joycelyn Richards, Esquire
Vikki Berhardt, Esquire
U.S. Dept of Energy
1000 Independence Avenue, SW
Washington, DC 20585

**For Union:**

Jared S. Gross, Esquire
National Treasury Employees Union
1750 H Street, NW
9th Floor
Washington, DC 20006

**HEARING DATE:** **August 21, 2012**

**HEARING LOCATION:** 1000 Independence Avenue, SW
Washington, DC 20001

**POST HEARING BRIEFS:** **October 1, 2012**

AWARD: **The Grievant, Maria Jones, is hereby removed from Federal Service. Based on 5 USC §432.104 and Article 45, Section 45.04 of the Agreement, the Agency provided the Grievant with a reasonable opportunity to improve her work performance. Nonetheless, the record reflects that she was unable to remedy her noted deficiencies within the 120-day opportunity period allowed by the Performance Improvement Plan (PIP). Accordingly, this grievance is denied.**

**DATE OF AWARD:** **November 3, 2012**

______________________
**ARBITRATOR**

## BACKGROUND

This is the arbitration proceeding pursuant to the grievance and arbitration provisions of the Collective Bargaining Agreement between the Department of Energy Headquarters (hereinafter "the Agency") and the National Treasury Employees Union (hereinafter "the Union"). The hearing was held on August 21, 2012 at the Department of Energy Headquarters, located at 1000 Independence Avenue, SW, in Washington, DC. At the hearing, exhibits were offered and made part of the record and oral arguments were heard. The Parties agreed to Post-Hearing Briefs, which were submitted on October 1, 2012.

## STATEMENT OF FACTS

Grievant, Maria Jones, is a Program Analyst for the Department of Energy (DOE), starting 1998, but she joined the Office of Budget and Financial Management in 2003. Her current grade is a GS-12, Step 7. Her primary duties included: budget execution, budget formulation, and working on the Capital Fund in the Contract Area.

She was placed on the Performance Improvement Plan (PIP) for ninety (90) days on January 5, 2011. The record reflects that the PIP was extended for an additional thirty (30) days to give the Grievant an additional opportunity to improve her performance. Specifically, the Grievant was found to be deficient in the following areas: Critical Element Number 1 (CE1): Budget Formulation; Critical Element Number 2 (CE2): Budget Execution; Attribute Number 1: Responsibility and Accountability; and Attribute Number 2: Communication. The proposed removal from Federal Service was on August 25, 2011. However, the final decision for removal was January 31, 2012. The record also reflects that the Notice of Final Decision, dated February 6, 2012, was sent to the Grievant and allowed her to remain on Administrative Leave until February 17, 2012.

Prior to the hearing, rulings regarding two (2) written Motions were presented and responded to by this Arbitrator. One consisted of a Motion to Exclude Portions of the Proposal to Remove for Unacceptable Performance. The second comprised a ruling regarding the Grievant as an Agency witness, where she elects not to testify in her case-in-chief. Written rulings based on Article 45.06, Article 12.07, and Article 12.08 of the Agreement, and the prevailing case law were submitted on August 14, 2012. The Union timely invoked arbitration.

## STIPULATED ISSUE

**Whether or not the Department of Energy (DOE) provided the Grievant with a reasonable opportunity to improve performance before removing her from Federal Service? If not, what shall the remedy be?**

## PERTINENT PROVISIONS

The central controversy of this grievance lies within the applicability of the contractual provisions of the aforementioned Agreement between the Department of Energy Headquarters and the National Treasury Employees Union (CBA- Joint Exhibit I), effective Fiscal Year (FY) 2001, and applicable statutory and regulatory provisions.

## COLLECTIVE BARGAINING AGREEMENT

[Effective: FY 2001]

**(CBA - Joint Exhibit I)**

### ARTICLE 45
### PERFORMANCE- BASED ACTIONS

**Section 45.04**
**Before proposing to take action against an employee for unacceptable performance, the supervisor will issue a letter of requirements. This document will provide a 90 calendar day period within which the employee's unacceptable performance must improve. The employee will be informed as to which critical elements are being performed unacceptably. Specific instances of poor performance will be identified. Documentation of unacceptable**

**performance will have to be provided to the employee, consistent with Article 18, Section 18.07 of this agreement. This written documentation is the only documentation that can be relied on by a supervisor to find a employee's performance "unacceptable." The letter will also state what the employee has to do to improve performance above the unacceptable level during the opportunity period and will indicate the type of guidance and review the supervisor will provide during the opportunity period.**

## APPLICABLE STATUTORY AND REGULATORY PROVISIONS

**CODE OF FEDERAL REGULATIONS (C.F.R.)**

**TITLE 5: ADMINISTRATIVE PERSONNEL**
**Part 432 - Performance Based Reduction In Grade and Removal Actions**
**Sec. 432.104 - Addressing unacceptable performance**

5 C.F.R. §432.104

**For each critical element in which the employee's performance is unacceptable, the agency shall afford the employee a reasonable opportunity to demonstrate acceptable performance, commensurate with the duties and responsibilities of the employee's position. As part of the employee's opportunity to demonstrate acceptable performance, the agency shall offer assistance to the employee in improving unacceptable performance.**

## POSITIONS OF THE PARTIES

It is the Agency's position that it provided the Grievant a reasonable opportunity to improve her performance before removing her from Federal Service. Specifically, the Agency argues that it complied with 5 U.S.C. §4306 (b) (6), as interpreted by 5 C.F.R. §432.104, and Article 45, Section 45.04 of the Agreement. That is, the Agency contends that it gave the Grievant notice of her unacceptable performance and placed her on the Performance Improvement Plan (PIP) for ninety (90) days, then extended it for another thirty (30) days to assure her complete remediation of her deficiencies.

In particular, the Agency points out that the Grievant, as a GS-12, should be capable of fully performing her duties with limited supervision. Instead, the Agency contends that the Grievant required constant guidance and instructions, but still was not capable of amending her

deficient performance. Contrary to the Union's arguments, the Agency counters that it provided the Grievant with detailed, specific instructions on how to remedy her deficient performance. The Agency further argues that both the first and second level supervisors provided the Grievant with active assistance. Assistant Deputy Director Pafe, her first-line supervisor, the Agency counters, had weekly sessions with the Grievant, providing her with roughly ten (10) sessions during the ninety (90) day opportunity period. Besides, her first-line supervisor notes that there was an open door policy wherein he provided her with support, assistance, and constructive criticism. Although the Assistant Deputy Director notes that he went over her monthly travel report with the Grievant, the Union rebuts there was no feedback provided and no specific problems were identified by him. Although the Agency contends that the Grievant was granted many extensions for deadlines, the Union counters that the Grievant was unfairly treated and sabotaged by Agency officials. Despite all the assistance that was provided to the Grievant, the Agency maintains she was simply unable to function to any degree of autonomy, as expected of a GS-12, Step 7, Program Analyst, who had been in the position for eight (8) years.

Specifically, the Agency adds that the Grievant made several high profile errors regarding deliverables for the Assistant Secretary as well as Congress. Moreover, the Agency further points out that her first-line supervisor had to proofread all of her work. Notwithstanding all of the Agency's assistance and guidance, the Agency maintains that the Union's allegation that the Performance Improvement Plan (PIP) was predetermined is simply untrue.

In response to the Union's witness, a resigned Agency contractor, the Agency rebuts that her testimony regarding sabotage by Agency officials is again not credible.

In regards to the Union's argument that the Agency failed to provide sufficient resources during the opportunity period, the Agency counters is not true. The Agency explains that when

there was a Continuing Resolution (CR) in place, the Agency was curtailed from any funding for any courses. Thus, the Agency maintains that a CR was in place during the Grievant's opportunity period. In addition, the Agency notes that no employee can be out of the office ten (10) out of twenty-four (24) days as the Grievant requested to enroll in new courses. Based on the foregoing, the Agency requests that this Arbitrator should deny this grievance, as the Agency provided a reasonable and fair opportunity to improve the Grievant's deficient performance.

On the other hand, the Union asserts that the Grievant was not provided a mentor or on-the-job instructor or a coach to successfully and efficiently assist the Grievant during this opportunity period of one hundred twenty (120) days. That is, the Union contends the Grievant's first-line supervisor was not effective with his guidance because he disallowed the Grievant to enroll in the courses that she needed to succeed nor did he reduce her workload during this critical interim period. Moreover, the Union further contends that it was the Agency's duty to require her first and second line supervisors to adjust their failed approaches when the Grievant did not improve her job performance in remediating her deficiencies. Instead, the Union asserts that the Agency simply removed the Grievant from Federal Service, when it had the option to allow the Grievant to enroll in those analytical courses that were suggested, after the Continued Resolution (CR) ended in late March of 2011.

Although the Agency counters that the Grievant's first-line supervisor spent ten (10) sessions during the opportunity period of the PIP, the Union rebuts that the quality and substance of those sessions were woefully inadequate. Instead of fully explaining how a process worked or its specific features, the Union contends that the Grievant's first-line supervisor focused instead only on the Grievant's errors. In addition, the Union points out that the Grievant testified that sizeable portions of these PIP sessions were filled with unrelated subject matters, subjects such

as tennis, his daughter, or his dog. It is also important to consider, the Union asserts, that the first-line supervisor had never overseen another employee on a PIP before this juncture.

In regards to the Grievant's second-line supervisor, Director Thomas, the Union asserts that there was bias and hostility against the Grievant because the Grievant went over the Director's head to discuss issues with current Assistant Secretary McConnell. Subsequently, the Union further asserts that Director Thomas relayed to several present and former employees that the Grievant would no longer have a job at the Agency. Thus, the Union argues that the Grievant's existence with the Agency was predetermined and violative of the regulations governing her removal.

Additionally, the Union maintains that Assistant Deputy Director Pafe, her first-line supervisor, was unsympathetic to the Grievant's plight to overcome her deficiencies. That is, when the Grievant explained to him that she found this period and process to be stressful, her first-line supervisor responded that she should look for another job. Based on the foregoing, the Union requests that this Arbitrator should reverse this removal, reinstate the Grievant. In concurrence with the Back Pay Act, the Union also requests that the Agency should pay the Grievant for all back pay, minus any retirement benefits received, plus interest. Additionally, the Union requests that this Arbitrator retains jurisdiction for enforcement of this order and entertains a petition for attorney fees or any other relief deemed appropriate.

**FINDINGS AND DISCUSSION**

After a careful review of the record in its entirety and having had the opportunity to weigh and evaluate the testimony of the witnesses, this Arbitrator finds that this grievance must be denied for the following reasons.

Before going into the substance of this grievance, it is important to note that this grievance is governed by the definition of substantial evidence. Utilizing this standard, the presiding official must determine only, whether, in light of all relevant and credible evidence presented, a reasonable person could agree with the Agency's decision (See Parker v. Defense Logistics Agency, MSPS 489 at 509 (1980)).

Although the Agency must prove each element of its case by substantial evidence, the Union can rebut it through its usage of affirmative defenses by a preponderance of evidence. In performance-based actions, as here, it is governed by 5 U.S.C. §4303. The Agency has the burden to prove, based upon substantial evidence, that the Grievant was provided a reasonable opportunity to improve her performance (See Sandland v. GSA, 23 MSPR 583, 587-90 (1984)).

In addition, Chapter 43, involving performance-based removal cases cannot consider the "Douglas Factors" in its analysis (See Lee v. Department of Labor, 110 MSPR 355 (2008)). Also, a grievant's grade and length of Federal Service cannot be evaluated in light of this reasonable opportunity determination. It is through this prism that this removal is analyzed.

First, although the Union asserts that no coach, or mentor, or on-the-spot instructor was assigned to guide and assist the Grievant, the Agency correctly rebuts that it is not required to provide these specifics to the Grievant. Case law supports this assessment (See Macijaukos and the Navy, 34 MSPR 564 (1987)). Compare the testimony of the Grievant on these issues at TR-

106. In addition, the Union asserts that specific training should be provided through coursework. However, Macijaukos and the Navy, op. cit., specifically counters that "specific formal training necessary to remedy deficiencies" is not required by the Agency.

Most importantly, the Agency points out that it was in the midst of a Continuing Resolution (CR) during the Grievant's opportunity period. Thus, the Agency was precluded from authorizing new courses for the Grievant to enroll. (See Continuing Appropriations Act, 2011, Public Law No: 111-242, Section 106 (124 Stat. 2607-2608) (2010); Also see The Final CR and the Department of Defense and Full Year Continuing Appropriations Act; 2011, Public Law No: 112-10, 125 Stat. 38 (2011)). However, the Agency adds that the Grievant did enroll in two (2) courses entitled: "Listening and Memory Skills Development" and "Managing Multiple Priorities" (See TR-156, U-9). However, the analytical courses that were recommended by her first-line supervisor were not approved due to the CR that was in place (M-5; Also see U-1, U-2, U-3 and U-9). In Williams v. Department of Defense, the Appellant never complained that the training provided was inadequate. That Appellant also admitted to his deficient performance and problems. Comparing that case with our Grievant, she also admits that performance issues exist. That is, the specifics regarding Critical Element Number 1: Budget Formulation and Critical Element Number 2: Budget Execution; as well as Attribute 1, Responsibility and Accountability, and Attribute 2, Communication, are true and uncontested.

Second, although the Union also asserts there was no written or verbal feedback, the Agency points to the testimony of her first-line supervisor, Assistant Deputy Director Pafe and the specifics of the Performance Improvement Plan (PIP) (Compare the transcript of the Grievant at TR-150 with the testimony of Assistant Director Pafe at TR-61).

In Joint Exhibit II, the Notice of Unacceptable Performance and Assignment to a Performance Improvement Plan (PIP) states, as to Critical Element Number 1, as follows:

> In order to get your performance level to at least the "Meets Expectations" level and in order to continue in your position, you must improve your performance to at least "Meets Expectations" Level. In particular, you must do the following:
>
> - Prepare a monthly Program Direction Status of funds report and provide myself and Ms. Thomas analysis on a monthly basis.
> - Prepare a monthly staffing report with analysis and provide a monthly briefing. Part of this analysis should include comparing on board vs. what is in the budget.
> - As assignments become due to me, you are to brief me on the content and significance of the deliverable.
>
> Please be advised that failure to perform these tasks satisfactory or responsively on any one of the tasks will result in an overall finding of unacceptable behavior on the element as a whole area.
>
> Please be advised that the quality, accuracy and timeliness of these actions are equally important...
>
> [Joint Exhibit II, PIP at page 6]

As to Critical Element Number 2, Budget Formulation, the PIP specifies as follows:

> - Track expenditures for the Fossil Energy Research and Development program direction activities. Prepare monthly status of fund report for program direction including support services and Work Capital funds before the 5th of each month...
>
> During this opportunity period, you must improve your performance to at least the "Meets Expectations" level in order to continue in your position. In particular, you must do the following:
>
> - You must develop a Program Director model that accounts for program direction based on historical obligations and costs. The model should include a narrative that states the assumptions, and identify trends/problem areas.
> - Track expenditures for the Research and Development program direction activities including support services contracts and the Working Capital fund before the 10th of each month.
> - Prepare and provide staff staffing reports to Ms. Thomas before the 10th of each month.
> - Track support services contract personnel for all FE. You will provide Ms. Thomas and Office of Field Operations with a monthly report of FE contractors by name, contract balances and expenditures.
> - Brief Ms. Thomas on monthly execution activities that includes analysis of obligations, costs/uncosted and projections for program direction.
>
> [Joint Exhibit II, PIP at page 7]

In sum, the Agency through written specifics in the PIP incorporated by Assistant Deputy Director Pafe made it clear precisely what was expected of the Grievant as to: Critical Element Number 1 and Critical Element Number 2 to achieve acceptable standards (See CFR § 432.104)

Third, the Agency points out there were ten (10) sessions during the opportunity period which lasted approximately thirty (30) minutes each where he not only noted her errors, but also verbally noted where she could improve (See TR-166; TR-152). Assistant Deputy Director Pafe also testified that he had an open door policy, where the Grievant could freely enter and ask questions (See TR-167). That is, there is no mechanical formula required which constitutes assistance and guidance (See Gjersvold v. Department of the Treasury Agency, 68 MSPR 331 (1995)).

Fourth, although the Union asserts and argues that the counseling sessions were woefully inadequate, this Arbitrator must disagree. Case law supports the Agency's position. That is, unless disparaging comments were made or there was the presence of abuse or harassment at the counseling sessions, then the Agency's actions constitute reasonable assistance and guidance to the Grievant, as required (See Zang v. Defense Investigative Service 26 MSPR, ISS at 157 (1985)).

Fifth, in response to the Union's argument of bias, hostility or the presence of a predetermined outcome regarding the Grievant's PIP's assessment, this Arbitrator must disagree. Case law reveals that even if there is a personal conflict between the Grievant and her supervisor, that fact alone is not enough to prove that the Agency failed to assist and guide the Grievant to improve one's performance during the opportunity period of the PIP. Here, there was no verbal abuse, no insults nor harassment which interfered with the Grievant's ability to work (Compare Deskins v. Department of Navy, 29 MSPR 276 (1985) to our grievance); See also Rana v.

Department of Defense 27 MSPR 678 (1985) and Macijauskas v. Department of Army, op. cit.). These last two (2) cases clearly support the Agency's position, providing that substantial evidence supports the conclusion that the Agency afforded the employee a bona fide opportunity to demonstrate acceptable performance before taking its removal action (See Towne, 2012 MSPS Lexis at 2500 and Sandland, op. cit.). In response to the Union's presentation of corroborating witnesses who agreed that the second-line supervisor purposefully sabotaged the Grievant, this Arbitrator finds that this cumulative evidence was insufficient to meet the Union's burden of preponderance of evidence on this issue (See TR-1997 and See TR-208-209).

Sixth, a compelling component is the Agency's argument that as a Program Analyst the Grievant had long-term experience in her profession. Thus, it was assumed by the Agency that she could work on projects with limited supervision. However, from the testimony of her first-line supervisor and from the physical evidence of exhibits as well as the documentation of the PIP, that assumption was ill-founded (See TR-188-192). Instead, the record indicates that the Grievant continuously made serious errors which needed correction and needed constant supervision (See 189-192; Also see TR 51-53, 55, 91-93, 99 and also see M-10, M-11 and M-6).

Seventh, since the Douglas factors cannot be considered in making a reasonable determination which encompasses credible and relevant evidence of a performance-based grievance, the Grievant's long-term career of twenty-six (26) years as a Program Analyst were not considered as a mitigating factor in this removal (See Lee v. Department of Labor, 110 MSPR 355 (2008)).

Eighth, although the Union also pointed out that neither the first-line nor second-line supervisor refused to lighten the Grievant's workload during this opportunity period, the Agency rightly notes that it offered to extend the Grievant's deadlines to be lenient and helpful to her

during this period. Again, case law does not support that such a requirement of a reduction in one's case load to be a mandatory component in performance-based actions. Instead, the standard for reasonable guidance and assistance is quite nebulous and without a precise formulation. Thus, based on the foregoing, the Agency has met its burden of establishing by a showing of substantial evidence that a reasonable person can agree with the Agency's decision to remove the Grievant.

## AWARD

**The Grievant, Maria Jones, is hereby removed from Federal Service. Based on 5 USC §432.104 and Article 45, Section 45.04 of the Agreement, the Agency provided the Grievant with a reasonable opportunity to improve her work performance. Nonetheless, the record reflects that she was unable to remedy her noted deficiencies within the 120-day opportunity period allowed by the Performance Improvement Plan (PIP). Accordingly, this grievance is denied.**

______________________________

**ARBITRATOR**

**DATE OF AWARD: November 3, 2012**

A-8



of them, because I would send it to one and then cc the other.

Q Is that something that was sent in writing?

A Yeah, it should have been.

Q Okay. Now, did you prepare a monthly staffing report with analysis and provide a monthly briefing?

A I prepared a staffing report. I don't know about the monthly briefing.

MR. GROSS: Wait, I'm going to object. This -- again, we're going into the substantive performance. These -- I thought the issue was narrowed down to whether she was provided a reasonable opportunity to improve. These bullet points are what she needed to do to meet the meets expectations level which were not --

ARBITRATOR McKISSICK: Part of the issue.

MR. GROSS: -- which is not part of the issue.

ARBITRATOR McKISSICK: All right. I agree, that's tangential.

MS. RICHARDS: Okay. I'm trying to establish whether or not she was on notice of things that she could do. And so if -- you know, we've already entered this in the record, so --

MR. GROSS: I'll stipulate that she's on

A-9 ~~Attachment 2~~

Non-Supervisory Performance Plan & Appraisal Form
Revised 08/1/08 (Jones)

# 2521 05 215

**Part II: Progress Review #1:** The supervisor must conduct at least one formal progress review with the employee to communicate feedback regard the performance as compared to the performance expectation established in the performance plan.
*For Headquarters - the supervisor must conduct a minimum of two (2) formal progress reviews with the employee.*

| Job Performance | Comments/Assessment |
|---|---|
| 1. Budget Formulation | There are still issues with performance in this area The Director and I are unsure you are suite for the job. |
| 2. Working Capital Fund | On track to meet expectations. |
| 3. Budget Execution | Not yet able to determine. Execution reports have been developed and we need to see if they are produced on time and accurate. |
| 4. Contracting and Procurement Activities | On track to meet expectations. |

| Employee Performance Attributes | Comments/Assessment |
|---|---|
| • Responsibility/Accountability | The problem is that any feedback you receive you say is based on discrimination. |
| • Communication | On track to meet expectations. |
| • Teamwork | On track to meet expectations. |
| • Innovation/Quality Improvement | On track to meet expectations |
| • Customer Service | On track to meet expectations. |

**Acknowledgement of Progress Review:**
The employee has been afforded the opportunity to discuss the progress review with the Rating Official and has received a copy of this progress review. By signing below, the Rating Official and the employee acknowledge the discussion of the employee's progress in performing the Job Performance and the Employee Performance Attributes critical elements set forth in Part I, Sections A and B has taken place.

| | | |
|---|---|---|
| Rating Official's Name (Typed or Printed): ROBERT H. PAFE | Rating Official's Signature: [signature] | Date: 7-28-11 [signature] |
| Employee's Name (Typed or Printed): MARIA L. JONES | Employee's Signatu | Date: |
| Reviewing Official's Name (Typed or Printed): EDNA M. THOMAS | Reviewing Official's Signature: [signature] | Date: 7-28-11 |
| ☐ Employee declined to sign form. | Comments: | Date: |
| ☐ Employee not available to sign form. | | |

• Note: The signatures of both the rating and Reviewing Officials are required if a critical element is added, deleted, or the measures or weights of an existing element are modified.

A-10 D-5

**Jones, Maria**

|  |  |
|---|---|
| **From:** | Jones, Maria |
| **Sent:** | Thursday, March 31, 2011 1:45 PM |
| **To:** | 'Sean Womack' |
| **Subject:** | RE: Re: |

Sean,

I had a meeting with Mr. Pafe on March 30, 2011 to go over the Performance Improvement Plan (PIP), which was one of the requirements. I mentioned to Mr. Pafe that the basis of the PIP and the Counseling Memorandum was not accurate. During the conversation, Mr. Pafe stated that if I was stressed then I should find another job. He was also trying to get details regarding my complaint.

I had asked the question below, because Mr. Pafe mentioned stress and I wanted to make sure it did not come from the DOE's Counselor.

Please add this information to my file.

Thanks,
Maria

---

**From:** Jones, Maria
**Sent:** Thursday, March 31, 2011 11:08 AM
**To:** 'Sean Womack'
**Subject:** RE: Re:

I was just asking because it was mentioned to me by my supervisor and I wanted to make sure it came from you.

---

**From:** Sean Womack [mailto:womack.sean@gmail.com]
**Sent:** Thursday, March 31, 2011 10:01 AM
**To:** Jones, Maria
**Subject:** Re:

Yes, is there any reason why
Sean

On Mar 31, 2011 9:58 AM, "Jones, Maria" <Maria.Jones@hq.doe.gov> wrote:

A-11

~~Attachment~~ C

**Jones, Maria**

**From:** Thomas, Edna
**Sent:** Tuesday, April 27, 2010 8:23 AM
**To:** Jones, Maria
**Subject:** Re: Position Description

Maria,

Is this your official PD, there is no mention of a grade? The goal of this exercise is to show that you are performing tasks that are not on your PD. If you have something, please write it up for my review.
Edna Thomas
Director, OBFM
(202) 586-8977

----- Original Message -----
From: Jones, Maria
To: Thomas, Edna
Sent: Mon Apr 26 16:34:55 2010
Subject: Position Description

Edna,

We had discussed a desk audit previously and I was supposed to send you a copy of the position description that I was working on. I have attached a draft copy for your review.

Thanks,
Maria



FN 25210525 15

A-12

AX-10 1 5

**3-17-**
For the progress review you were told for your critical element we had instances where the director and I believe you have not performed or incapable of performing tasks. You were given examples were you failed to take care of FTE issues associated with FY 2012 Congressional budget. You completely confused the OMB examiner to the point where he became angry. To this day the FTE contact in Human Capitol said that we were going to engage him and he has not heard from you.

There were also problems with travel report. You took a long time to complete then you said the numbers were not correct. You did not plan properly and the Director had to redo for percentages. This illustrates that you have difficulty in independently completing assignments. In addition you had questions on carryover balances.
With respect to the attribute of personal responsibility you have taken additional training however you still need classes to enhance your analysis capacity.
You displayed negative feeling when you are provided feedback and state that it all related to discrimination rather than performance. You said that all of our efforts are geared towards having you fired.

**3-29**
You said the whole basis of the PIP was retaliation and how could be come up with such lies. You also said we would get what was our just due and Edna and I should both be fired. In my case I lied because of retaliation. In the case of Edna you would not say.

You said that you go home to children and they could tell from reading the PIP it was full of lies. You said we were responsible for reviewing your work and if there is a problem with the work it is our fault.

She said that she refused to seek employment elsewhere until we got what was coming to us. She had made that statement previously when Mr. Roy the former director was here. She said that she would not give us the satisfaction of having her leave.

You were told you should meet us half way on accountability issues and she said it was a joke and was only a ploy to get her fired.

**.4/15**
Major problems with travel report. ASFE is getting upset being shown several sets of numbers. Program Direction summary had to be redone and was late. There is still an issue at having to show employee every step which should not be the case at this grade level. *
No progress report give on meeting of uncosted of WCF, meeting with NNSA and settlement of FTE issues

There is still an issue of accountability and responsibility. In the last few meeting we have come back to your issues of counseling memo.
Finally you are still not meeting the ME level

**4/20**

13

Attachment 13 A-13

**Jones, Maria**

**From:** Jones, Maria
**Sent:** Tuesday, April 26, 2011 4:58 PM
**To:** Thomas, Edna
**Cc:** Pafe, Robert
**Subject:** DRAFT - Breakout for Program Direction
**Attachments:** Program Direction _Break Out_STATUS_2.xlsx

Hi Edna,

You mentioned that Chuck McConnell wanted to see a breakout of Headquarters program direction. Can you please let me know if you think the attached would be helpful?

Thanks,
Maria

44

OFFICE OF FOSSIL ENERGY
HEADQUARTER'S PROGRAM DIRECTION
FY 2011
(in thousands)
**DRAFT**

| | BEG OBS UNCOSTED | OBLIGATIONS | COSTS | YTD OBS UNCOSTED |
|---|---|---|---|---|
| Research and Development | | | | |
| Salaries/Benefits | $ 2,570 | $ 6,721 | $ 7,425 | $ 1,866 |
| All Other Personal Services | $ - | $ 1,304 | $ 1,303 | $ 1 |
| Employee Incentive Awards | $ - | $ 405 | $ 405 | $ - |
| All Other Personnel Benefits | $ 42 | $ 1,416 | $ 1,419 | $ 39 |
| Benefits for Former Personnel | $ - | $ 2 | $ 2 | $ |
| Training | $ 47 | $ 85 | $ 88 | $ 43 |
| Other Services | $ 8,771 | $ 771 | $ 5,443 | $ 3,978 |
| Travel | $ 268 | $ 508 | $ 649 | $ 110 |
| Subtotal | $ 11,698 | $ 11,212 | $ 16,734 | $ 6,037 |
| Working Capital Fund | | | | |
| Supply | $ 1,114 | $ 1,810 | $ 58 | $ 343 |
| Mail | $ - | $ - | $ 35 | $ - |
| Copying Service | $ - | $ - | $ 46 | $ - |
| Printing and Graphics | $ - | $ | $ 39 | $ - |
| Building | $ - | $ - | $ 1,378 | $ - |
| Phone Service | $ - | $ - | $ 146 | $ - |
| Desktop Support | $ - | $ - | $ - | $ - |
| Networking | $ - | $ - | $ 219 | $ - |
| Contract Audits | $ - | $ - | $ - | $ - |
| Contract Closeout/Procurement Service | $ - | $ - | $ 620 | $ - |
| Purchase Card | $ - | $ - | $ - | $ - |
| Payroll Processing | $ - | $ - | $ - | $ - |
| CHRIS | $ - | $ - | $ - | $ - |
| Online Learning | $ - | $ - | $ - | $ - |
| Training Delivery & Services | $ - | $ - | $ 15 | $ - |
| SEET | $ - | $ - | $ 46 | $ - |
| PMCDP | $ - | $ - | $ 25 | $ - |
| Internal Controls | $ - | $ - | $ 20 | $ - |
| IMANAGE | $ - | $ - | $ 222 | $ - |
| Financial Statement Audits | $ - | $ - | $ 156 | $ - |
| Subtotal | $ 1,114 | $ 1,810 | $ 3,025 | $ 343 |
| Import/Export Authorization | | | | |
| Salaries/Benefits | $ - | 307 | 307 | $ - |
| All Other Personal Services | $ - | 4 | 3 | $ - |
| Employee Incentive Awards | $ - | 28 | 28 | $ - |
| All Other Personnel Benefits | $ - | 75 | 167 | $ - |
| Benefits for Former Personnel | $ - | $ - | $ - | $ - |
| Training | $ - | $ - | $ - | $ - |
| Other Services | 93 | $ - | $ - | $ - |
| Travel | $ - | $ - | $ - | $ - |
| Subtotal | 93 | 414 | 505 | 0 |
| **Total, Headquarters** | **$ 12,905** | **$ 13,436** | **$ 20,264** | **$ 6,380** |

| | Estimated Budget Authority | FY 2011 Obligations | YTD Estimated Unobligated Balance |
|---|---|---|---|
| **Office of Research & Development** | $ 31,425 | $ 13,022 | $ 18,403 |
| **Office of Import/Export Authorization** | $ 2,775 | $ 414 | $ 2,361 |
| **Total** | $ 34,200 | $ 13,436 | $ 20,764 |

41

A-14

**Department of Energy**
Washington, DC 20585

May 10, 2013

Ms. Maria Jones
10402 Tottenham Road
Cheltenham, MD 20623

Re: HQ-2013-00755-F

Dear Ms. Jones:

This is a final response to the request for information you submitted to the Department of Energy (DOE) under the Freedom of Information Act (FOIA), 5 U.S.C. 552. You asked for: "Results from Iportal that includes all training that was taken during January 2011- March 2012 for the Office of Fossil Energy and a break out of all costs related to the program direction area for the Office of Fossil Energy."

In a letter dated March 22, 2013, I informed you that the Office of Fossil Energy (FE) would conduct a search of its files for records responsive to the request.

On March 26, 2013, you amended your request. Specifically, you stated "if at all possible, I would prefer that this request is not forwarded to the Office of Fossil Energy. I am requesting that this request should be forwarded to the IT Department. The IT Department will not have difficulties obtaining this information. If not the IT Department, the office that handles iPortal."

In an effort to obtain the information via the IT Department, we contacted the Office of the Chief Information Officer (IM), which is the office that DOE's IT Department falls under, and the Office of the Chief of Human Capital (HC), which is the office that owns iPortal, regarding the request. Both offices determined that the request is not under their jurisdiction, but falls under the jurisdiction of FE.

Your request was assigned to FE, which conducted a search of its files and located four documents responsive to your request. Those documents are being released to you in their entirety.

The FOIA provides for the assessment of fees for the processing of requests. See 5 U.S.C. 552 (a)(4)(A)(i) and 10 C.F.R. Part 1004.9(a). In accordance with allowable FOIA processing fees and the March 22, 2013, letter we sent categorizing you as an "other" requester, you are entitled to two free hours of search time and 100 free pages. The total search time for your request was two hours, forty-five minutes, two hours of which you will not be charged for. The remaining forty-five minutes of search were charged at $55/hr, plus 16% overhead for a total of $48. In your request, you agreed to pay $25.00 for the processing of your request. Although DOE's

costs for search time exceeded $25.00, since we did not contact you, your fees have been capped at $25.00. You will receive a separate bill for this amount.

The adequacy of the search may be appealed within 30 calendar days from your receipt of this letter pursuant to 10 C.F.R. Part 1004.8. Appeals should be addressed to Director, Office of Hearings and Appeals, HG-1, L'Enfant Plaza, U.S. Department of Energy, 1000 Independence Avenue, S.W., Washington, D.C. 20585-1615. The written appeal, including the envelope, must clearly indicate that a FOIA appeal is being made. The appeal must contain all the elements required by 10 C.F.R. Part 1004.8, including a copy of the determination letter. Thereafter, judicial review will be available to you in the Federal District Court either (1) in the district where you reside, (2) where you have your principal place of business, (3) where the DOE's records are situated, or (4) in the District of Columbia.

If you have any questions about the processing of the request or this letter, you may contact Ms. Vera Dunmore or Ms. Lori Twardzik at:

MA-90/ Forrestal Building
1000 Independence Avenue, SW
Washington, DC 20585
(202)586-5955

I appreciate the opportunity to assist you with this matter.

Sincerely,

Alexander C. Morris
FOIA Officer
Office of Information Resources

Enclosure

# INDEX

**Request #HQ-2013-00755-F, from Maria Jones, for: Results from Iportal that includes all training that was taken during January 2011- March 2012 for the Office of Fossil Energy and a break out of all costs related to the program direction area for the Office of Fossil Energy**

The Office of Fossil Energy conducted a search of its records and located four documents responsive to your request.

- Four documents are being released in their entirety.

FY 2011 Fossil Energy Research and Development Training

| | CY Obligation | CY Cost |
|---|---|---|
| **Office** | | |
| | **199,548.23** | 97,837.62 |
| | **199,548.23** | **97,837.62** |
| | **199,548.23** | **97,837.62** |