IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

MARIA LAVINIA JONES,
Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,
Respondent.

NO. 14-3081

**RESPONDENT'S INFORMAL BRIEF AND APPENDIX**

## I. NATURE OF THE CASE.

The petitioner, Maria Lavinia Jones, seeks review of a final decision of the Merit Systems Protection Board ("Board" or "MSPB") that dismissed her removal appeal for lack of jurisdiction on the grounds that 1) the administrative judge should not have construed Ms. Jones' appeal of a grievance decision as raising a separate involuntary retirement claim and 2) Ms. Jones was precluded from filing such an appeal because she had earlier elected to challenge her removal through a negotiated grievance procedure. Jones v. Dep't of Energy, MSPB Docket No. DC-0752-13-08-I-1 (January 27, 2014). Respondent's Appendix ("RA") 1-5.

## II. STATEMENT OF FACTS AND THE COURSE OF PROCEEDINGS BELOW.

Ms. Jones was employed as a Program Analyst, GS-12, Step 7, in the Office of Budget and Financial Management of the Department of Energy's ("agency") Office of Fossil Energy. RA 46. On January 5, 2011, the agency placed Ms. Jones on a Performance Improvement Plan ("PIP") for a period of 90 days, which was later extended for an additional 30 days to give her an additional opportunity to improve her performance. RA 46. At the conclusion of the PIP the agency found continued deficiencies in the petitioner's performance of her critical elements of budget formulation and budget execution and in the attribute of responsibility and accountability. RA 46.

On August 25, 2011, the agency proposed the petitioner's removal for unacceptable performance. RA 36-40. The agency issued a final decision removing Ms. Jones from her position on January 31, 2012. RA 41-43. As amended, the decision made the petitioner's removal effective February 17, 2012. RA 44. The final decision stated that the key factors in making the decision were the petitioner's inability to perform the essential duties of her position, her inability to improve despite the assistance provided to her, and the impact of her unsatisfactory performance on the office. RA 41-42. The agency's removal decision notified Ms. Jones of her right to appeal the

decision to the MSPB and the time limit for doing so. RA 42. It also notified her, as an alternative, of her right to request that the National Treasury Employees Union ("NTEU") seek arbitration pursuant to the applicable collective bargaining agreement ("CBA"). RA 43. Ms. Jones sought review of her removal through the negotiated procedures of the CBA, and the NTEU timely invoked arbitration. RA 46. On November 3, 2012, the arbitrator issued a decision denying the grievance in which she found that the agency met its burden of establishing by substantial evidence that petitioner was given a reasonable opportunity to improve and that the agency's decision to remove the petitioner for unacceptable performance was a reasonable one. RA 52-57.

On December 2, 2012, Ms. Jones filed an appeal of her removal with the Board. RA 26-35. In her appeal, Ms. Jones alleged that the agency's action was in retaliation for an Equal Employment Opportunity ("EEO") complaint that she had filed. RA 30-33. On February 14, 2013, the administrative judge issued an order noting that Ms. Jones filed a grievance concerning her removal prior to filing her appeal and that 5 U.S.C. § 7121(e)(1) required an employee challenging an adverse action to make an election between an applicable negotiated grievance procedure and a Board appeal. RA 20-22. The order also noted that the record contained evidence

that the petitioner resigned on February 16, 2012, one day prior to the effective date of her removal. RA 21, 44, 85. The administrative judge ordered Ms. Jones to clarify the nature of her appeal and to address whether she was appealing a removal for unacceptable performance or was claiming an involuntary resignation obtained by coercion or misrepresentation. RA 21-22.

In a second order issued March 18, 2013, the administrative judge noted that in her response to his February 14, 2013 order, Ms. Jones stated that "I would like the Board to review my appeal based on discrimination and legal errors that were made by the Arbitrator." RA 23-25. As the administrative judge noted in the initial decision, Ms. Jones apparently intended to raise a claim of involuntary retirement:

> I would like to amend my initial appeal to include duress and coercion. I was forced to retire as a result of depression, demoralization, isolation, somatic associated with nausea, headaches and other related symptoms. I also experienced poor sleep and other related conditions. I felt completely vulnerable and helpless in the workplace. For an extremely long period of time, I dealt with a hostile work environment.

RA 8, 73.

The administrative judge determined that an initial appeal seeking review of the arbitrator's decision was not within the jurisdiction of an administrative judge and that such requests are reviewed by the full Board. RA 23-24 (citing Brent v. Dep't of Justice, 100 M.S.P.R. 586, ¶ 6 (2005)).

He also noted that it was for the Board to determine whether the petitioner's request for review under 5 U.S.C. § 7121(d) was timely filed and met the jurisdictional requirements for such a request. RA 24. Accordingly, he transferred the case to the Clerk of the Board for the Board to consider the petitioner's request for review of the arbitrator's decision, as well as any discrimination and retaliation claims she may wish to present in connection with it. RA 24-25.[1] However, the administrative judge retained jurisdiction over the petitioner's involuntary retirement claim on the grounds that this claim was not raised before the arbitrator. RA 24.

The administrative judge subsequently issued an initial decision finding that Ms. Jones failed to satisfy the standard for establishing jurisdiction over a her claim of involuntary retirement. RA 6-14. On petition for review, the full Board found that the administrative judge erred in construing Ms. Jones' appeal as raising a separate involuntary retirement claim. RA 3.

---

[1] The Clerk of the Board docketed the request for review of the arbitrator's decision under MSPB Docket No. CB-7121-13-0111-V-1. RA 70-71. On December 31, 2013, the Board issued an Opinion and Order in which it dismissed the request for lack of jurisdiction. RA 58-65. That decision is the subject of a separate appeal presently before this Court (Docket No. 2013-3072). On June 12, 2014, a note was added to each of these cases indicating that the Court will consider Ms. Jones' two appeals as companion cases and the cases will be assigned to the same merits panel.

The Board recognized that while the record reflected that Ms. Jones retired effective February 16, 2012, one day prior to the effective date of her removal (RA 44, 85), under similar circumstances the Board has "analyzed joint removal and retirement claims as removal actions, without regard to the voluntariness of the retirement decision[.]" RA 3 (citing Paula v. Social Sec. Admin., 119 M.S.P.R. 138, ¶ 13 (2013); Scalese v. Dep't of the Air Force, 68 M.S.P.R. 247, 248-49 (1995)). The Board noted that it held in Scalese that an employee who retires on the effective date of his removal does not lose the right to challenge his removal and that whether the employee's retirement was involuntary "need not be addressed." RA 3; Scalese, 68 M.S.P.R. at 248-49. The Board therefore concluded that the administrative judge should not have construed Ms. Jones' initial appeal as raising a separate involuntary retirement claim, but rather as only raising a challenge to her removal. RA 3.

The Board further held that because Ms. Jones had previously elected under 5 U.S.C. § 7121(e)(1) to challenge her removal under applicable negotiated grievance procedures, she was precluded from filing an initial appeal with the Board challenging the merits of her removal. As a result, the Board vacated the initial decision and dismissed Ms. Jones' initial

appeal challenging the merits of her removal as barred by her prior election of the grievance process. RA 4.

1. Has the petitioner ever had another case in this Court, a United States District Court, or in the Equal Employment Opportunity Commission?

The Board's Opinion and Order in Ms. Jones' request for review of the arbitrator's decision (MSPB Docket No. CB-7121-13-0111-V-1) (RA 58-65) is presently on appeal before this Court (Docket No. 2014-3072). On June 12, 2014, a note was added to Ms. Jones' two pending appeals indicating that those appeals will be considered companion cases and assigned to the same merits panel.

Ms. Jones has or had a case at the EEOC. Counsel is not aware of any other cases.

2. Did the MSPB incorrectly decide or fail to take into account any facts?

No. While Ms. Jones contends that the Board failed to take into account the agency's alleged lack of integrity (Petitioner's Brief ("PB"), answer to question 2), she does not explain how such a failure is relevant to the jurisdictional issue presented here. As a result, her allegation that the Board incorrectly decided this "fact" is without merit.

3. Did the MSPB apply the wrong law?

No. The Court must affirm the decision of the Board unless it is: (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law: (2) obtained without following the procedures required by law; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); Barrett v. Soc. Sec. Admin., 309 F.3d 781, 785 (Fed. Cir. 2002). Whether the Board has jurisdiction to adjudicate an appeal is a question of law, which this Court reviews de novo. Johnston v. Merit Sys. Prot. Bd., 518 F.3d 905, 909 (Fed. Cir. 2008). The Court, however, is bound by the Board's factual findings on which a jurisdictional determination is based "unless those findings are not supported by substantial evidence." Bolton v. Merit Sys. Prot. Bd., 154 F.3d 1313, 1316 (Fed. Cir. 1998). An appellant bears the burden of establishing the Board's jurisdiction. Fields v. Dep't of Justice, 452 F.3d 1297, 1302 (Fed. Cir. 2006).

The record reflects that Ms. Jones retired one day prior to the effective date of her removal action. RA 44, 85. As the Board correctly noted, under its holdings in Paula and Scalese, the administrative judge erred in docketing Ms. Jones' subsequent MSPB involuntary retirement claim as a separate appeal because joint removal and retirement claims must be adjudicated as removal actions, without regard to the voluntariness of the

retirement decision. RA 3. The rationale for this rule was recently explained by the Board in Fox v. Dep't of the Army, 120 M.S.P.R. 529, 543 (2014) as follows:

> The Board has held that it is error to adjudicate an appellant's involuntary retirement claim as a matter distinct from a removal action. Williams v. Department of Health & Human Services, 112 M.S.P.R. 628, ¶ 7 (2009). As we explained in Scalese v. Department of the Air Force, 68 M.S.P.R. 247, 249 (1995), if the agency is unable to support its removal action, then the appellant is entitled to all the relief she could receive if she could show that her retirement was coerced, and the involuntary claim would thereby be mooted. Conversely, if the agency is able to show that it properly decided to remove the appellant, then the appellant cannot show that her retirement was involuntary based on the threat of the removal. Id. The scope of this appeal is therefore limited to the agency's decision to remove the appellant.

Thus, the Board correctly held that Ms. Jones' decision to resign the day before the effective date of her removal does not give rise to a separate and distinct appeal within the Board's jurisdiction, and properly adjudicated her appeal as a Chapter 43 removal appeal.

Section 7121(e)(1) of Title 5, United States Code, permits an employee to challenge an adverse agency action. This statute provides, in pertinent part:

> Matters covered under [Chapters 43 and 75] ... which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedure of section 7701 ... or under the negotiated grievance procedure, but not both.... An employee shall be deemed to have exercised his option ... at such time as the employee timely files

> a notice of appeal ... or timely files a grievance ... whichever event occurs first.

5 U.S.C. § 7121(e)(1). This Court has long held that aggrieved federal employees have the choice of two paths to challenge the agency's adverse action under section 7121(e)(1) and once a timely filing is made to pursue one of those paths, the other is forever waived. Rodriguez v. Merit Sys. Prot. Bd., 804 F.2d 673, 675 (Fed. Cir. 1986); Atanus v. Merit Sys. Prot. Bd., 434 F.3d 1324, 1326-27 (Fed. Cir. 2006). Here, Ms. Jones elected to pursue a grievance under the applicable collective bargaining agreement rather than pursue an initial appeal before the MSPB. RA 45-57. Under such circumstances, the Board correctly held that Ms. Jones was precluded from filing an initial appeal with the Board challenging the merits of her removal.[2]

4. Did the MSPB fail to consider important grounds for relief?

No. The Board properly determined it lacked jurisdiction over Ms. Jones' appeal. Once this determination was made, the appeal was properly

---

[2] In order to comply with the 5 U.S.C. § 7121, the agency must properly inform an employee of her choices. See Johnson v. U.S. Dep't of Labor, 26 M.S.P.R. 447, 450 (1985). As the Board noted, the agency's removal notice informed Ms. Jones of her right to file either a grievance or Board appeal. RA 4 (note 3), 42-43.

dismissed and there were no other grounds for relief that could be considered.

5. Are there other reasons why the MSPB's decision was wrong?

No. The petitioner makes many arguments that concern alleged errors in the Board's review of the arbitrator's decision. PB, Answer to Question 2 (refers to a lack of integrity shown by the agency, a document submitted in MSPB Docket No. CB-7121-13-0111-V-1 and contention that discrimination and involuntary retirement claims were raised before the arbitrator), answer to question 3 (concerns propriety of agency PIP and merits of Ms. Jones' work performance, MSPB application of 5 C.F.R. § 1201.115), answer to question 5 (concerns alleged demotion of two former supervisors and alleged errors in the arbitrator's decision, and answer to question 6 (concerns allegedly improper agency accusations). While such arguments may be relevant to her appeal of the Board's decision on her grievance review appeal, they are not relevant to whether the Board correctly determined that it lacked jurisdiction over her removal appeal.

6. What relief do you want the court to take in this case?

The Court should affirm the Board's decision dismissing Ms. Jones' appeal for lack of jurisdiction.

7. Do you want to argue before the court in person?

No. Oral argument is not necessary in this case.

Respectfully submitted,

BRYAN G. POLISUK
General Counsel

MICHAEL A. CARNEY
General Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 653-6772 Ext. 4484

DATE: July 21, 2014

# APPENDIX TO RESPONDENT'S BRIEF

# INDEX TO THE APPENDIX

| Item | Page |
| --- | --- |
| MSPB Final Order | 1 |
| Initial Decision | 6 |
| Certified Index | 15 |
| Order, dated February 14, 2013 | 20 |
| Order, dated March 18, 2013 | 23 |
| Initial Appeal | 26 |
| Memorandum proposing Ms. Jones' removal, dated August 25, 2011 | 36 |
| Removal Decision, dated January 31, 2012 | 41 |
| Amendment to Removal Decision, dated February 6, 2012 | 44 |
| Arbitration Decision, dated November 3, 2012 | 45 |
| Opinion and Order, Jones v. Department of Energy, MSPB Docket No. CB-7121-13-0111-V-1 (December 31, 2013) | 58 |
| Certified Index, MSPB Docket No. CB-7121-13-0111-V-1 | 66 |
| Order, dated March 26, 2013 | 70 |
| Petitioner's response to Order on Jurisdiction, dated February 20, 2013 | 72 |
| SF-50, dated February 16, 2012 | 85 |

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MARIA LAVINIA JONES,
Appellant,

v.

DEPARTMENT OF ENERGY,
Agency.

DOCKET NUMBER
DC-0752-13-0168-I-1

DATE: January 27, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Maria Lavinia Jones, Cheltenham, Maryland, pro se.

Jocelyn Richards and Victoria Bernhardt, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed the appellant's initial appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision as modified by this Order, still dismissing the appeal for lack of jurisdiction. This is the Board's final order in this matter pursuant to 5 C.F.R. § 1201.113(e).

The appellant filed an initial appeal following her removal from employment. *See* Initial Appeal File (IAF), Tab 1. After issuing several orders and conferring with the parties, the administrative judge determined that the appellant wished to file a request for review of an arbitration decision affirming her removal. *See* IAF, Tabs 35, 41; *see also* 5 U.S.C. § 7121(d). The administrative judge forwarded the appellant's request for review to the Clerk of the Board, noting that such a request can only be adjudicated by the full Board.[2] *See* IAF, Tab 41; *see also Brent v. Department of Justice*, 100 M.S.P.R. 586, ¶ 6 (2005), *aff'd*, 213 F. App'x 993 (Fed. Cir. 2007). In his order forwarding the appellant's request for review to the Clerk of the Board, however, the administrative judge determined that the appellant was also raising an involuntary retirement claim, which "was not raised before the arbitrator," and he decided

[2] *See* Request for Review File in *Jones v. Department of Energy*, MSPB Docket No. CB-7121-13-0111-V-1. The appellant's request for review of the arbitrator's decision was processed separately from the instant appeal.

that "the [involuntary retirement] claim will be retained by this office for full adjudication." IAF, Tab 41 at 2. The administrative judge subsequently issued an initial decision dismissing the appellant's involuntary retirement claim for lack of jurisdiction. IAF, Tab 42, Initial Decision (ID). The appellant has filed a petition for review of that initial decision, and the agency has filed an opposition. *See* Petition for Review File, Tabs 1, 3.

In his initial decision, the administrative judge concluded that the appellant failed to satisfy the Board's standard for establishing jurisdiction over an involuntary retirement appeal. ID at 3-5. Upon our review of the record, however, we conclude that the administrative judge should not have construed the initial appeal as raising a separate involuntary retirement claim. The record reflects that the appellant retired effective February 16, 2012, 1 day prior to the effective date of her removal. *See* IAF, Tab 36 at 4; Tab 6, Subtab 4c (letter of decision); Tab 1 (Form 50 reflecting appellant's retirement). Under similar circumstances, the Board has "analyzed joint removal and retirement claims as removal actions, without regard to the voluntariness of the retirement decision[.]" *Paula v. Social Security Administration*, 119 M.S.P.R. 138, ¶ 13 (2013); *see Scalese v. Department of the Air Force*, 68 M.S.P.R. 247, 248-49 (1995) (instructing that an employee who retires on the effective date of his removal does not lose the right to challenge his removal and that whether the employee's retirement was involuntary "need not be addressed").

The administrative judge, therefore, should not have construed the appellant's initial appeal as raising a separate involuntary retirement claim, but rather as only raising a challenge to her removal. *See Paula*, 119 M.S.P.R. 138, ¶ 13; *Scalese*, 68 M.S.P.R. at 248-49. At the time the appellant filed her initial appeal, however, the appellant had already challenged her removal through the negotiated grievance procedure, and she had received an arbitration decision

affirming her removal.[3] *See* IAF, Tab 6, Subtab 4a. Under these circumstances, we find that the appellant made an election of remedies to challenge her removal through the grievance process under 5 U.S.C. § 7121(e)(1) and that the appellant was precluded from filing an initial appeal with the Board challenging the merits of her removal. *See Crawford-Graham v. Department of Veterans Affairs*, 99 M.S.P.R. 389, ¶ 6 (2005) ("Under 5 U.S.C. § 7121(e)(1), matters covered by 5 U.S.C. § 7512 that also fall within the coverage of a negotiated grievance procedure may, at the discretion of the aggrieved employee, be raised either under the appellate procedures of 5 U.S.C. § 7701 or under the negotiated grievance procedure, but not both."). Under the facts of this case, therefore, the appellant was limited to filing a request for review of the arbitrator's decision under 5 U.S.C. § 7121(d), which the administrative judge properly forwarded to the Clerk of the Board.[4] *See* IAF, Tab 41; *see also Brent*, 100 M.S.P.R. 586, ¶ 6.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

This constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the

---

[3] The record reflects that the appellant's collective bargaining agreement provided the appellant with the right to challenge her removal through the grievance process, *see* IAF, Tab 6, Subtab 4h at 49-54, and the agency's letter of decision effectuating her removal apprised her of her right to file either a grievance or a Board appeal, *see* IAF, Tab 6, Subtab 4c; *see also Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 13, 15 (2013).

[4] On June 17, 2013, the appellant filed a motion to submit an additional pleading, in which she sought to submit evidence allegedly showing that the agency had acknowledged "deficiencies in the agency's performance management system." PFR File, Tab 6. Because the evidence referenced by the appellant is not material to the outcome of this case, the motion is DENIED.

Additionally, on January 8, 2014, the appellant filed a pleading entitled "Note to the Board." PFR File, Tab 8. We have not considered this pleading because it was filed after the record closed on review and not in accordance with the Board's procedures set forth at 5 C.F.R. § 1201.114.

United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

FOR THE BOARD:

for William D. Spencer
Clerk of the Board

Washington, D.C.

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

MARIA LAVINIA JONES,
Appellant,

v.

DEPARTMENT OF ENERGY,
Agency.

DOCKET NUMBER
DC-0752-13-0168-I-1

DATE: MAR 21 2013

Maria Lavinia Jones, Cheltenham, Maryland, pro se.

Jocelyn Richards, Esquire, Washington, D.C., for the agency.

Victoria Bernhardt, Esquire, Washington, D.C., for the agency.

**BEFORE**
Anthony W. Cummings
Administrative Judge

## INITIAL DECISION

## INTRODUCTION

On December 2, 2012, Maria Lavinia Jones filed an appeal with the Board's Washington Regional Office in which she claimed that her retirement from the position she held as a Program Analyst, GS-12, was involuntary. Her alleged involuntary retirement was effective February 16, 2012. Appeal File (AF), Tab 1.

For the reasons set forth below, the appeal is DISMISSED for lack of jurisdiction. The hearing the appellant requested was not held because the appellant did not make a nonfrivolous allegation of facts which, if proven, would

establish jurisdiction. *Burgess v. Merit Systems Protection Board*, 758 F.2d 641, 643 (Fed. Cir. 1985).

## JURISDICTION

The appellant bears the burden of proof regarding the issue of Board jurisdiction. *See* 5 C.F.R. §1201.56(a)(2)(i). In this regard, the appellant must initially set forth a nonfrivolous allegation casting doubt on the presumption of voluntariness. *Hernandez v. U.S. Postal Service*, 74 M.S.P.R. 412, 416 (1997). Resignations and retirements are presumed voluntary. *Matthews v. U.S. Postal Service*, 93 M.S.P.R. 109, ¶ 9 (2002). The Board does not have jurisdiction over presumed voluntary actions unless and until they are found to be involuntary. *Cruz v. Department of the Navy*, 934 F.2d 1240 (Fed. Cir. 1991) (en banc).

An appellant is entitled to a hearing on the issue of Board jurisdiction over an appeal of an allegedly involuntary retirement only if she makes a nonfrivolous allegation casting doubt on the presumption of voluntariness. *Burgess*, 758 F.2d at 643. A nonfrivolous allegation of Board jurisdiction is an allegation of fact which, if proven, could establish a prima facie case that the Board has jurisdiction over the matter in issue. *Dumas v. Merit Systems Protection Board*, 789 F.2d 892, 894 (Fed. Cir. 1986). In determining whether the appellant has made a nonfrivolous allegation of jurisdiction entitling her to a hearing, the administrative judge may consider the agency's documentary submissions; however, to the extent that the agency's evidence constitutes mere factual contradiction of the appellant's otherwise adequate prima facie showing of jurisdiction, the administrative judge may not weigh evidence and resolve conflicting assertions of the parties and the agency's evidence may not be dispositive. *Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994).

The touchstone of the "voluntariness" analysis and the common element in all Board cases involving alleged involuntary resignations or retirements "is that factors have operated on the employee's decision-making processes that deprived him or her of freedom of choice." *Heining v. General Services Administration*, 68 M.S.P.R. 513, 519 (1995). The totality of the circumstances is examined by an objective standard to determine voluntariness, not the employee's purely subjective evaluation. *Id.* at 520. Under that objective standard, the Board will find a retirement or resignation involuntary only if the employee demonstrates that "under all the circumstances working conditions were made so difficult by the agency that a reasonable person would have felt compelled to resign." *Id.*

By Order dated February 14, 2013, the appellant was advised that resignation and retirement actions are presumed to be voluntary and, consequently, are not appealable to the Board. AF, Tab 35. The appellant was further advised that her appeal would be dismissed unless she amended her petition to allege that her resignation or retirement was the result of duress, coercion, or misrepresentation by the agency. *Id.* The Order explained that the appellant must show that she was prevented from making a voluntary decision or that a reasonable person in her position would have been misled by the agency's actions. Both parties responded to the Board's Order and I have considered their responses.

The appellant's response to the Board's Order on jurisdiction reads, in pertinent part, as follows:

> I would like to amend my initial appeal to include duress and coercion. I was forced to retire as a result of depression, demoralization, isolation, somatic associated with nausea, headaches and other related symptoms. I also experienced poor sleep and other related conditions. I felt completely vulnerable and helpless in the workplace. For an extremely long period of time, I dealt with a hostile work environment.

AF, Tab 36.

The appellant's response to the jurisdictional order indicates she experienced difficulty relative to her situation at work. In cases where intolerable working conditions are alleged, both the courts and the Board will find an action involuntary only if the appellant demonstrates that the agency engaged in a course of action that made working conditions so difficult or unpleasant that a reasonable person in that person's position would have felt compelled to resign or retire. *See Markon v. Department of State*, 71 M.S.P.R. 574, 577-78 (1996). The common element in all cases of involuntary resignation or retirement is that factors have operated on the employee's decision-making processes that deprived her of freedom of choice. *See Contreras v. Department of the Navy*, 78 M.S.P.R. 281, 285 (1998). The application of the totality of the circumstances test must be gauged by an objective standard rather than by the employee's subjective evaluation. *Id.*

The Board has held that difficult, contentious or otherwise unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign or retire. *See Miller v. Department of Defense,* 85 M.S.P.R. 310, ¶ 32 (2000). Based upon her response to the jurisdictional order, I find that the appellant failed to establish that conditions at her workplace were so severe or pervasive that a reasonable person in her position would have felt compelled to retire. *Cf., e.g., Braun v. Department of Veterans Affairs,* 50 F.3d 1005, 1007-08 (Fed. Cir. 1995) (court remanded for a hearing where the appellant, after a discipline-free 12-year career, received 11 disciplinary actions at progressive levels of discipline over the 17-month period just prior to his resignation). Rather, the appellant's choice between retiring and dealing with her difficult work conditions was one between unpleasant alternatives. The Board has long found that the mere fact that an employee is faced with unpleasant alternatives does not rebut the presumed voluntariness of the ultimate choice of resignation or retirement. *Barthel v. Department of the Army,* 38 M.S.P.R. 245, 251 (1988). Such is the case here.

Based upon the foregoing, I find that the appellant failed to make a nonfrivolous allegation which, if true, could establish a prima facie case that the Board has jurisdiction over the matter at issue here. Likewise, I find that the appellant has not demonstrated that she was deprived of her freedom of choice when she decided to retire. For all of these reasons, I find that she is not entitled to a hearing on the jurisdictional issue. Accordingly, I find that the Board lacks jurisdiction over this appeal.

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:

Anthony W. Cummings
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on APR 25 2013, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important

because if you wish to file a petition, you must file it within the proper time period.

**BOARD REVIEW**

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

**Criteria for Granting a Petition or Cross Petition for Review**

Pursuant to 5 C.F.R. § 1201.115 (eff. Nov. 13, 2012), the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an

erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h) (eff. Nov. 13, 2012), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

**JUDICIAL REVIEW**

If you are dissatisfied with the Board's final decision, you may file a petition with:

The United States Court of Appeals
for the Federal Circuit

717 Madison Place, NW.
Washington, DC 20439

If your petition to the court "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9) (A)(i), (B), (C), or (D)," you may file your petition for review with the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The right to file a petition for review to any of these courts is limited to the two year period beginning on the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703(b)(1)(B) (5 U.S.C. § 7703(b)(1)(B)). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information about the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about the other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

**U.S. MERIT SYSTEMS PROTECTION BOARD**
**Office of the Clerk of the Board**
1615 M Street, N.W.
Washington, D.C. 20419-0002
Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

14-3081

## ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of Maria Lavinia Jones *v.* Department of Energy, MSPB Docket No. DC-0752-13-0168-I-1, and that the administrative record is under my official custody and control on this date

on file in this Board

April 9, 2014
Date

William D. Spencer
Clerk of the Board

# INDEX

MARIA LAVINIA JONES
v.
DEPARTMENT OF ENERGY

MSPB Docket No. DC-0752-13-0168-I-1

IA-REFORM ACT MERIT

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Initial Appeal | December 02, 2012 |
| 2 | 1 | MSPB - Acknowledgment Order | December 06, 2012 |
| 3 | 1 | Agency - Designation of Representation | December 07, 2012 |
| 4 | 1 | Agency - Agency Representative Addition | December 21, 2012 |
| 5 | 1 | Appellant - Designation of Representation | December 21, 2012 |
| 6 | 1 | Agency - Schedule 752 Agency Response | December 21, 2012 |
| 7 | 1 | Appellant - Witness List | December 26, 2012 |
| 8 | 1 | Appellant - Updated Witness List- PDF | December 26, 2012 |
| 9 | 1 | Appellant - Amendment to Initial Request for Appeal | December 26, 2012 |
| 10 | 1 | Appellant - Initial Request for Appeal - Attachment 7 | January 01, 2013 |
| 11 | 1 | Appellant - Initial Request for Appeal - Related Documents | January 01, 2013 |
| 12 | 1 | Appellant - Hearing Transcript | January 03, 2013 |
| 13 | 1 | Appellant - Hearing Transcript - Continuation | January 03, 2013 |
| 14 | 2 | Appellant - Hearing Transcript - Part 5 | January 03, 2013 |
| 15 | 2 | Appellant - Hearing Transcript - Part 7 | January 03, 2013 |

Page 1 of 4

| | | | |
|---|---|---|---|
| 16 | 2 | Appellant - Hearing Transcript - Part 9 | January 03, 2013 |
| 17 | 2 | Appellant - Hearing Transcript - Part 11 | January 03, 2013 |
| 18 | 2 | Appellant - Hearing Transcript - Part 12 | January 03, 2013 |
| 19 | 2 | Appellant - Hearing Transcript - Part 14 | January 03, 2013 |
| 20 | 2 | Appellant - Hearing Transcript - Part 15 | January 03, 2013 |
| 21 | 2 | Appellant - Hearing Transcript - Part 16 | January 03, 2013 |
| 22 | 2 | Appellant - Hearing Transcript - Part 19 | January 03, 2013 |
| 23 | 2 | Appellant - Hearing Transcript - Part 20 | January 03, 2013 |
| 24 | 2 | Appellant - Hearing Transcript - Part 22 | January 03, 2013 |
| 25 | 2 | Appellant - Initial Request for Appeal - Additional Information | January 03, 2013 |
| 26 | 2 | Appellant - Oral Presentation - Union | January 03, 2013 |
| 27 | 3 | Appellant - Related Cases | January 03, 2013 |
| 28 | 3 | Appellant - Related Case - Pleasant v. HUD | January 03, 2013 |
| 29 | 3 | Agency - Agency Representative Addition | January 04, 2013 |
| 30 | 3 | Appellant - Motion to Compel - January 4, 2012 | January 04, 2013 |
| 31 | 3 | Appellant - Motion to Compel - Interrogatories | January 24, 2013 |
| 32 | 3 | Agency - Agency Response to Motion to Compel | February 01, 2013 |
| 33 | 3 | Appellant - Response to Agency's Opposition to My Motion to Compel | February 06, 2013 |
| 34 | 3 | Appellant - Additional Information Regarding Agency's Opposition to My Motion to Compel (Rec | February 12, 2013 |
| 35 | 3 | MSPB - Order | February 14, 2013 |
| 36 | 3 | Appellant - Response to Order dated February 14, 2013 | February 21, 2013 |

Page 2 of 4

| | | | |
|---|---|---|---|
| 37 | 3 | Agency - Agency Response on Jurisdiction | February 25, 2013 |
| 38 | 3 | Agency - Agency Response to MSPB Order on Jurisdiction | February 25, 2013 |
| 39 | 3 | Appellant - Motion - Agency Untimely Response | February 25, 2013 |
| 40 | 3 | Appellant - Note to Administrative Judge | February 28, 2013 |
| 41 | 3 | MSPB - Order | March 18, 2013 |
| 42 | 3 | MSPB - Initial Decision | March 21, 2013 |

Page 3 of 4

INDEX

MARIA LAVINIA JONES
v.
DEPARTMENT OF ENERGY

MSPB Docket No. DC-0752-13-0168-I-1

IA-REFORM ACT MERIT - PETITION FOR REVIEW


| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Petition for Review | April 25, 2013 |
| 2 | 1 | MSPB - Petition For Review Acknowledgment Letter | May 07, 2013 |
| 3 | 1 | Agency - Response to Appellant's Petition for Review dated 4/25/2013 | May 20, 2013 |
| 4 | 1 | Appellant - Response to New Finding dated 5/7/2013 | May 22, 2013 |
| 5 | 1 | MSPB - Letter Rejecting Pleading | June 05, 2013 |
| 6 | 1 | Appellant - Motion to Have New Evidence Added to Record | June 17, 2013 |
| 7 | 1 | MSPB - Letter Acknowledging Pleading | June 17, 2013 |
| 8 | 1 | Appellant - Note to the Board | January 08, 2014 |
| 9 | 1 | MSPB - Final Order | January 27, 2014 |
| 10 | 1 | MSPB - Certificate of Service | January 27, 2014 |


Page 4 of 4

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

MARIA LAVINIA JONES,
Appellant,

v.

DEPARTMENT OF ENERGY,
Agency.

DOCKET NUMBER
DC-0752-13-0168-I-1

DATE: February 14, 2013

**ORDER**

Removal for unacceptable performance.

The record in this appeal shows that the appellant filed a grievance against the agency in which she challenged the agency's action removing her for unacceptable performance. It appears undisputed that she filed the grievance of this action prior to filing the instant appeal of the same action with the Board. Accordingly, the Board may not have jurisdiction over this appeal.

An aggrieved, bargaining unit employee has the choice of two paths to challenge an agency's action. Once a timely filing is made to pursue one path, the other is forever waived. *Atanus v. Merit Systems Protection Board*, 434 F.3d 1324, 1326-28 (Fed. Cir. 2006); *Rodriguez v. Merit Systems Protection Board*, 804 F.2d 673, 675 (Fed. Cir. 1986). 5 U.S.C. § 7121(e)(1) expressly requires an appellant to elect between an applicable negotiated grievance procedure and a Board appeal when confronted with an adverse action:

> (e)(1) Matters covered under … 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both… An employee shall be

> deemed to have exercised his option under this subsection to raise a matter either under the applicable appellate procedures or under the negotiated grievance procedure at such time as the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the parties' negotiated grievance procedure, whichever event occurs first.

5 U.S.C. § 7121(e)(1) (emphasis added).

Retirement Claim.

The record also shows that the appellant retired effective February 16, 2012. Because the record is unclear concerning how her decision to retire relates to this appeal, I **ORDER** the appellant to clarify her appeal. Is she appealing the agency's action removing her for unacceptable performance or does she contend that her decision to retire was forced or both?

## NOTICE TO THE APPELLANT

If you contend that your decision to retire was forced, then the Board may not have jurisdiction to decide this issue. Specifically, resignation and retirement actions are presumed to be voluntary and, consequently, are not appealable to the Board. Therefore, your appeal will be dismissed unless you amend your petition to allege that your resignation or retirement was the result of duress, coercion, or misrepresentation by the agency. You must show that you were prevented from making a voluntary decision or that a reasonable person in your position would have been misled by the agency's actions. If you are requesting a hearing, you will be granted one only if you have made allegations of duress, coercion, or misrepresentation supported by facts which, if proven, would establish that your retirement or resignation was involuntary.

You have the burden of proving that the Board has jurisdiction over your appeal. Accordingly, I **ORDER** you to file evidence and argument addressing the aforementioned issues. Your submission must be received within 7 calendar days of the date of this Order. The agency may file a response on this issue within 10

calendar days of the date of this Order. Unless I notify you to the contrary, the record on this issue will close on that date. No evidence or argument on the jurisdictional issue filed after the close of record will be accepted unless you show that it is new and material evidence that was unavailable before the record closed.

FOR THE BOARD:

Anthony W. Cummings
Administrative Judge

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

MARIA LAVINIA JONES,
Appellant,

v.

DEPARTMENT OF ENERGY,
Agency.

DOCKET NUMBER
DC-0752-13-0168-I-1

DATE: March 18. 2013

**ORDER**

This office is in receipt of the appellant's response to the Board's February 14, 2013 Order in which she was directed to address the jurisdictional issues surrounding whether she filed her appeal of the agency's removal action first to the Board or to the agency via its negotiated grievance procedure. In her response to the Order, the appellant plainly states the following:

> "I would like the Board to review my appeal based on discrimination and legal errors that were made by the Arbitrator."

*See* Appellant's Response to Order dated February 14, 2013. Likewise, in her note to the Administrative Judge dated February 28, 2013, in pertinent part, the appellant states that:

> "I have not elected to take more than one path in filing before the Board. I am simply requesting that the Board review the arbitrator's ruling, because of legal errors."

*See* Appellant's Note to Administrative Judge. Clearly, based upon the appellant's own explanations, her purpose in filing the instant appeal to the Board is to obtain Board review of the arbitrator's ruling in her case. It is well settled that her request is not within this is not within the province of the Board's administrative judges but, rather, is a matter to be handled by the Clerk of the

Board. *See Brent v. Department of Justice*, 100 M.S.P.R. 586, ¶ 6 (2005) ("In non-postal cases, requests for review of arbitration decisions properly are reviewed by the full Board and not by the Board's administrative judges."). The Board has further held that, after determining that the appellant was seeking review of the arbitrator's decision rather than directly appealing her removal, the administrative judge should simply forward the matter to the Board for consideration as a request for review rather than dismissing for lack of jurisdiction. *See Brent*, 100 M.S.P.R. 586, ¶¶ 1, 5-6.

The Board has jurisdiction to review an arbitration decision under 5 U.S.C. § 7121(d) where the subject matter of the grievance is one over which the Board has jurisdiction, the appellant has alleged discrimination as stated in 5 U.S.C. § 2302(b)(1) in connection with the underlying action, and a final decision has been issued. *De Bow v. Department of the Air Force*, 97 M.S.P.R. 5, ¶ 4 (2004). It is for the full Board to determine whether the appellant's request for review was timely filed and whether these jurisdictional criteria have been satisfied. Also, the appellant's allegations of discrimination and reprisal need not have been raised before the arbitrator. An appellant can establish the Board's jurisdiction under 5 U.S.C. § 7121(d) by asserting a claim of discrimination under 5 U.S.C. § 2302(b)(1) for the first time on review and the assertion of discrimination need not constitute a nonfrivolous allegation of discrimination. *Pleasant v. Department of Housing & Urban Development*, 98 M.S.P.R. 602, ¶ 6 (2005).

Accordingly, I am transferring this appeal to the Clerk of the Board for full Board review of the arbitrator's decision as well as the discrimination and retaliation claims the appellant may wish to raise in connection with it. However, since it is clear that the appellant's involuntary retirement claim was not raised before the arbitrator, that claim will be retained by this office for full adjudication. It will retain the docket number assigned to the instant appeal,

while the appellant's appeal of the arbitrator's decision will receive a separate docket number assigned by the Clerk of the Board's Office.

FOR THE BOARD:

Anthony W. Cummings
Administrative Judge

# MERIT SYSTEMS PROTECTION BOARD FORM 185-1

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

OMB No. 3124-0009

1. Name (last, first, middle initial)

Jones, Maria, L.

2. Present Address (number and street, city, state, and zip code)

Address: 10402 Tottenham Road

City, State, Zip Code: Cheltenham, Maryland, 20623, United States of America

3. Telephone numbers (include area code) and E-Mail Address
You must notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.

Home: (301) 372-2829

Work:

Fax:

Other: (240) 476-5250

E-mail Address: Ree47_jones@hotmail.com

Other Phone Type: Mobile

4. Do you wish to designate an individual or organization to represent you in this proceeding before the Board? (You may designate a representative at any time. However, the processing of your appeal will not normally be delayed because of any difficulty you may have in obtaining a representative.)

☐ Yes ☑ No

5. Name and address of the agency that made the decisions or took the action you are appealing (include bureau or division, street

Agency Name: Department of Energy

Bureau:

Address: 1000 Indpendence Avenue, SW

City, State, Zip code: Washington, District of Columbia, 20623, United States of America

6. Your Federal employment status at the time of the decision or action you are appealing:

☐ Temporary ☑ Permanent ☐ Applicant

☐ Term ☐ Retired ☐ Seasonal

☐ None

7. Type of appointment (if applicable):

☑ Competitive ☐ SES ☐ Excepted

☐ Postal Service ☐ Other

8. Your occupational series, position title, grade, and duty station at the time of the decision or action you are appealing (if applicable):

Occupational Series: GS-343

Position Title: Program Analyst

Grade: 12

Duty Station: Washington, DC

9. Are you entitled to veteran's preference? See 5 U.S.C. 2108.

☐ Yes ☑ No

10. Length of Government Service (if applicable):

26 Years Months

11. Were you serving a probationary or trial period at the time of the decision or action you are appealing?

☐ Yes ☑ No

Appeal Number: **201204911**

Submission Date: **12/2/2012 8:44:22 PM**

Confirmation Number: **39701**

# MERIT SYSTEMS PROTECTION BOARD FORM 185-1

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

**HEARING: You may have a right to a hearing before an administrative judge. If you choose to have a hearing, the Board will notify you when and where it is to be held. If you do not want a hearing, the Board will make its decision on the basis of the submission of the parties.**

12. Do you want a hearing? ☑ Yes ☐ No

**E-Filing: Registration as an E-Filer enables you to file any or all of your pleadings with the Board in electronic form. Registration also means you consent to accept service of all pleadings filed by other registered E-Filers and all documents issued by the Board in electronic form. You will receive these as PDF documents at the e-mail address you provided the Board. If registered as an E-Filer, you may file any pleading, or portion of a pleading, by non-electronic means. You can withdraw your registration as an e-filer at any time.**

13. Do you wish to register as an E-Filer in this appeal?

☑ I elect to E-File ☐ I decline to E-File

14. **I certify that all of the statements made in this form and all attached forms are true, complete, and correct to ☐ the best of my knowledge and belief.**

**Maria Lavinia Jones, Appellant** **Date:**

Appeal Number: **201204911**

Submission Date: **12/2/2012 8:44:22 PM**

Confirmation Number: **39701**

# MERIT SYSTEMS PROTECTION BOARD FORM 185-2

## Appeal of Agency Personnel Action or Decision (Non-retirement)

**Complete this form and attach it to MSPB Form 185-1 if you are appealing an agency personnel action or decision (other than a decision or action affecting your retirement rights or benefits) that is appealable to the Board under a law, rule, or regulation. If the personnel See 5 CFR 1201.3(a) for a list of appealable personnel actions and action or decision is appealable to the Board, you should have received a final decision letter from the agency that informs you of your right to file an appeal with the Board.**

OMB No. 3124-0009

*Please type or print legibly.*

**Please submit only the attachments requested in this form at this time.** You will be afforded the opportunity to submit detailed evidence in support of your appeal later in the proceeding.

**Name** *(last, first, middle initial)* Jones, Maria, L.

Check the box that best describes the personnel action or decision taken by the agency you named in MSPB Form 185-1 that you are appealing. (If you are appealing more than one action or decision, check each box applies.) Attach a copy of the decision letter (if any). If an SF-50 or its equivalent was issued and is available, attach it now; however, DO NOT delay filing your appeal because you do not have an SF-50. You may submit the SF-50 when it becomes available.

**Termination of Employment** (You may select only one of the following four personnel actions.)

- ☑ Removal (Termination after probationary or initial service period)
- ☐ Termination during probationary or initial service period
- ☐ Involuntary Resignation
- ☐ Involuntary Retirement

- ☐ Reduction in grade or pay
- ☐ Suspension for more than 14 days
- ☐ Furlough of 30 days or less
- ☐ Separation, demotion, or furlough for more than 30 days by reduction in force (RIF)
- ☐ Denial of within-grade increase
- ☐ Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement
- ☐ Negative suitability determination
- ☐ Other action

| 2. Date you received the agency's proposal letter (if any) (month, day, year) | 3. Date you received the agency's final decision letter (if any) (month, day, year) (Attach a copy) | 4. Effective date (if any) of the agency action or decision (month, day, year) |
|---|---|---|
| 08/25/2011 | 02/06/2012 | 02/17/2012 |

5. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

☐ Yes ☑ No

6. Explain briefly why you think the agency was wrong in taking this action or making this decision.

See Continuation Sheet for Response.

7. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

See Continuation Sheet for Response.

Appeal Number: **201204911**
Submission Date: **12/2/2012 8:44:22 PM**
Confirmation Number: **39701**

# MERIT SYSTEMS PROTECTION BOARD FORM 185-2

## Appeal of Agency Personnel Action or Decision (Non-retirement)

*Please type or print legibly.*

8. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

☑ Yes ☐ No

9. If your answer to question 8 is "Yes," on what date was the grievance filed (month, day, year)? 09/2010

Enter the place where the grievance was filed if different from your answer to question 5 on MSPB Form 185-1.

Agency Name: Department of Energy
Bureau:
Address: 1000 Indpendence Avenue, SW
City, State, Zip code: Washington, District of Columbia, 20623, United States of America

10. If your answer to question 8 was "Yes," has a decision on the grievance been issued?

☑ Yes ☐ No

On what date was the decision issued (month, day, year) ? 11/2012

11. Select all the additional claims you would like to file with this appeal.

☐ No Additional Claims

☑ File a claim for harmful procedural error
☐ File a claim of prohibited discrimination
☐ File a Whistleblower claim
☐ File a USERRA claim
☑ File a claim for not in accordance with law
☑ File a claim of prohibited personnel practices
☐ Request a whistleblower stay
☐ File a veteran's preference claim

Appeal Number: **201204911**
Submission Date: **12/2/2012 8:44:22 PM**
Confirmation Number: **39701**

# Merit Systems Protection Board Form 185-2
## Appeal of Agency Personnel Action or Decision (Non-retirement)

## Continuation Sheet

6. Explain briefly why you think the agency was wrong in taking this action or making this decision.

I believe that the agency was incorrect in taking this action, because it was done as a reaction to an EEO complaint that I filed. Shortly after management signed off on my mid-year rating on August 6, 2010, they were informed of my pending EEO complaint and that is when the negative personnel actions started. The end of the rating period was September 30, 2010.
In addition, there is ample evidence in my Report of Investigation, the Counseling Memoradum and the Performance Improvement Plan (PIP) that showed that the supervisors went through great lengths to generate negative documentation. This included stating facts that were unfounded and knowingly inaccurate.
In addition, I believe I was not a candidate for the PIP. The terms of the PIP were outlined by the agency and I complied with their suggestions. The agency stated that I needed to take certain training classes. However, in the end, the agency stated that there was a Continuing Resolution and there were no funds available. I was placed on the PIP in January 2011 and the agency was aware of their financial status. The CR started in October 2010. In addition, the agency approved funding for contractor personnel and other federal employees.
In addition, there was another employee with a similar situation who was not a member of the protected group refused to do an assignment. However, this employee was not disciplined. In fact, there is evidence that the supervisor had the appellant assist him with the assignment. There was a clear record of a hostile environment, which was evidence in the ROI and in the hearing transcript. There is also evidence in the ROI that the appellant was contacted by the Office of Procurement to work on a detail in their organization. This request was denied.
There is also evidence that the appellant was under stress that was a result of her treatment in a hostile environment.

# Merit Systems Protection Board Form 185-2

## Appeal of Agency Personnel Action or Decision (Non-retirement)

## Continuation Sheet

7. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

I would like for the Board to take into consideration and address my prior EEO complaint. My prior complaint included both supervisors who were the responsible officials in my removal from the Federal government.
At this moment, I am in the process of seeking employment. If I have not obtained comparable employment, I would like to be reinstated. I would like to be compensated for all my back pay and any compensatory damages, if they are related to this case.. In addition, I would like to be compensated for any costs that I have incurred as a result of this action. I am also seeking remedies that the Board may suggest.

# MERIT SYSTEMS PROTECTION BOARD FORM 185-4A

## Claims of Mistakes in Procedures or Violations of Law

OMB No. 3124-0009

*Please type or print legibly.*

**Name** *(last, first, middle initial)* Jones, Maria, L.

Harmful error is defined in the Board's regulations as: "Error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." See 5 C.F.R.

If you believe that the agency made a error(or error) in applying required procedures in connection with the action or decision you

See Continuation Sheet for Response.

2. Explain how the error you in response to question 1 above caused the agency to reach a conclusion different from the one it would have

See Continuation Sheet for Response.

An appealable action will be reversed as being "not in accordance with the law" if the agency's action is unlawful in its entirety, i.e., if there is no legal authority for action

3. If you believe that the agency action or decision you are appealing, was "not in accordance with law," please explain.

I filed an EEO complaint and the agency actions/decision was a result of retaliation. Their actions violated the Civil Rights Act.

4. If you believe a specific law was violated, please identify the law and describe how the law you identified was violated.

The agency violated Title VII of the Civil Rights Act. I filed a EEO complaint and the agency then proceeded to retaliate, shortly afterwards.

Appeal Number: **201204911**
Submission Date: **12/2/2012 8:44:22 PM**
Confirmation Number: **39701**

RA-32

# Merit Systems Protection Board Form 185-4A
## Claims of Mistakes in Procedures or Violations of Law

### Continuation Sheet

1. If you believe that the agency made a error(or error) in applying required procedures in connection with the action or decision you described in MSPB Form 185-2 or MSPB Form 185-3, identify the procedure(s) and describe the error(s).

The agency did not take into consideration my prior EEO complaint. In addition, the agency ignored many of the statements that the supervisors made in official personnel documents that extremely contradicted my records. Shortly after my removal, the agency detailed the Director of the Office of Budget and Financial Management, who was the Deciding Official in my removal. Just recently, this same Director was demoted to a Program Analyst.
Also, my ROI stated these contradictions. In addition, please see Mr. Jared Gross' post brief.
I

# Merit Systems Protection Board Form 185-4A
## Claims of Mistakes in Procedures or Violations of Law

## Continuation Sheet

2. Explain how the error you in response to question 1 above caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.

The agency had copies of many documents that showed that there were contradictions to the supervisors statements. If the Agency would have taken these documents into consideration then the credibility of supervisor's documents would have been an issue. Many of these documents would have been rescinded, which in turn would have reversed the removal.

# MERIT SYSTEMS PROTECTION BOARD FORM 185-4C

## Claims of Prohibited Personnel Practices

**Complete this form and attach it to MSPB Form 185-1 if you are raising a claim—in connection with an appeal of an agency action or decision for which you have completed MSPB Form 185-2 or MSPB Form 185-3—that the agency action or decision was the result of one or more of the statutory prohibited personnel practices. See 5 U.S.C. 2302 b .**

**DO NOT use this form for any of the following prohibited personnel practice claims:**

- **A claim that the action or decision was the result of discrimination based on race, color, religion, sex, national origin, disability, or age, 5 U.S.C. 2302(b)(1); complete MSPB Form 185-4B instead.**
- **A claim that the action or decision was based on whistleblowing, 5 U.S.C. 2302(b)(8); complete MSPB Form 185-5 instead.**
- **A claim that the action or decision violated a veterans' preference requirement, 5 U.S.C. 2302(b)(11); complete MSPB Form 185-8 instead.**

*Please type or print legibly.* OMB No. 3124-0009

**Name** *(last, first, middle initial)* Jones, Maria, L.

Prohibited Personnel Practices - The statutory prohibited personnel practices are set forth at 5 U.S.C. 2302(b)(1)-(b)(12). An allegation of a prohibited personnel practice is not an independent source of Board jurisdiction. The underlying action must first be within the Board's jurisdiction before an allegation of a prohibited personnel practice may be considered by the Board. See 5 CFR 1201.56(b)(2).

Section 2302 of title 5, U.S. Code, does not apply to all personnel actions or to all Federal employees. Please review the definitions of "personnel action," "covered position," and "agency" at 5 U.S.C. 2302(a) to be sure that both you and the action or decision you are appealing are covered by those definitions before you complete and submit this form.

1. Check the appropriate box (or boxes) below to indicate the basis (or bases) of your claim that the agency committed a prohibited personnel practice in connection with the action or decision you described in MSPB Form 185-2 or MSPB Form 185-3.

- ☐ Discrimination based on political affiliation
- ☐ Coercing the political activity of any person
- ☐ Discrimination based on marital status
- ☐ Nepotism (favoring relatives)
- ☑ Soliciting or considering employment recommendations not based on the individual's work performance, ability, aptitude, general qualifications, suitability, character, or loyalty
- ☐ Taking or failing to take a personnel action as a reprisal for the exercise of any appeal, complaint or grievance right; for assisting anyone else in exercising such a right; for cooperating with or disclosing information to the Special Counsel or the Inspector General of an agency; or for refusing to violate a law
- ☐ Deceiving or willfully obstructing a person's right to compete for employment
- ☐ Influencing any person to withdraw from competition for any position, whether to help or hurt anyone else's employment prospects
- ☐ Giving unauthorized preferential treatment to any employee or applicant
- ☑ Discriminating on the basis of personal conduct which does not adversely affect the performance of the employee or applicant or the performance of others, except in case of criminal conviction for the conduct
- ☑ Taking or failing to take any other personnel action that would violate any law, rule, or regulation implementing or directly concerning the merit system principles

BS481-5

UNITED STATES GOVERNMENT DEPARTMENT OF ENERGY

# MEMORANDUM

To: Maria Jones, FE-3, GS- 343-12
Office of Budget & Financial Management
Office of Fossil Energy

From: Robert Pafe, FE-3 Robert P Pafe
Deputy Director, Office of Budget & Financial Management
Office of Fossil Energy

Subject: Proposal to Remove for Unacceptable Performance

Date: August 25, 2011

This memorandum is to inform you that I propose to remove you from your position, and from the Federal Service, for unacceptable performance under the provisions of 5 C.F.R. Part 432. This action, if taken, will be effected no sooner than thirty (30) calendar days from your receipt of this proposal.

#1 This proposal is the culmination of many attempts to assist you since your second FY 2010 progress review in July, 2010. I advised you that your performance was deficient in Critical Elements 1 and 2, and Attributes 1 and 2 in a meeting on July 29, 2010. I also provided guidance as to how you could improve your performance. I recommended that you conduct more analysis of the program direction budget, produce more budget execution reports, and communicate with management more often.

Despite this guidance, you received a Performance Counseling Memorandum on September 14, 2010 for failure to complete your assignments and meet deadlines. You received a "Fails to Meet Expectation" performance rating for the October 1, 2009 - September 30, 2010 rating period, which you received on October 1, 2010. We met on December 1, 2010 to discuss your final FY 2010 performance review, at which time I explained that you received an unacceptable performance rating of FME in Critical Elements 1 and 2, and Attributes 1 and 2.

A Performance Improvement Plan (PIP) was initiated on January 5, 2011 for 90 days in accordance with the Headquarters Performance Management Program, Chapter IV and 5 C.F.R. 432.104. According to Part 432.104, "For each critical element in which the employee's performance is unacceptable, the agency shall afford the employee a reasonable opportunity to demonstrate acceptable performance, commensurate with the duties and responsibilities of the employee's position." The goal of the PIP was to provide formal assistance to help you improve your performance to an acceptable level. I met with you each week and provided you with verbal and written evaluations of your progress. You were notified on April 5, 2011 that your PIP was unsuccessful. I gave you another opportunity to improve your performance by extending your PIP for an additional 30 days. On May 13, 2011 I notified you that your performance under the PIP

6481-6



had not improved. I also notified you that your performance remained unacceptable and that I was in the process of determining the appropriate corrective action. During the 120-day PIP period you were given every opportunity to improve so that you could improve your performance to an acceptable level in Critical Elements 1 and 2, and Attribute 1; however, you failed to do so.

The fundamental basis for this proposal is your failure to perform at a meets expectations level on your budget formulation, execution performance elements, and your failure to display initiative, effort and commitment towards completing assignments in a timely manner while maintaining the integrity of the organization. Specifically, this proposal is based on your unacceptable performance under the following critical elements and attributes:

**Critical Element 1 - Budget Formulation**

Your performance standard for this element requires that you do the following:

"Review, analyze, and consolidate the program direction budget requirements for Fossil Energy, which includes working with program liaisons in both headquarters and the field. Prepare summary budget tables and narrative justifications for the Congressional, OMB, and Corporate Review budget submissions. Prepare draft two (2) days before the established deadline."

Your performance on this element is unacceptable because you have failed to provide complete and accurate reports that our office must have to execute the budget. Specific examples demonstrating your poor performance and the negative consequences for our office include the following:

There were major issues with your analysis and consolidations of the Program Direction budget. There are many documented incidents where your work products have been sent back to you for revisions, which is unacceptable for an employee at the GS-12 level. The inconsistent numbers that you provided made it difficult for the office to obtain an accurate understanding of the budget. Your constant revisions resulted in missed deadlines and incomplete work products. Management often had to complete assignments for you at the last minute because of pending deadlines. This is burdensome because senior managers must complete your work at the expense of their own.

On April 20, 2011, at a weekly PIP meeting, you were informed that your travel report was deficient; you were instructed to make changes to the travel budget because our office was required to reduce travel allocations by 25%. You produced multiple versions of the report that were filled with inconsistent numbers and also changed historical numbers that should have been consistent in each version.

You made a major error on the availability of travel funds that was embarrassing for our office because the Assistant Secretary for the Office of Fossil Energy brought it to my attention. As a result, managers in the Office of Budget and Financial Management had to use a calculator to recalculate the percentages at the last minute because we had no confidence in the accuracy of your spreadsheet data. This demonstrates that you are incapable of completing your duties independently. Your unacceptable performance consistently adds additional burdens to management's workload.

0481-7



On March 17, 2011 you failed to resolve issues related to the FY 2012 Congressional Budget. The OMB Examiner was frustrated and confused after your discussion and it required a concerted effort on my part to resolve the issue for the FY Congressional Budget. I asked you to follow-up with the Office of Human Capital Management, Office of Workforce Planning and Analysis Division but there has been no progress.

You sent me a graph analyzing program direction on April 19, 2011 and asked me to explain the definitions of the column headings. Because you were unable to obtain or research the required background information regarding the column headings I was forced to take time away from my duties to find the definitions so that you could complete the graphs. This is unacceptable performance for an employee at the GS-12 level.

On April 11, 2011, management in the Office of Budget and Financial Management had to complete the summary of Program Directions because you could not complete the work under the deadline. On April 15, 2011the Program Directions had to be redone by others in the office. We emphasized to you that, at the GS-12 level, your work should not require this level of oversight.

**Critical Element 2 - Budget Execution**

Your performance standard for this element requires that you do the following:

"Track expenditures for the Research and Development program direction activities. Prepare staffing reports. Prepare monthly expenditure and staffing reports before the 5th of each month."

Your explanation of the working capital fund balances was unclear and you did not meet the deadline. In addition, you repeatedly failed to provide an adequate explanation of balance deficiencies in this report. Management spent approximately two weeks attempting to resolve this issue. You also failed to verify supply store reports as required, even after being reminded on multiple occasions.

**Attribute 1 - Responsibility and Accountability**

Your performance standard for this attribute requires that you do the following:

"Sets well-defined and realistic professional goals; displays initiative, effort and commitment towards completing assignments in a timely manner while maintaining the integrity of the organization. Identifies problems; determines accuracy and relevance of information; uses sound judgment to generate and evaluate alternatives and to make recommendations. Willingly accepts personal responsibility and accountability for individual contributions and those made as a member of a team; and completes professional development requirements and opportunities to maintain state-of-the-art skills."

Not only have you failed to improve upon your technical skills and produce quality work products, you have also failed to accept personal responsibility for your projects. In general, you have not taken ownership of your projects in a way that demonstrates initiative, as evidenced by the following examples:

6481-8



You failed to provide a useful summary and analysis of NNSA's best procurement practices as assigned. The goal of the assignment was to provide information that would improve the Office of Fossil Energy's procurement policies. The final product, delivered on April 18, 2011, was of little value because it was poorly executed and incomplete.

Your ability to accept constructive feedback and personal responsibility for your actions has not improved. For example, in an e-mail dated April 11, 2011, you asked for more time to complete an assigned task for the Assistant Secretary, Office of Fossil Energy, concerning Program Direction that was due at noon. You then went to lunch.

You neglected to pick up an operations guide from NNSA even after you were asked to do so in a meeting on March 29, 2011. You also failed to take initiative or assume any of the responsibilities associated with this assignment, which was still outstanding as of April 20, 2011.

You sought management's approval for a billing analysis on the TMS/IBM contract and sent it out even though you failed to conduct the required analysis.

In making this proposal to remove you, I am holding you accountable for your performance against the elements, objectives, tasks, and expectations of your position description and PIP. This is fair and sound management. It is also necessary in fairness to others in our office who have been forced to assume responsibility for your work. As your supervisor I must hold you accountable for your unacceptable performance, particularly because of the significance of your budget responsibilities. As problems arose or oversights became apparent, I had to rely on other employees in our organization or do your job myself to keep the program on track. Our office has been unable to serve other critical needs because I spent so much time supervising your workload, counseling you, and completing your assignments.

You have the right to respond to this notice both orally and in writing within 10 calendar days to Ms. Edna Thomas, Director, Office of Budget and Financial Management. You have the right to prepare and present your response, and to present affidavits or other documentary evidence in support of your response. You may receive an extension to the 10 day answer period by submitting a written request that includes the reason for your request to Ms. Thomas. If you choose to make an oral reply in lieu of or in addition to a written response please contact Ms. Thomas at (202) 586-8977 to schedule an appointment.

You have the right to represent yourself or to be represented by an attorney or other representative. As you are a bargaining unit employee you may also contact Ms. Carolyn Haylock, President, NTEU Chapter 213, at (202) 586-7452. The designation of your representative must be made in writing to Ms. Thomas.

You will receive a written notice of Ms. Thomas' decision after all the evidence in your case, including your written and/or oral reply, has been reviewed and considered. If you do not respond, the decision will be issued after the time allotted for your response has elapsed. The Decision

6481-9



Notice will explain applicable grievance and appeal procedures, and how to exercise them, if your removal is warranted.

You will be placed on administrative leave immediately, until a final decision is made. You will have an opportunity to retrieve your personal items from your office and I will collect the following items before you leave the building:

1. Your Department of Energy (DOE) identification badge and any other government credentials that would allow you access to any government office;

2. Any available government provided equipment, e.g., laptop computer, Blackberry, cellular phone, pager, RSA Token;

3. Your Government issued travel card; and

4. All keys to the office, desk, and file cabinets.

You must remain in work ready status during your regularly scheduled tour of duty and be available to report to work on short notice. You must contact me by phone each workday on (202) 586-4026 no later than 7:30 am to confirm your status. If I am unavailable you should leave a voice mail message indicating the time of your call. In addition, you must contact me to schedule and request any sick or annual leave you wish to take. While on administrative leave, you may not hold another paid position during your regularly scheduled tour of duty. If you work during such time, you will forfeit the administrative leave with pay and may be subject to additional disciplinary action(s).

Please sign and date this memorandum, which serves only to acknowledge the date on which you received it.

Signature: ______________________ Date: ________________

Employee did not sign — 8/25/2011

[signature], FE-3

Carolyn B. [signature], HC-33

Irene J. Olson, EIA, NTEU steward

UNITED STATES GOVERNMENT DEPARTMENT OF ENERGY

# MEMORANDUM

**To:** Maria Jones, FE-3
Office of Budget & Financial Management
Office of Fossil Energy

**From:** Edna Thomas, FE-3
Director, Office of Budget & Financial Management,
Office of Fossil Energy

**Subject:** Final Decision – Proposal Remove for Unacceptable Performance dated August 25, 2011

**Dated:** January 31, 2012

This memorandum serves as my Decision on the August 25, 2011, Proposal to Remove for Unacceptable Performance (the "Proposal") issued to you by Mr. Robert Pafe, Deputy Director, Office of Budget & Financial Management, Office of Fossil Energy. The Proposal dated August 25, 2011, asserts that you failed to demonstrate the ability to execute the essential duties and responsibilities of your position as a Program Analyst, GS-0343-12. Both you and your representative responded orally and in writing to the charges cited in the Proposal on January 10, 2012.

I have carefully considered the Proposal, all supporting documentation, the written responses provided by you and your representative, as well as the verbal responses made by you and your representative. I note that your responses do not provide a legitimate bases upon which I could mitigate the Agency's action.

In addition, and in consideration of the factors outlined in the Proposal, I note several key points in making my decision: (1) your inability to satisfactorily perform the essential duties and responsibilities of your position; (2) your inability to improve your performance despite the assistance afforded to you; and (3) the impact your unsatisfactory performance has had on the Office of Budget & Financial Management.

I reviewed the elements and attributes of your FY 2010 Performance Plan, the specific actions detailed in the Counseling Memorandum dated September 14, 2010; Notice of Unacceptable Performance and Assignment to a Performance Improvement Plan dated January 5, 2011; FE's Memorandum extending the PIP 30 days dated April 5, 2011; and Notice of Unsuccessful Completion of PIP dated May 5, 2011. I find that the standards and expectations set forth in these documents were clear.

I concur with Mr. Pafe's assessment that you failed to successfully perform in Performance Element 1, Budget Formulation - Performance Element 2, Budget Execution - and Attribute 1, Responsibility and Accountability. Additionally, I assessed the unprecedented number of opportunities you were given to demonstrate improvement, including direct assistance by Mr. Pafe which included numerous meetings over a period of eight months. Despite this assistance, the record evidence shows that you failed to produce the required work as delineated in the documents mentioned above. I, along with Mr. Pafe have lost all confidence in your ability to demonstrate acceptable performance on even the most basic and

regularly assigned duties. Your inability to proficiently perform your duties or effectively assist in meeting organizational goals has had a negative impact on the Office of Budget & Financial Management's mission, especially to the extent that others in your office are forced to assume your responsibilities, and cannot be allowed to continue.

I have also consulted DOE Order 3870.1, Workforce Discipline, and Article 45 of the Collective Bargaining Agreement (CBA) between the Department of Energy Headquarters and the National Treasury Employees Union (NTEU). After thorough consideration and review, I find that the specific reasons for the Proposal to be fully supported by the evidence in record. Therefore, I am sustaining the Proposal. Accordingly, you will be removed from your position as a Program Analyst, GS-0343-12, with the Federal government, specifically the Department of Energy's (DOE), Office of Fossil Energy, Office of Budget and Financial Management, effective close of business January 27, 2012. This decision is necessary to promote the efficiency of the Federal service. A notification of Personnel Action, Standard Form 50, implementing this action as a Removal due to Unsatisfactory Performance will be placed in your Official Personnel Folder as a permanent action.

You will remain on administrative leave until COB February 9, 2012.

You must remain in work ready status at all times during your regularly scheduled tour of duty and must be able to report to work on short notice. Each workday, you are directed to contact me by phone no later than 11:30 a.m. in order to confirm your status. I can be reached on 202-586-8977. If you do not reach me, you are to leave a voice mail message indicating the time of your call. In addition, you must contact me to schedule and request any sick or annual leave you wish to take. While on administrative leave, you may not hold another paid position during your regularly scheduled tour of duty. If you work during such time, you will forfeit the administrative leave with pay and may be subject to additional disciplinary action(s).

You must return any Department of Energy property in your possession on or before the effective date of your removal. Also, you may remove any items which are your personal property from your office. In the event that you fail to do either, your access will be invalidated by the Security Office, and you will not have any access to any DOE facilities.

You may file an appeal of this decision to:

Merit Systems Protection Board (MSPB)
Washington Regional Office
1800 Diagonal Road, Suite 205
Alexandria, VA 22314-2840

If you decide to appeal this decision, you may use the attached MSPB Appeal Form 185, or you may file an appeal without using the form so long as your appeal is (1) in writing; (2) give the reason(s) for contesting this action with such proof and pertinent documents as you are able to provide; and (3) indicate if you wish to have a hearing. In order for the Board to consider your appeal, it must be submitted no later than 30 calendar days after the effective date of your removal. A copy of the Board's regulations is enclosed for your information.

You have the right to be represented by the National Treasury Employees Union (NTEU), an attorney or other representative of your choice. If you choose a representative other than NTEU, you will bear all costs associated with such representation, and the individual's name and affiliation must be designated in writing. You and your representative, if any, are also entitled to review the materials relied upon to support this action. You can arrange to review the materials by contacting Carolyn G. Epps of the DOE Headquarters Employee and Labor Relations staff at (202) 583-2130, for an appointment.

As an alternative to filing an MSPB appeal, you may request that NTEU invoke arbitration pursuant to the provisions of Articles 11 and 12 of the Collective Bargaining Agreement between Department of Energy Headquarters and the National Treasury Employees Union. For the specific guidance on the negotiated procedures, please contact NTEU Chapter 213 President, Carolyn Haylock on (202) 586-7452. If you have any further questions, you may contact Carolyn G. Epps, Headquarters Employee Labor Relations Specialist at (202) 586-2130.

If you need assistance in dealing with any personal matters, the Employee Assistance Program (EAP) is available to provide confidential counseling services. Please contact Evelyn Joy on (202) 582-8410. I will not be informed of specific matters discussed without your permission.

Finally, you may choose to file a discrimination complaint with the Department of Energy's, Office of Civil Rights. For further information, you may contact (202) 582-2218.

Enclosure:
MSPB Appeal From 185
MSPB Regulations

I, ______________________________, acknowledge receipt of the Final Decision – Notice of Proposed
(Printed Name)

Removal for Unacceptable Performance dated August 25, 2011.

My signature only acknowledges receipt:

Employee Signature:_________________________________ Date:______________

*UNITED STATES GOVERNMENT* *DEPARTMENT OF ENERGY*

# MEMORANDUM

**To:** Maria Jones, FE-3
Office of Budget & Financial Management
Office of Fossil Energy

**From:** Edna Thomas, FE-3
Director, Office of Budget & Financial Management,
Office of Fossil Energy

**Subject:** ADMENDMENT - Final Decision dated January 31, 2012 – Proposal Remove for Unacceptable Performance dated August 25, 2011

**Dated:** February 6, 2012

This memorandum is sent to the correct an item on Page 2, Paragraph 2, 5th Line and Paragraph 3.

The 5th Line should read "Accordingly, you will be removed from your position as a Program Analyst, GS-0343-12, with the Federal government, specifically the Department of Energy's (DOE), Office of Fossil Energy, Office of Budget and Financial Management, effective close of business February 17, 2012".

As a result of the changes corrected in Paragraph 2, Paragraph 3 therefore changes to read "You will remain on administrative leave until COB February 17, 2012".

The remaining portions of the January 31, 2012, Memorandum remains in effect.

If you have any further questions, please contact Carolyn G. Epps on 202-586-2130.

I, ______________________________, acknowledge receipt of the Final Decision – Notice of Proposed
(Printed Name)

Removal for Unacceptable Performance dated August 25, 2011.

My signature only acknowledges receipt:

Employee Signature:________________________________ Date:______________



RA-44

**PERMANENT PANEL**

| | |
|---|---|
| **In the Matter of the Arbitration**<br>**between**<br>**Department of Energy, Headquarters**<br>**and**<br>**National Treasury Employees Union, Chapter 213** | **Grievant: Maria Jones**<br>**Case No: DE-HC 40000367** |

**OPINION AND AWARD:** Dr. Andrée Y. McKissick, **ARBITRATOR**

**APPEARANCES:**

**For Management:**
Joycelyn Richards, Esquire
Vikki Berhardt, Esquire
U.S. Dept of Energy
1000 Independence Avenue, SW
Washington, DC 20585

**For Union:**
Jared S. Gross, Esquire
National Treasury Employees Union
1750 H Street, NW
9th Floor
Washington, DC 20006

**HEARING DATE:** **August 21, 2012**

**HEARING LOCATION:** 1000 Independence Avenue, SW
Washington, DC 20001

**POST HEARING BRIEFS:** **October 1, 2012**

**AWARD:** **The Grievant, Maria Jones, is hereby removed from Federal Service. Based on 5 USC §432.104 and Article 45, Section 45.04 of the Agreement, the Agency provided the Grievant with a reasonable opportunity to improve her work performance. Nonetheless, the record reflects that she was unable to remedy her noted deficiencies within the 120-day opportunity period allowed by the Performance Improvement Plan (PIP). Accordingly, this grievance is denied.**

**DATE OF AWARD:** **November 3, 2012**

______________________
**ARBITRATOR**

## BACKGROUND

This is the arbitration proceeding pursuant to the grievance and arbitration provisions of the Collective Bargaining Agreement between the Department of Energy Headquarters (hereinafter "the Agency") and the National Treasury Employees Union (hereinafter "the Union"). The hearing was held on August 21, 2012 at the Department of Energy Headquarters, located at 1000 Independence Avenue, SW, in Washington, DC. At the hearing, exhibits were offered and made part of the record and oral arguments were heard. The Parties agreed to Post-Hearing Briefs, which were submitted on October 1, 2012.

## STATEMENT OF FACTS

Grievant, Maria Jones, is a Program Analyst for the Department of Energy (DOE), starting 1998, but she joined the Office of Budget and Financial Management in 2003. Her current grade is a GS-12, Step 7. Her primary duties included: budget execution, budget formulation, and working on the Capital Fund in the Contract Area.

She was placed on the Performance Improvement Plan (PIP) for ninety (90) days on January 5, 2011. The record reflects that the PIP was extended for an additional thirty (30) days to give the Grievant an additional opportunity to improve her performance. Specifically, the Grievant was found to be deficient in the following areas: Critical Element Number 1 (CE1): Budget Formulation; Critical Element Number 2 (CE2): Budget Execution; Attribute Number 1: Responsibility and Accountability; and Attribute Number 2: Communication. The proposed removal from Federal Service was on August 25, 2011. However, the final decision for removal was January 31, 2012. The record also reflects that the Notice of Final Decision, dated February 6, 2012, was sent to the Grievant and allowed her to remain on Administrative Leave until February 17, 2012.

Prior to the hearing, rulings regarding two (2) written Motions were presented and responded to by this Arbitrator. One consisted of a Motion to Exclude Portions of the Proposal to Remove for Unacceptable Performance. The second comprised a ruling regarding the Grievant as an Agency witness, where she elects not to testify in her case-in-chief. Written rulings based on Article 45.06, Article 12.07, and Article 12.08 of the Agreement, and the prevailing case law were submitted on August 14, 2012. The Union timely invoked arbitration.

## STIPULATED ISSUE

**Whether or not the Department of Energy (DOE) provided the Grievant with a reasonable opportunity to improve performance before removing her from Federal Service? If not, what shall the remedy be?**

## PERTINENT PROVISIONS

The central controversy of this grievance lies within the applicability of the contractual provisions of the aforementioned Agreement between the Department of Energy Headquarters and the National Treasury Employees Union (CBA- Joint Exhibit I), effective Fiscal Year (FY) 2001, and applicable statutory and regulatory provisions.

### COLLECTIVE BARGAINING AGREEMENT
[Effective: FY 2001]
**(CBA - Joint Exhibit I)**

### ARTICLE 45
### PERFORMANCE- BASED ACTIONS

**Section 45.04**
**Before proposing to take action against an employee for unacceptable performance, the supervisor will issue a letter of requirements. This document will provide a 90 calendar day period within which the employee's unacceptable performance must improve. The employee will be informed as to which critical elements are being performed unacceptably. Specific instances of poor performance will be identified. Documentation of unacceptable**

**performance will have to be provided to the employee, consistent with Article 18, Section 18.07 of this agreement. This written documentation is the only documentation that can be relied on by a supervisor to find a employee's performance "unacceptable." The letter will also state what the employee has to do to improve performance above the unacceptable level during the opportunity period and will indicate the type of guidance and review the supervisor will provide during the opportunity period.**

## APPLICABLE STATUTORY AND REGULATORY PROVISIONS

**CODE OF FEDERAL REGULATIONS (C.F.R.)**

**TITLE 5: ADMINISTRATIVE PERSONNEL**
**Part 432 - Performance Based Reduction In Grade and Removal Actions**
**Sec. 432.104 - Addressing unacceptable performance**

**5 C.F.R. §432.104**

**For each critical element in which the employee's performance is unacceptable, the agency shall afford the employee a reasonable opportunity to demonstrate acceptable performance, commensurate with the duties and responsibilities of the employee's position. As part of the employee's opportunity to demonstrate acceptable performance, the agency shall offer assistance to the employee in improving unacceptable performance.**

## POSITIONS OF THE PARTIES

It is the Agency's position that it provided the Grievant a reasonable opportunity to improve her performance before removing her from Federal Service. Specifically, the Agency argues that it complied with 5 U.S.C. §4306 (b) (6), as interpreted by 5 C.F.R. §432.104, and Article 45, Section 45.04 of the Agreement. That is, the Agency contends that it gave the Grievant notice of her unacceptable performance and placed her on the Performance Improvement Plan (PIP) for ninety (90) days, then extended it for another thirty (30) days to assure her complete remediation of her deficiencies.

In particular, the Agency points out that the Grievant, as a GS-12, should be capable of fully performing her duties with limited supervision. Instead, the Agency contends that the Grievant required constant guidance and instructions, but still was not capable of amending her

deficient performance. Contrary to the Union's arguments, the Agency counters that it provided the Grievant with detailed, specific instructions on how to remedy her deficient performance. The Agency further argues that both the first and second level supervisors provided the Grievant with active assistance. Assistant Deputy Director Pafe, her first-line supervisor, the Agency counters, had weekly sessions with the Grievant, providing her with roughly ten (10) sessions during the ninety (90) day opportunity period. Besides, her first-line supervisor notes that there was an open door policy wherein he provided her with support, assistance, and constructive criticism. Although the Assistant Deputy Director notes that he went over her monthly travel report with the Grievant, the Union rebuts there was no feedback provided and no specific problems were identified by him. Although the Agency contends that the Grievant was granted many extensions for deadlines, the Union counters that the Grievant was unfairly treated and sabotaged by Agency officials. Despite all the assistance that was provided to the Grievant, the Agency maintains she was simply unable to function to any degree of autonomy, as expected of a GS-12, Step 7, Program Analyst, who had been in the position for eight (8) years.

Specifically, the Agency adds that the Grievant made several high profile errors regarding deliverables for the Assistant Secretary as well as Congress. Moreover, the Agency further points out that her first-line supervisor had to proofread all of her work. Notwithstanding all of the Agency's assistance and guidance, the Agency maintains that the Union's allegation that the Performance Improvement Plan (PIP) was predetermined is simply untrue.

In response to the Union's witness, a resigned Agency contractor, the Agency rebuts that her testimony regarding sabotage by Agency officials is again not credible.

In regards to the Union's argument that the Agency failed to provide sufficient resources during the opportunity period, the Agency counters is not true. The Agency explains that when

there was a Continuing Resolution (CR) in place, the Agency was curtailed from any funding for any courses. Thus, the Agency maintains that a CR was in place during the Grievant's opportunity period. In addition, the Agency notes that no employee can be out of the office ten (10) out of twenty-four (24) days as the Grievant requested to enroll in new courses. Based on the foregoing, the Agency requests that this Arbitrator should deny this grievance, as the Agency provided a reasonable and fair opportunity to improve the Grievant's deficient performance.

On the other hand, the Union asserts that the Grievant was not provided a mentor or on-the-job instructor or a coach to successfully and efficiently assist the Grievant during this opportunity period of one hundred twenty (120) days. That is, the Union contends the Grievant's first-line supervisor was not effective with his guidance because he disallowed the Grievant to enroll in the courses that she needed to succeed nor did he reduce her workload during this critical interim period. Moreover, the Union further contends that it was the Agency's duty to require her first and second line supervisors to adjust their failed approaches when the Grievant did not improve her job performance in remediating her deficiencies. Instead, the Union asserts that the Agency simply removed the Grievant from Federal Service, when it had the option to allow the Grievant to enroll in those analytical courses that were suggested, after the Continued Resolution (CR) ended in late March of 2011.

Although the Agency counters that the Grievant's first-line supervisor spent ten (10) sessions during the opportunity period of the PIP, the Union rebuts that the quality and substance of those sessions were woefully inadequate. Instead of fully explaining how a process worked or its specific features, the Union contends that the Grievant's first-line supervisor focused instead only on the Grievant's errors. In addition, the Union points out that the Grievant testified that sizeable portions of these PIP sessions were filled with unrelated subject matters, subjects such

as tennis, his daughter, or his dog. It is also important to consider, the Union asserts, that the first-line supervisor had never overseen another employee on a PIP before this juncture.

In regards to the Grievant's second-line supervisor, Director Thomas, the Union asserts that there was bias and hostility against the Grievant because the Grievant went over the Director's head to discuss issues with current Assistant Secretary McConnell. Subsequently, the Union further asserts that Director Thomas relayed to several present and former employees that the Grievant would no longer have a job at the Agency. Thus, the Union argues that the Grievant's existence with the Agency was predetermined and violative of the regulations governing her removal.

Additionally, the Union maintains that Assistant Deputy Director Pafe, her first-line supervisor, was unsympathetic to the Grievant's plight to overcome her deficiencies. That is, when the Grievant explained to him that she found this period and process to be stressful, her first-line supervisor responded that she should look for another job. Based on the foregoing, the Union requests that this Arbitrator should reverse this removal, reinstate the Grievant. In concurrence with the Back Pay Act, the Union also requests that the Agency should pay the Grievant for all back pay, minus any retirement benefits received, plus interest. Additionally, the Union requests that this Arbitrator retains jurisdiction for enforcement of this order and entertains a petition for attorney fees or any other relief deemed appropriate.

## FINDINGS AND DISCUSSION

After a careful review of the record in its entirety and having had the opportunity to weigh and evaluate the testimony of the witnesses, this Arbitrator finds that this grievance must be denied for the following reasons.

Before going into the substance of this grievance, it is important to note that this grievance is governed by the definition of substantial evidence. **Utilizing this standard, the presiding official must determine only, whether, in light of all relevant and credible evidence presented, a reasonable person could agree with the Agency's decision (See Parker v. Defense Logistics Agency, MSPS 489 at 509 (1980)).**

Although the Agency must prove each element of its case by substantial evidence, the Union can rebut it through its usage of affirmative defenses by a preponderance of evidence. In performance-based actions, as here, it is governed by 5 U.S.C. §4303. The Agency has the burden to prove, based upon substantial evidence, that the Grievant was provided a reasonable opportunity to improve her performance (See Sandland v. GSA, 23 MSPR 583, 587-90 (1984)).

In addition, Chapter 43, involving performance-based removal cases cannot consider the "Douglas Factors" in its analysis (See Lee v. Department of Labor, 110 MSPR 355 (2008)). Also, a grievant's grade and length of Federal Service cannot be evaluated in light of this reasonable opportunity determination. It is through this prism that this removal is analyzed.

First, although the Union asserts that no coach, or mentor, or on-the-spot instructor was assigned to guide and assist the Grievant, the Agency correctly rebuts that it is not required to provide these specifics to the Grievant. Case law supports this assessment (See Macijaukos and the Navy, 34 MSPR 564 (1987)). Compare the testimony of the Grievant on these issues at TR-

106. In addition, the Union asserts that specific training should be provided through coursework. However, Macijaukos and the Navy, op. cit., specifically counters that "specific formal training necessary to remedy deficiencies" is not required by the Agency.

Most importantly, the Agency points out that it was in the midst of a Continuing Resolution (CR) during the Grievant's opportunity period. Thus, the Agency was precluded from authorizing new courses for the Grievant to enroll. (See Continuing Appropriations Act, 2011, Public Law No: 111-242, Section 106 (124 Stat. 2607-2608) (2010); Also see The Final CR and the Department of Defense and Full Year Continuing Appropriations Act; 2011, Public Law No: 112-10, 125 Stat. 38 (2011)). However, the Agency adds that the Grievant did enroll in two (2) courses entitled: "Listening and Memory Skills Development" and "Managing Multiple Priorities" (See TR-156, U-9). However, the analytical courses that were recommended by her first-line supervisor were not approved due to the CR that was in place (M-5; Also see U-1, U-2, U-3 and U-9). In Williams v. Department of Defense, the Appellant never complained that the training provided was inadequate. That Appellant also admitted to his deficient performance and problems. Comparing that case with our Grievant, she also admits that performance issues exist. That is, the specifics regarding Critical Element Number 1: Budget Formulation and Critical Element Number 2: Budget Execution; as well as Attribute 1, Responsibility and Accountability, and Attribute 2, Communication, are true and uncontested.

Second, although the Union also asserts there was no written or verbal feedback, the Agency points to the testimony of her first-line supervisor, Assistant Deputy Director Pafe and the specifics of the Performance Improvement Plan (PIP) (Compare the transcript of the Grievant at TR-150 with the testimony of Assistant Director Pafe at TR-61).

In Joint Exhibit II, the Notice of Unacceptable Performance and Assignment to a Performance Improvement Plan (PIP) states, as to Critical Element Number 1, as follows:

> In order to get your performance level to at least the "Meets Expectations" level and in order to continue in your position, you must improve your performance to at least "Meets Expectations" Level. In particular, you must do the following:
>
> - Prepare a monthly Program Direction Status of funds report and provide myself and Ms. Thomas analysis on a monthly basis.
> - Prepare a monthly staffing report with analysis and provide a monthly briefing. Part of this analysis should include comparing on board vs. what is in the budget.
> - As assignments become due to me, you are to brief me on the content and significance of the deliverable.
>
> Please be advised that failure to perform these tasks satisfactory or responsively on any one of the tasks will result in an overall finding of unacceptable behavior on the element as a whole area.
>
> Please be advised that the quality, accuracy and timeliness of these actions are equally important…
>
> [Joint Exhibit II, PIP at page 6]

As to Critical Element Number 2, Budget Formulation, the PIP specifies as follows:

> - Track expenditures for the Fossil Energy Research and Development program direction activities. Prepare monthly status of fund report for program direction including support services and Work Capital funds before the 5th of each month…
>
> During this opportunity period, you must improve your performance to at least the "Meets Expectations" level in order to continue in your position. In particular, you must do the following:
>
> - You must develop a Program Director model that accounts for program direction based on historical obligations and costs. The model should include a narrative that states the assumptions, and identify trends/problem areas.
> - Track expenditures for the Research and Development program direction activities including support services contracts and the Working Capital fund before the 10th of each month.
> - Prepare and provide staff staffing reports to Ms. Thomas before the 10th of each month.
> - Track support services contract personnel for all FE. You will provide Ms. Thomas and Office of Field Operations with a monthly report of FE contractors by name, contract balances and expenditures.
> - Brief Ms. Thomas on monthly execution activities that includes analysis of obligations, costs/uncosted and projections for program direction.
>
> [Joint Exhibit II, PIP at page 7]

In sum, the Agency through written specifics in the PIP incorporated by Assistant Deputy Director Pafe made it clear precisely what was expected of the Grievant as to: Critical Element Number 1 and Critical Element Number 2 to achieve acceptable standards (See CFR § 432.104)

Third, the Agency points out there were ten (10) sessions during the opportunity period which lasted approximately thirty (30) minutes each where he not only noted her errors, but also verbally noted where she could improve (See TR-166; TR-152). Assistant Deputy Director Pafe also testified that he had an open door policy, where the Grievant could freely enter and ask questions (See TR-167). That is, there is no mechanical formula required which constitutes assistance and guidance (See Gjersvold v. Department of the Treasury Agency, 68 MSPR 331 (1995)).

Fourth, although the Union asserts and argues that the counseling sessions were woefully inadequate, this Arbitrator must disagree. Case law supports the Agency's position. That is, unless disparaging comments were made or there was the presence of abuse or harassment at the counseling sessions, then the Agency's actions constitute reasonable assistance and guidance to the Grievant, as required (See Zang v. Defense Investigative Service 26 MSPR, ISS at 157 (1985)).

Fifth, in response to the Union's argument of bias, hostility or the presence of a predetermined outcome regarding the Grievant's PIP's assessment, this Arbitrator must disagree. Case law reveals that even if there is a personal conflict between the Grievant and her supervisor, that fact alone is not enough to prove that the Agency failed to assist and guide the Grievant to improve one's performance during the opportunity period of the PIP. Here, there was no verbal abuse, no insults nor harassment which interfered with the Grievant's ability to work (Compare Deskins v. Department of Navy, 29 MSPR 276 (1985) to our grievance); See also Rana v.

Department of Defense 27 MSPR 678 (1985) and Macijauskas v. Department of Army, op. cit.). These last two (2) cases clearly support the Agency's position, providing that substantial evidence supports the conclusion that the Agency afforded the employee a bona fide opportunity to demonstrate acceptable performance before taking its removal action (See Towne, 2012 MSPS Lexis at 2500 and Sandland, op. cit.). In response to the Union's presentation of corroborating witnesses who agreed that the second-line supervisor purposefully sabotaged the Grievant, this Arbitrator finds that this cumulative evidence was insufficient to meet the Union's burden of preponderance of evidence on this issue (See TR-1997 and See TR-208-209).

Sixth, a compelling component is the Agency's argument that as a Program Analyst the Grievant had long-term experience in her profession. Thus, it was assumed by the Agency that she could work on projects with limited supervision. However, from the testimony of her first-line supervisor and from the physical evidence of exhibits as well as the documentation of the PIP, that assumption was ill-founded (See TR-188-192). Instead, the record indicates that the Grievant continuously made serious errors which needed correction and needed constant supervision (See 189-192; Also see TR 51-53, 55, 91-93, 99 and also see M-10, M-11 and M-6).

Seventh, since the Douglas factors cannot be considered in making a reasonable determination which encompasses credible and relevant evidence of a performance-based grievance, the Grievant's long-term career of twenty-six (26) years as a Program Analyst were not considered as a mitigating factor in this removal (See Lee v. Department of Labor, 110 MSPR 355 (2008)).

Eighth, although the Union also pointed out that neither the first-line nor second-line supervisor refused to lighten the Grievant's workload during this opportunity period, the Agency rightly notes that it offered to extend the Grievant's deadlines to be lenient and helpful to her

during this period. Again, case law does not support that such a requirement of a reduction in one's case load to be a mandatory component in performance-based actions. Instead, the standard for reasonable guidance and assistance is quite nebulous and without a precise formulation. Thus, based on the foregoing, the Agency has met its burden of establishing by a showing of substantial evidence that a reasonable person can agree with the Agency's decision to remove the Grievant.

## AWARD

**The Grievant, Maria Jones, is hereby removed from Federal Service. Based on 5 USC §432.104 and Article 45, Section 45.04 of the Agreement, the Agency provided the Grievant with a reasonable opportunity to improve her work performance. Nonetheless, the record reflects that she was unable to remedy her noted deficiencies within the 120-day opportunity period allowed by the Performance Improvement Plan (PIP). Accordingly, this grievance is denied.**

**ARBITRATOR**

**DATE OF AWARD:** **November 3, 2012**

Perm Panel (DOE & NTEU-Jones Final) October 2012.doc

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2013 MSPB 102**

Docket No. CB-7121-13-0111-V-1

**Maria Lavinia Jones,**
**Appellant,**
**v.**
**Department of Energy,**
**Agency.**
December 31, 2013

Maria Lavinia Jones, Cheltenham, Maryland, pro se.

Jocelyn Richards and Victoria Bernhardt, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1 Pursuant to 5 U.S.C. § 7121(d), the appellant has filed a request for review of an arbitration decision affirming her removal. For the reasons that follow, the appellant's request for review is DISMISSED for lack of jurisdiction.

## BACKGROUND

¶2 The appellant filed an initial appeal with the Board's Washington Regional Office on December 2, 2012, challenging her removal. *See Jones v. Department of Energy*, MSPB Docket No. DC-0752-13-0168-I-1, Initial Appeal File (IAF-0168), Tab 1. After conferring with the parties, the administrative judge

forwarded the appellant's initial appeal to the Clerk of the Board to be docketed as a request for review of an arbitration decision.[1] *See* IAF-0168, Tab 41; *Brent v. Department of Justice*, 100 M.S.P.R. 586, ¶ 6 (2005) (explaining that a request for review filed with an administrative judge should be forwarded to the full Board for review), *aff'd*, 213 F. App'x 993 (Fed. Cir. 2007). In addition to requesting that the Board review the arbitrator's decision affirming her removal, the appellant has also raised an equal employment opportunity (EEO) retaliation claim in connection with her removal for the first time with the Board. *See* Request for Review (RFR) File, Tab 6 at 4-11; *see also* RFR File, Tab 33 at 2 (agency submission noting that "Appellant subsequently appealed the Arbitrator's decision to the MSPB, and also, for the first time, alleged reprisal in response to the AJ's Order on Jurisdiction, dated February 14, 2013."); IAF-0168, Tab 6, Subtab 4a (arbitration decision). The agency has filed an opposition to the appellant's request for review. RFR File, Tab 33.

## ANALYSIS

The Board lacks jurisdiction over the appellant's request for review of the arbitration decision because the appellant could have, but did not, raise her discrimination claim with the arbitrator in the grievance proceeding under 5 C.F.R. § 1201.155(c).

¶3 Section 7121(d) of Title 5 of the U.S. Code empowers the Board to review arbitration decisions under certain circumstances. *See Sadiq v. Department of Veterans Affairs*, 119 M.S.P.R. 450, ¶ 4 (2013). The Board has explained that it

---

[1] The administrative judge also construed the appellant's initial appeal as raising a claim of an involuntary retirement and retained that portion of the appellant's initial appeal, noting that "it is clear that the appellant's involuntary retirement claim was not raised before the arbitrator[.]" IAF-0168, Tab 41 at 2. The administrative judge subsequently dismissed the appellant's involuntary retirement appeal for lack of jurisdiction, *see* IAF-0168, Tab 42, and the appellant has filed a petition for review of that initial decision which is being processed separately, *see* Petition for Review File in DC-0752-13-0168-I-1, Tab 1.

has jurisdiction to review an arbitration decision when the subject matter of the grievance is one over which the Board has jurisdiction, the appellant has alleged discrimination under 5 U.S.C. § 2302(b)(1)[2] in connection with the challenged action, and a final decision has been issued. *See Sadiq*, 119 M.S.P.R. 450, ¶ 4. The Board's review of an arbitrator's award is limited, and arbitral awards are entitled to a greater degree of deference than initial decisions issued by the Board's administrative judges. *Id.*, ¶ 5. Because of the highly deferential standard accorded to arbitration decisions, an appellant who is dissatisfied with an arbitrator's decision generally may not seek to set aside or modify that decision on a ground not raised before the arbitrator. *See, e.g.*, *Means v. Department of Labor*, 60 M.S.P.R. 108, 115-16 (1993).

¶4 Prior to the Federal Circuit's decision in *Jones v. Department of the Navy*, 898 F.2d 133 (Fed. Cir. 1990), the Board applied this principle to discrimination claims raised for the first time in an appellant's request for review of an arbitration decision. *See, e.g.*, *Salinas v. Immigration & Naturalization Service*, 34 M.S.P.R. 553, 554-55 (1987) (citing Board authority for the proposition that "the Board may review an arbitrator's decision only where prohibited discrimination was raised to the arbitrator."), *aff'd*, 846 F.2d 77 (Fed. Cir. 1988) (Table). Under this approach, the Board had held that it lacked jurisdiction over a request for review of an arbitrator's decision when an appellant failed to raise a claim of discrimination before the arbitrator. *Id.* In *Jones*, however, the Federal Circuit concluded that an employee did not have to raise a discrimination claim before an arbitrator in order to raise such a claim with the Board for the first time when requesting review of an arbitration award. *See Jones*, 898 F.2d at 136.

[2] A claim of EEO retaliation is cognizable under 5 U.S.C. § 2302(b)(1)(A). *Rhee v. Department of the Treasury*, 117 M.S.P.R. 640, ¶ 20 (2012).

¶5 Subsequent to *Jones*, the Board held that an employee could "raise a discrimination claim for the first time with the Board in an arbitration review proceeding," even if such a claim was not presented to the arbitrator. *Means*, 60 M.S.P.R. at 115 (citing *Jones*, 898 F.3d at 135). The Board articulated the following test for establishing jurisdiction over a request for review of an arbitration decision: (1) the subject matter of the grievance is one over which the Board has jurisdiction; (2) the grievant alleges discrimination under 5 U.S.C. § 2302(b)(1) in connection with the challenged action; and (3) a final decision has been issued. *See, e.g.*, *Colon v. Department of Veterans Affairs*, 73 M.S.P.R. 659, 662-63 (1997).[3]

¶6 On June 7, 2012, however, the Board proposed changes to its regulations concerning, inter alia, the Board's jurisdiction over requests for review of arbitration decisions under 5 U.S.C. § 7121(d). *See* 77 Fed. Reg. 33663, 33669 (June 7, 2012). In its notice of proposed rulemaking, the Board explained that it "was not always the case" that "the Board ha[d] jurisdiction to review arbitration decisions in which an appellant is raising claims of unlawful discrimination, even when the appellant failed to raise the discrimination issue before the arbitrator," and we noted that the "Board had held that its review was limited to discrimination claims that were raised before the arbitrator until the Federal Circuit's contrary ruling in *Jones*[.]" *Id.* Thus, to "restore the rule that existed prior to the Federal Circuit's decision in *Jones*," *id.*, the Board proposed amending 5 C.F.R. § 1201.155 as follows:

---

[3] In *Colon*, we expressly noted that "the appellant (although she did not do so before the arbitrator) has alleged in her request for review that the removal action taken against her was the result of discrimination," and we held that such an allegation was properly before the Board on a request for review and could establish the Board's jurisdiction over her request. 73 M.S.P.R. 659, 663.

> (b) Scope of Board Review. If the negotiated grievance procedure permits allegations of discrimination, the Board will review only those claims of discrimination that were raised in the negotiated grievance procedure. If the negotiated grievance procedure does not permit allegations of discrimination to be raised, the appellant may raise such claims before the Board.

77 Fed. Reg. at 33679.

¶7 The Board's proposed rule changes became final on October 12, 2012, and went into effect on November 13, 2012. *See* 77 Fed. Reg. 62350, 62360 (Oct. 12, 2012) (explaining that the proposed amendment would take effect and be codified at 5 C.F.R. § 1201.155(c)). Thus, as the Board explained in both its notice of proposed rulemaking and notice of final rulemaking, the changes in the Board's jurisdictional regulations governing requests for review of arbitration decisions were designed to "restore the rule that existed prior to the Federal Circuit's decision in *Jones*," 77 Fed. Reg. 33663, 33669, and that "[i]f the Board were to adjudicate a claim of discrimination that could have been but was not raised to the arbitrator, it would not be reviewing the arbitrator's final decision with respect to that claim; it would be adjudicating the claim de novo," 77 Fed. Reg. 62350, 62360.[4]

¶8 Under the Board's revised regulations, an appellant can establish the Board's jurisdiction over a request for review of an arbitration decision when: (1) the subject matter of the grievance is one over which the Board has

---

[4] The Federal Circuit premised its decision in *Jones* on, inter alia, the fact that "no statute or regulation . . . requires an issue of prohibited discrimination . . . to be first raised before an arbitrator before the board has jurisdiction to consider it on appeal," and that "the regulations of the board governing the procedures involving appeals containing allegations of prohibited discrimination . . . are dispositive of this question." 898 F.2d at 135. In response to these observations, the Board's revised regulation now expressly provides that a claim of discrimination must be first presented to an arbitrator before it can be raised in a request for review, provided that the governing negotiated grievance procedure allows for claims of discrimination to be presented in arbitration. 5 C.F.R. § 1201.155(c).

jurisdiction; (2) the appellant either (i) raised a claim of discrimination under 5 U.S.C. § 2302(b)(1) with the arbitrator in connection with the underlying action, or (ii) raises a claim of discrimination in connection with the underlying action under 5 U.S.C. § 2302(b)(1) for the first time with the Board if such allegations could not be raised in the negotiated grievance procedure; and (3) a final decision has been issued. 5 C.F.R. § 1201.155(a)(1), (c); *see also McCurn v. Department of Defense*, 119 M.S.P.R. 226, ¶ 5 n.4 (2013) ("Under the Board's regulations that became effective November 13, 2012, the Board will only review discrimination claims raised for the first time in a request for review of an arbitration decision if the negotiated grievance procedure did not permit allegations of discrimination to be raised.") (citing 5 C.F.R. § 1201.155(c)).

¶9 Applying this jurisdictional standard, we conclude that the appellant cannot establish Board jurisdiction over her request for review of the arbitrator's decision. The record reflects that the appellant's governing collective bargaining agreement allows for claims of discrimination to be raised in the course of a grievance proceeding. *See* IAF-0168, Tab 6, Subtab 4h at 50 ("Section 11.03 – Any aggrieved employee affected by discrimination, a removal, or performance-based reduction in grade, or other adverse action, may, at his/her option, raise the matter under a statutory appeal procedure or under this negotiated grievance procedure, but not both."). The record further reflects that the appellant did not raise a claim of discrimination under 5 U.S.C. § 2302(b)(1) in the course of her grievance proceeding. *See* RFR File, Tabs 6 and 33; IAF-0168, Tab 6, Subtab 4a.

¶10 Accordingly, because the appellant could have raised her claim of discrimination in the grievance proceeding, but did not, the appellant cannot now raise such a claim for the first time with the Board in connection with her request

for review. 5 C.F.R. § 1201.155(c). The appellant's request for review of the arbitrator's decision is therefore DISMISSED for lack of jurisdiction.[5]

## ORDER

¶11 For the above-stated reasons, the appellant's request for review is DISMISSED for lack of jurisdiction. This is the final decision of the Merit Systems Protection Board in this matter. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in

---

[5] We note that the appellant filed her initial appeal, which was forwarded for processing as a request for review, with the Board's regional office on December 2, 2012, several weeks after our revised regulations went into effect. We find no reason not to apply our revised regulations to this request for review.

Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

FOR THE BOARD:

____________________________
William D. Spencer
Clerk of the Board
Washington, D.C.

**U.S. MERIT SYSTEMS PROTECTION BOARD**
**Office of the Clerk of the Board**
1615 M Street, N.W.
Washington, D.C. 20419-0002
Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

14-3072

## ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of Maria Lavinia Jones *v.* Department of Energy, MSPB Docket No. CB-7121-13-0111-V-1, and that the administrative record is under my official custody and control on this date

on file in this Board

March 31, 2014
Date

William D. Spencer
Clerk of the Board

INDEX

MARIA LAVINIA JONES

v.

DEPARTMENT OF ENERGY

MSPB Docket No. CB-7121-13-0111-V-1

APPEAL RECEIVED IN HEADQUARTERS

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1-3 | Appellant - Request for Review of Arbitration Decision - Record in DC-13-0168I-1 | March 18, 2013 |
| 2 | 1 | MSPB - Acknowledgement Letter | March 26, 2013 |
| 3 | 1 | Appellant - Motion to Extend the Deadline | April 03, 2013 |
| 4 | 1 | MSPB - Extension of Time Order | April 04, 2013 |
| 5 | 1 | Appellant - Change of e-Filing Status | April 19, 2013 |
| 6 | 1 | Appellant - Response to Response to Order dated March 26, 2013 dated 3/26/2013 | April 19, 2013 |
| 7 | 4 | Appellant - Response to Response to Order Dated March 26, 2013 (Part 2) dated 3/26/2013 | April 19, 2013 |
| 8 | 4 | Appellant - Response to Response to March 26, 2013 Order - Hearing Transcript Page 1-10 date | April 19, 2013 |
| 9 | 4 | Appellant - Response to Hearing Transcript - Pages 11-20 dated 3/26/2013 | April 19, 2013 |
| 10 | 4 | Appellant - Response to Response to Order dates 03/26/2013 dated 3/26/2013 | April 19, 2013 |
| 11 | 4 | Appellant - Response to Response to March 26, 2013 Order dated 3/26/2013 | April 19, 2013 |
| 12 | 4 | Appellant - Response to Response to Order Dated 03/26/2013 dated 3/26/2013 | April 19, 2013 |
| 13 | 4 | Appellant - Response to Amend - Attachments 13-16 dated 3/26/2013 | April 21, 2013 |
| 14 | 4 | Appellant - Response to Amend Attachments 21 dated 3/26/2013 | April 21, 2013 |
| 15 | 4 | Appellant - Response to Amend - Attachment 25 dated 3/26/2013 | April 21, 2013 |
| 16 | 4 | Appellant - Response to Amend - Attachments 27-35 dated 3/26/2013 | April 21, 2013 |

| | | | |
|---|---|---|---|
| 17 | 4 | Appellant - Response to Response to Notice 03/26/2013 dated 3/26/2013 | April 21, 2013 |
| 18 | 4 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 19 | 4 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 20 | 4 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 21 | 5 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 22 | 5 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 23 | 5 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 24 | 5 | Appellant - Response to 03/26/2013 dated 3/26/2013 | April 21, 2013 |
| 25 | 5 | Appellant - Response to Hearing Transcript Page 141-150 dated 3/26/2013 | April 21, 2013 |
| 26 | 5 | Appellant - Response to 03/26/2013 dated 3/26/2013 | April 21, 2013 |
| 27 | 5 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 28 | 5 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 21, 2013 |
| 29 | 5 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 22, 2013 |
| 30 | 5 | Appellant - Response to March 26, 2013 dated 3/26/2013 | April 22, 2013 |
| 31 | 5 | Appellant - New Finding - Response to Agency's May 20, 2013 Submission | May 22, 2013 |
| 32 | 5 | MSPB - Settlement Memo to File | May 24, 2013 |
| 33 | 5 | Agency - Response to Request for Review | June 03, 2013 |
| 34 | 5 | Appellant - Request to File an Additional Pleading with Attachment | June 04, 2013 |
| 35 | 5 | Appellant - Request to File an Additional Pleading | June 04, 2013 |
| 36 | 5 | Appellant - Motion to Submit New Evidence | June 17, 2013 |
| 37 | 5 | Appellant - Clarification | November 04, 2013 |

| | | | |
|---|---|---|---|
| 38 | 5 | MSPB - Opinion and Order | December 31, 2013 |
| 39 | 5 | MSPB - Certificate of Service | December 31, 2013 |

3 of 3

**U.S. MERIT SYSTEMS PROTECTION BOARD**
**Office of the Clerk of the Board**
1615 M Street, N.W.
Washington, D.C. 20419-0002
Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

**March 26, 2013**

Notice to the Parties:

Re: Maria Lavinia Jones v. Department of Energy
MSPB Docket Number: CB-7121-13-0111-V-1

On March 18, 2013, the Washington Regional Office issued an order referring a copy of the record in MSPB docket number DC-0752-13-0168-I-1 to this office for docketing as a request for review of an arbitrator's decision. The case had previously been captioned as Maria Lavinia Jones v. Department of Energy, MSPB docket number DC-0752-13-0168-I-1, which remains pending with the Washington Regional Office with respect to the appellant's involuntary retirement claim. The parties are hereby notified that the Board has assigned a new case caption and docket number to the instant request for review of the arbitrator's decision, Maria Lavinia Jones v. Department of Energy, MSPB docket number CB-7121-13-0111-V-1. A copy of the record that was created in the previous adjudication under the assigned docket number DC-0752-13-0168-I-1 will be entered into the record in docket number CB-7121-13-0111-V-1. The appellant is advised that any submission in response to this notice must include the new case caption and docket number noted above and should be filed with the Office of the Clerk of the Board.

The Board's regulations require that a request for review of an arbitration decision must contain: (1) a statement of the grounds on which review is requested; (2) references to evidence of record or rulings related to the issues before the Board; (3) arguments in support of the stated grounds that refer specifically to relevant documents, and that include relevant citations of authority; and (4) legible copies of the final grievance or arbitration decision, the agency decision to take the action, and other relevant documents, which may include a transcript or tape recording of the hearing. *See* 5 C.F.R. § 1201.154(d). To the extent that the appellant has not submitted argument and evidence to comply with these requirements, the appellant may file a supplement to the request for review by April 5, 2013. Any supplemental response must be sent to the parties to the appeal and must contain a certificate of service specifying how and when service was made.

The agency may file a response to the appellant's request for review. Any response must be filed with the Office of the Clerk of the Board by May 10, 2013. A copy of the response must be sent to the parties to the appeal and must contain a certificate of service specifying how and when service was made. The record closes

upon the expiration of the period for filing the response to the request for review. *See* 5 C.F.R. § 1201.154(e).

It shall be the duty of all parties to notify the Board and one another in writing of any changes in the name and/or addresses on the service list. A copy of the Board's regulations is being forwarded to the agency as an attachment to this notice.

William D. Spencer
Clerk of the Board

Dinh Chung
Case Management Specialist

**UNITED STATES MERIT SYSTEMS PROECTION BOARD**
**MERIT SYSTEMS PROECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

MARIA LAVINIA JONES,
Appellant

v.

STEVEN CHU,
Secretary,
U.S. Department of Energy

DOCKET NO.
DC-0752-13-0168-I-1

Date: February 20, 2013

Administrative Judge: Anthony Cummings

RESPONSE TO YOUR HONOR'S ORDER DATED FEBRUARY 14, 2013

Appeal Clarification

This is in response to your ORDER dated February 14, 2013, in which you ordered clarification of my appeal and to provide any facts that will support any allegations regarding the circumstances surrounding my "forced" retirement. (1) I would like to amend my appeal to include duress and coercion. Shortly after my retirement, I sent an email to Ms. Rita Franklin expressing that I was "forced" to retire **(Attachment A).** In addition, at the time, I had children who were minors and I was not financially ready to retire. My son (16) was planning to attend college and my daughter (12) wanted to endeavor in sports and music activities, which are all very expensive to fund. I had bought a new vehicle and I had a mortgage. I also knew my husband may have to have back surgery; therefore, he would be out of work for an extended period of time.

In addition to the above, I would also like to respectfully state that your ORDER did not reference other aspects that were in my initial appeal. I respectfully believe that the Board has

jurisdiction over my appeal. The ORDER stated "It appears undisputed that she filed the grievance of this action prior to filing the instant appeal of the same action with the Board." Under my appeal, I am *not* requesting for the Board to review the same action. I would like the Board to review my appeal based on discrimination and legal errors that were made by the Arbitrator. I initially stated in my appeal that the reasoning behind my removal was for retaliatory discrimination. (2) As in Pleasant *v. HUD, 98 M.S.P.R 602*, the "Board found that an appellant can establish the Board's jurisdiction under 5 U.S.C. § 7121(d) by asserting a claim of discrimination under 5 U.S.C. § 2302(b)(1) for the first time on review and that the assertion need not constitute a nonfrivolous allegation of discrimination." In addition, *Pleasant v.* HUD stated that the record does not have to show that the appellant presented a specific claim of discrimination before the Arbitrator **(Attachment B)**.

In my hearing, the Arbitrator was aware of my pending EEO complaint. Also in *Pace v. Department of Treasury, 2012 M.S.P.B. 108*, it states that "The Board will address discrimination claims in a matter such as this regardless of whether the discrimination claims were raised during arbitration." (3) I also believe that the Arbitrator erred in her findings for several reasons, which are addressed below.

1. <u>Amendment to Initial Appeal</u>

I would like to amend my initial appeal to include duress and coercion. I was forced to retire as a result of depression, demoralization, isolation, somatic associated with nausea, headaches and other related symptoms. I also experienced poor sleep and other related conditions. I felt completely vulnerable and helpless in the workplace. For an extremely long period of time, I dealt with a hostile work environment.

I have received medical treatment from Dr. Joshua Sussal for depression and other related medical conditions. Dr. Sussal has suggested that I remove myself from this environment, because it was not healthy to my well being. This treatment was a result of Ms. Thomas and Mr. Pafe's behavior. These two supervisors purposely did things to "record build", which included fabricating information for the purpose of removing me from employment. Amongst other statements, Dr. Sussal stated in his letter dated July 19, 2011, that I have been treated for various conditions both therapeutically and medicinally. "This is considered work place bullying and a hostile environment which is detrimental to her well being and a need for respite before continuing is required to avoid acute decompensation." In Dr. Sussal's letter dated May 16, 2012, he also stated "A reasonable medical opinion taken into consideration the above is Ms. Maria Jones' medical condition would not have occurred if she felt safe in her work environment." At the time of my retirement, I was of the mind frame that I was losing control and no one would provide assistance or relief. My retirement ***was not voluntary***, it was forced by the Agency and they used fabricated documents to have the appearance that I was an underperforming employee. In fact, the Agency's medical personnel sent me home, because of an elevated blood pressure level. This occurred specifically because of Mr. Pafe. **(Attachment C)**.

I tried unsuccessfully to have the Agency investigate and intervene into the continued hostile work environment. Your Honor, I asked to be transferred and was denied. The Office of Procurement had also approached me to work on a detail and I was also denied the opportunity **(Attachment D)**. (This detail could have perhaps turned into a possible reassignment.) I have attached emails that will show that I tried to seek assistance and was basically ignored. I was told by the Agency's and Fossil Energy's Personnel Directors to file a Union grievance. Never once

did they conduct any sort of an investigation to address my concerns or allegations, they simply ignored me and further compounded my mental stress **(Attachment E).**

I tried unsuccessfully to seek assistance from many individuals and the Agency refused to intervene. I also tried verbally to seek assistance. I provided the Agency with document after document that showed deception and sabotage and still no one intervened. I sent emails to the following individuals seeking assistance and no one thought it necessary to relieve me from my unprovoked stress **(Attachment F)**:

1. The Secretary of Energy, Steven Chu
2. Rita Clinton, Director, Office of Human Resources Services
3. Carolyn Epps, Human Resources Specialist (Employee Relations)
4. Kathleen Benner, Employee Relations
5. Cheryl Keith, Supervisory Human Resources Specialist
6. Victor Der, Principle Assistant Secretary of Fossil Energy
7. James Markowsky, Assistant Secretary of Fossil Energy
8. Mary Shannon Gipson, Fossil Energy's Human Resources Office

In addition, I felt threatened for my safety. I felt Ms. Thomas was on a "short circuit" and no one in the Agency thought it necessary to intervene. I have never experience anyone, such as Ms. Thomas and Mr. Pafe. For instance, Ms. Thomas saw me standing in the office working and found it necessary to purposely turn the lighting out in the office, which placed me in a pitch black portion of the office. This behavior was not only childish, but it was also unprofessional and scary. This was witnessed by another employee, who apologized for her behavior. Ms. Thomas showed an extreme obsession with harassing me. I went to Jury Duty and when I returned she asked me how much money they paid me. (Respectfully stating, I was glad to be on Jury Duty for two weeks and away from the office. I would have paid the State of Maryland, if they would have asked me just to have the peace for two weeks.) Ms. Thomas behavior was almost stalking like. Ms. Thomas' supervisor was approached by another employee who

complained that Ms. Thomas was harassing him. This employee was in another office and was not under the supervision of Ms. Thomas. Ms. Thomas also exhibited some bizarre behavior in a Senior Staff meeting and her supervisor was so unnerved that he uninvited her to future meetings. He did not want to be around her, but he did not do anything to help me though. Ms. Thomas' intense behavior further enhanced my medical condition.

*Shortly after my removal, Ms. Thomas (former title: Director, Office of Budget and Financial Management) and Ms. Mary Shannon Gipson (former title: Director, Office of Management and Field Operations (Human Resources Office) were both* ***demoted****. Ms. Thomas is now a Program Analyst and Ms. Gipson is now a Management Analyst. Therefore, it is reasonable for one to conclude that the Agency felt that there were inappropriate personnel activities being carried out. The Agency may state differently; however, I have and the Agency is also in possession of evidence that will show deception and unethical behavior. I have provided members of the management staff and the Agency's counsel with these documents and they are in their possession. I have also attached evidence that will state that these two individuals were, in fact, demoted. In addition, a sample of the deception is addressed below. This information was also previously furnished to the Agency* ***(Attachment G).***

2. Agency Deception Caused Me Being Removed From Service – Not My Performance

The Agency may state that I was removed from service because of unacceptable performance and it was proven in the hearing that was set before the Arbitrator. However, the National Treasury Energy Union (NTEU) attorney argument was focused on the agreed upon "stipulated issue". The Agency was instrumental in planting evidence that would make one to conclude that I was a poor performing employee. Ms. Thomas and Mr. Pafe started systematically harassing me, which included, fabricating documents to support their accusations.

The Agency fabricated documents and even misrepresented certain documents that were presented before the Arbitrator. The NTEU argument dealt with the "stipulated issue", which was agreed upon by Agency. Mr. Pafe also prepared one of my performance ratings that inappropriately referenced discrimination. The performance appraisal process is *not* an avenue to address discrimination. Mr. Pafe, himself, linked my appraisal with the EEO process **(Attachment H)**. Therefore, this linkage proves that my EEO case was the driving force behind my removal, not my performance. (For the record, Mr. Pafe's comments concerning me always referencing discrimination is, again, not factual.)

> *The Agency also altered records for the mere purpose of terminating me. I am not simply stating this fact, Your Honor, I have attached the document and you can see this for yourself. For example, they prepared a "Counseling Memorandum" that clearly shows the extent of their deception. As you may know, the Counseling Memorandum is the foundation for an employee to be placed on a Performance Improvement Plan (PIP). The Counseling Memorandum stated that I was out of the office for three hours. It also stated that the Secretary of Energy's White House Liaison was searching for me. In addition, Mr. Pafe stated that Ms. Thomas had to complete the assignment, because I could not be located. These accusations are not and were not true. I had a copy of my "Sent Emails" to show that I was at my desk working, during the time in question. In addition, the Secretary of Energy's White House Liaison "thanked me", which I have also attached an email that clearly shows this. I also have attached an email that is sent automatically from the financial system that clearly shows that I completed the assignment and not Ms. Thomas as the Counseling Memorandum stated. These accusations were completely outlandish and unfounded.* ***(Attachment I)***
>
> *Another example of Ms. Thomas' deceit is that she asked me to furnish her with financial documents one evening. However, the Agency was upgrading their financial system and there were "bugs" in the system, which made it inactive. I sent Ms. Thomas an email stating the following, "I could not get the small business information. Iportal is not letting me retrieve the information. I will try again in the morning." Ms. Thomas' response was, "There was nothing wrong with Iportal, I had no problem pulling reports. You were suppose to be focusing on STRIPES." Ms. Thomas was not aware that I had contacted the computer department. Deanna*

> *Lipscombe, from the computer department answered my email and stated, "Yes, the developers are working on the system right now." Therefore, Ms. Thomas was not being honest. This is an example of the sort of behavior that I had to deal with. For one, STRIPES does not have the capability to generate reports. It is a system that is mainly used to acquire products and services.* ***(Attachment J)***

I provided the Agency with numerous documents with the same sort of outlandish and unfounded information and again nothing was done. This sort of information was also included in the PIP and can be proven. Respectfully stating, if the Agency states anything to the contrary they are again participating in unethical behavior, because they are aware of these documents. I have provided Your Honor with the above example; however, there are other documents that will support my accusations. These documents have been provided to the Agency and the Agency's counsel.

Shortly before Ms. Thomas and Mr. Pafe were alerted of my pending EEO complaint they had signed off on my mid-year performance appraisal. Ms. Thomas signed off on my rating on August 6, 2010. The appraisal showed no negative signs of me being a "poor performing" employee. In fact, shortly before I received my mid year appraisal, I was given a monetary cash award. I was also on leave for two months, due to a medical reason. In addition, Ms. Thomas was researching having my position upgraded. (I have attached all of these documents for your review and also included a rating before the August 6, 2010 rating.) **(Attachment K)**

However, shortly after Ms. Thomas was notified that I added her name to my pending EEO complaint, they started a harassment campaign. The actual end of the rating period was September 30, 2010. Ms. Thomas and Mr. Pafe provided my mid-year rating late in the appraisal period, which was shortly before the intense harassment started. This harassment was done with the assistance and complete participation of Mr. Robert Pafe, who was my immediate supervisor. Mr. Pafe was a willing participant because I had already included him in a prior

EEO complaint. (In addition, I had reported Mr. Pafe's previous supervisor and friend to the Inspector General's Office (IG) for trying to intimidate me into participating into illegal activities involving a contractor. I was the Contracting Officer Representative and during the negotiations for a new contract; he had sent paperwork to a potential contractor asking them to write up the Statement of Work. When I realized what he had done, I told him that I was not going to participate in anything that was illegal. Shortly after contacting the IG's Office, this supervisor resigned from his position. (I still have in my possession the email that this supervisor sent to me. He stated that if I would not participate in the illegal act, then he would get someone else to do it.)

3. Arbitrator Erred in her Ruling

The arbitrator ruling should be set aside for three reasons. (a) The "stipulated issue" was "Whether or not the Department of Energy (DOE) provided the Grievant with a reasonable opportunity to improve performance before removing her from Federal Service? If not, what shall the remedy be?" The arbitrator failed to focus on the stipulated issue; therefore, her ruling should be set aside. There is ample evidence that would show that the arbitrator's main focus was my performance and not the "stipulated issue" or the process. The "stipulated issue" was an afterthought. In addition to providing evidence that was misrepresented and/or fabricated, the Agency failed to adequately show that they provided me with any of the assistance that was outlined in the PIP.

In addition, the Agency should not be allowed to present me with a PIP, which provided the "blueprint" of what I needed to do to overcome any obstacles and then state later on that I could not be accommodated. This, in itself, is not fair and reasonable. They also stated that I was in my position for over eight years and should have been able to succeed. I had succeeded before I filed my EEO complaint. I earned a performance cash award. I earned a positive rating before they were informed of my EEO activities. I had even earned my request to have Ms. Thomas research

upgrading my position. (For the record, I should have never been placed on the PIP; it was done strictly because of my EEO activities.)

For instance, under the Agency's and the Office of Personnel Management guidelines, if the Agency promises assistance then the assistance should be provided. For example, the PIP stated that I needed to take certain training classes, in order to improve my performance. However, the supervisors then testified that the Agency was under a Continuing Resolution and they were not able to provide the training. (For the record, there is ample evidence that will suggest that other employees were allowed to take training, during this period. In fact, there is evidence that will state that a contractor was allowed to take a training class, during this period. The contractor took a class that was recommended to me by Mr. Pafe. This evidence will coincide with my discrimination complaint.)

There is also ample evidence that would suggest that Mr. Pafe continuously changed and cancelled PIP meetings. I testified that I met with Mr. Pafe, approximately 10 times. The Agency stated that Mr. Pafe met with me the required number of times. However, the PIP was for a total of 120 days; therefore, he was supposed to meet with me a total of 16 times. That is a total of 6 weeks that are unaccounted for. In addition, there is no evidence that Mr. Pafe really showed me what I needed to do. In fact, Mr. Pafe placed me on the PIP stating that I needed to provide more analysis. However, after I gave him several more reports, he stated that he wanted to continue to use the reports that I had *before* he placed me on the PIP. In addition, Mr. Pafe stated that I did not turn my reports in on time. However, there is evidence that will show that Mr. Pafe did not know when the Department made available the month end financial data. (All of this coincides with my discrimination complaint.)

(b) The Arbitrator also failed to interpret the labor contract between the Department of Energy and the National Treasury Energy Union (NTEU). The Arbitrator failed to factor in the "Douglas Factor" in my removal. The use of the "Douglas Factor" may not be the norm for other

Agency's in dealing with performance removals; however, under a legal binding contract the parties have agreed to use the "Douglas Factor" in determining ***all*** adverse actions. In Article 44, Sections 44.01 and 44.03, the adverse action is not distinguished. The Article 44 states "For the purpose of this Article an adverse action is defined as a suspension for more than fourteen (14) days, reduction in grade or pay, furlough for 30 days or less, or removal." My removal is considered an adverse action and under the contract between the Agency and the NTEU the "Douglas Factor" should have been applied (**Attachment L**).

(c) The Arbitrator also failed to factor in my due process. The Arbitrator was aware that Ms. Edna Thomas was named in my EEO complaint. Ms. Thomas was the Deciding Official in my removal. Therefore, the hearing that was set before the Agency, with Ms. Thomas being the Deciding Official, did not comply with the due process that should have been afforded me. The Arbitrator was aware that the hearing that was set before the Agency was not decided by an impartial party. The Arbitrator also discounted critical testimony. A witness testified that Ms. Thomas told her that I was not returning to the office. Ms. Thomas' comments were made ***before*** I had the final hearing with the Agency. The Agency contested the witness's testimony stating that she had the dates incorrect. However, the dates that the witness testified to were still ***before*** I had the final hearing with the Agency. Therefore, the Agency's point is invalid. There was also another witness who testified that Ms. Thomas was obsessed with having me removed, because I spoke to her supervisor. The Agency stated that Ms. Thomas terminated this witness. In fact, Ms. Thomas did terminate this employee. This employee was hired a little less than 2 months before I was "forced to retire". However, Ms. Thomas terminated this employee because she asked me to assist her in preparing financial reports.

As I stated earlier, I felt isolated. Ms. Thomas tried to purposely isolate me from my co-workers. Therefore, when she found out that the employee asked me about the preparation of reports, she became infuriated and she was targeted for removal. Ms. Thomas sent this new

employee to me for training. Therefore, this will substantiate that my removal was carried out because of my EEO complaint. A supervisor would not send a new employee to a "poor performing employee" for assistance, especially when they were on the verge of terminating their employment. This new employee was not supposed to ask me anything and because she did, Ms. Thomas was enraged and it unfortunately cost her job with the Agency. Also, just because an employee is terminated, does not mean that they are dishonest. This witness was just willing to testify because she had no reason to fear Ms. Thomas' wrath. Respectfully stating, even prosecutors allow violent prisoners to testify on their behalf. There was no reason for the Arbitrator to discount the testimony of this witness, simply because she was terminated. These two independent witnesses testimony were related and would have been vital to my case **(Attachment M).**

In addition, the hearing was conducted in an impartial manner. Ms. Thomas was allowed to report to the hearing when she simply felt like it. Ms. Thomas simply stated that her car battery had died. As seen above, her credibility is a big issue and there is evidence that would suggest that public transportation is located within walking distance of her home. The Arbitrator allowed her to sashay into the room and then start drinking out of a bottle of tea, while she testified. Also, the Agency's Germantown facility is located appropriately 10 minutes away from her home and there is shuttle service. I sat there while Ms. Thomas electronically reported her ever changing whereabouts. Ms. Thomas should have, at least, been questioned and not welcomed like a long lost friend.

Summary

I believe that the Board has jurisdiction over my case because as in *Pleasant v. HUD, 98 M.S.P.R 602* and in *Pace v. Department of Treasury, 2012 M.S.P.B. 108*, the Board found that an appellant can establish the Board's jurisdiction, because of discrimination. In addition, I am amending my complaint to include duress and coercion. The Agency had no reason to determine that my performance was unacceptable; however they conducted themselves in an unethical

manner, by presenting documents that were misrepresented and even fabricated. Respectfully stating, I have provided evidence that there was deceit in my removal and the Agency has extreme credibility issues. Again, the Agency is in possession of these documents and also Ms. Thomas (budget) and Ms. Gipson (personnel), who were both senior managers, has since been demoted to various analyst positions. In addition to the above, I feel that the Arbitrator made legal errors in her ruling. Therefore, I would like to have the ruling reviewed by the MSPB and properly ruled in my favor. (Also, I have previously submitted related information.)

Respectfully Submitted,

Maria Jones
10402 Tottenham Road
Cheltenham, MD 20623
(240) 476-5250
Ree47_Jones@hotmail.com

# CERTIFICATE OF SERVICE

*I hereby certify that on February 22, 2013, a true and correct copy of my response to the Administrative Judge's Order, dated February 14, 2013.*

| | |
|---|---|
| Victoria Bernhardt<br>*Jocelyn Bernhardt*<br>*Office of General Counsel*<br>*U.S. Department of Energy*<br>*1000 Independence Ave., SW*<br>*Washington, D.C. 20585* | *via First-Class U.S. Mail* |
| *Victoria.Bernhardt@hq.doe.gov*<br>*Jocelyn.Richards@hq.doe.gov* | *Email* |

Respectfully Submitted,

Maria Jones
10402 Tottenham Road
Cheltenham, MD 20623
(240) 476-5250

Standard Form 50
Rev 7/91
U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 4

# NOT CATION OF PERSONNEL ACTI

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| JONES, MARIA L | [redacted] | [redacted] | 02-16-2012 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 304 | Retirement-ILIA |
| **5-C. Code** | **5-D. Legal Authority** |
| SQM | 5 U.S.C. 8336 |
| **5-E. Code** | **5-F. Legal Authority** |
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| **6-C. Code** | **6-D. Legal Authority** |
| | |
| **6-E. Code** | **6-F. Legal Authority** |
| | |

2/16

7. FROM: Position Title and Number

Program Analyst
PD: 003455 Position: 00014129

| 8. Pay Plan | 9. Occ. CD | 10. Grd/Lvl | 11. Step/Rate | 12. Tot. Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| GS | 0343 | 12 | 07 | $89,846.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $72,328.00 | $17,518.00 | $89,846.00 | $0 |

14. Name and Location of Position's Organization 2802000000

Assistant Secretary for Fossil Energy
Ofc of Budget & Financial Mgmt

15. TO: Position Title and Number

| 16. Pay Plan | 17. Occ. CD | 18. Grd/Lvl | 19. Step/Rate | 20. Tot. Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | | | |

22. Name and Location of Position's Organization

**EMPLOYEE DATA**

23. Veterans Preference: 1
1-None, 2-5 Point, 3-10 Point/Disability, 4-10 Point/Compensable, 5-10 Point/Other, 6-10 Point/Compensable/30%

24. Tenure: 1
0-None, 1-Permanent, 2-Conditional, 3-Indefinite

25. Agency Use:

26. Veterans Preference for RIF: YES / X NO

27. FEGLI: II Basic + Option B (1x) + Option C (1x)

28. Annuitant Indicator: 9 Not Applicable

29. Pay Rate Determinant: 0 Regular Rate

30. Retirement Plan: C FICA and CSRS (Partial)

31. Service Comp. Date (Leave): 12-12-1985

32. Work Schedule: F Full Time

33. Part-Time Hours Per Biweekly Pay Period:

**POSITION DATA**

34. Position Occupied: 1
1-Competitive Service, 2-Excepted Service, 3-SES General, 4-SES Career Reserved

35. FLSA Category: E
E-Exempt, N-Nonexempt

36. Appropriation Code:

37. Bargaining Unit Status: 0020

38. Duty Station Code: 110010001

39. Duty Station (City-County-State or Overseas Location): Washington Dist Columbia DC USA

| 40. Agency Data | 41. Emplid | 42. | 43. | 44. PAR Number |
|---|---|---|---|---|
| | 17034 | | | |

45. Remarks

- Forwarding address: 10402 TOTTENHAM RD CHELTENHAM, MD 206231173.
- Not entitled to severance pay.
- Lump-sum payment to be made for any unused annual leave.

46. Employing Department or Agency: Department of Energy

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DN00 | 4225 | 02-16-2012 |

50. Signature/Authentication and Title of Approving Official

Sheila J. Adams

Adams, Sheila J
Employee Work Life Specialist

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6236

3 - Payroll Copy

# CERTIFICATE OF SERVICE

I hereby certify that on this date, service of the BRIEF AND APPENDIX FOR RESPONDENT MERIT SYSTEMS PROTECTION BOARD was made upon the following individual by mailing a true and correct copy thereof by first class mail, postage prepaid:

Maria Lavinia Jones
10402 Tottenham Rd
Cheltenham, MD 20623

DATE: 7/21/2014

Su-Hsien Luan
Su-Hsien Luan
Paralegal